**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **THE ANTIOCH COMPANY** ) | **Case No. 3:09-ap-03409** |
| **LITIGATION TRUST** ) | |
| ) | **(Judge  Humphrey)** |
| **Plaintiff,** ) | |
| ) | |
| **-v-** ) | **RELIEF IS REQUESTED FROM A** |
| ) | **UNITED STATES DISTRICT JUDGE** |
| **LEE MORGAN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9033**
**OBJECTION TO THE BANKRUPTCY COURT'S**
**RECOMMENDATION TO DENY THE MORGAN/MORAN/ATTIKEN**
**DEFENDANTS' MOTION TO DISMISS NON-CORE CLAIMS**

Pursuant to Rule 9033(b) of the Federal Rules of Bankruptcy Procedure and Rule 9033-1 of the Local Rules of the Bankruptcy Court in this District (the "Bankruptcy Court"), the Morgan/Attiken/Moran Defendants object to the Bankruptcy Court's Recommendation To The United States District Court For The Southern District Of Ohio to deny their Motion To Dismiss non-core claims in this case (Dkt. No. 239.) (the "Recommendations") and to the below conclusions of law contained in the Recommendations.[1]

Pursuant to LBR 9033-1 (b)(1), the specific findings or conclusions objected to are (1) that the claims in the Complaint against the Morgan/Attiken/Moran Defendants are not preempted by ERISA, (2) that the applicable statute of limitations does not bar Counts 1-3 as a matter of law such that those Counts should be dismissed without discovery, (3) that Count 6

---

[1] The term "Morgan/Attiken/Moran Defendants" refers to Lee Morgan, Asha Moran, Marty Moran, Chandra Attiken, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1, and Lee Morgan Pourover Trust #2.

should not be dismissed as to Lee Morgan and Asha Moran, (4) that Count 7 should not be dismissed as to Lee Morgan, Asha Moran, and Chandra Attiken, (5) that aiding and abetting is a valid cause of action under Ohio law and that the Plaintiff alleged facts sufficient to overrule motions to dismiss such claims, and (6) the tortious interference with contract claim against Marty Moran and Lee Morgan should not be dismissed.

Pursuant to LBR 9033-1(b)(2), the Morgan/Attiken/Moran Defendants state as the bases for its objections that (1) the scope of ERISA preemption is broad and preempts state law causes of action where an ERISA fiduciary might also serve as a corporate officer and director, (2) the Bankruptcy Court's statute of limitations analysis relied on tolling doctrines that are not applicable to this case even accepting the Plaintiff's allegations as true, (3-4) claims arising out of the Levimo transaction were released and, even if not, the allegations in the Complaint do not meet the applicable pleading burden, (5) that aiding and abetting tortious conduct is not a recognized cause of action under Ohio law and, even if it is, the allegations in the Complaint do not meet the applicable pleading burden, (6) the Bankruptcy Court misapplied settled Ohio law with respect to the elements of a tortious interference with contract claim by not requiring the Plaintiff to allege the breach of a contract as an element of the tort.

A memorandum of law, that incorporates by reference prior briefing on the Motion to Dismiss, is attached hereto as Exhibit A.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
Amber M. Justice-Manning (0082301)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
ddaddesa@kmklaw.com
ajusticemanning@kmklaw.com
dbules@kmklaw.com

*Attorneys for Defendants,*
Lee Morgan, Asha Morgan Moran, Chandra
Attiken, Marty Moran, Lee Morgan GDOT
Trust #1, Lee Morgan GDOT Trust #2, Lee
Morgan GDOT Trust #3, Lee Morgan
Pourover Trust #1, and Lee Morgan Pourover
Trust #2

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 2, 2011 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.


                     /s/ Michael L. Scheier
                     Michael L. Scheier

3935239.1

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **THE ANTIOCH COMPANY** | ) | **Case No. 3:09-ap-03409** |
| **LITIGATION TRUST** | ) | |
| | ) | **(Judge Humphrey)** |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | **RELIEF IS REQUESTED FROM A** |
| | ) | **UNITED STATES DISTRICT JUDGE** |
| **LEE MORGAN, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9033
OBJECTION TO THE BANKRUPTCY COURT'S
RECOMMENDATION TO DENY THE MORGAN/ATTIKEN/
MORAN DEFENDANTS' MOTION TO DISMISS NON-CORE CLAIMS**

The Morgan/Attiken/Moran Defendants object to the Bankruptcy Court's Recommendation to the United States District Court for the Southern District of Ohio to deny their Motion to Dismiss non-core claims in this case (Dkt. No. 239) (the "Recommendations").[1]

## I.   INTRODUCTION

This objection focuses on a number of discrete issues, and errors that the Bankruptcy Court made in addressing those issues, in an otherwise thorough series of recommendations to this Court on how it should rule on various motions to dismiss non-core claims. Although the Bankruptcy Court's recommendations address several motions to dismiss, this objection pertains only to the Motion to Dismiss filed by the Morgan/Attiken/Moran Defendants.

---

[1] The term "Morgan/Attiken/Moran Defendants" refers to Lee Morgan, Chandra Attiken, Asha Moran, Marty Moran, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1, and Lee Morgan Pourover Trust #2.

Specifically, the Bankruptcy Court erred by not recommending dismissal of all the non-core claims in the Complaint against the Morgan/Attiken/Moran Defendants as being preempted by ERISA, or at the least Counts 1 and 2 that relate to the 2003 ESOP transaction, and Count 3, that relates to the Condor ESOP notes.  As described below, the primary rationale for recommending that those claims survive – that the Morgan/Attiken/Moran Defendants are alleged to have breached separate duties arising under state law – is in conflict with the allegations in the Complaint that Lee Morgan, Chandra Attiken, and Asha Moran were acting as ERISA fiduciaries in regard to the 2003 ESOP Transaction, and that their conduct in regard to that transaction breached the duties imposed by ERISA.  (*E.g.*, Complaint at ¶¶ 46, 83.)  On this issue, the Bankruptcy Court's decision is contrary to the United States Supreme Court's statement that ERISA fiduciaries wear just one hat, that of an ERISA fiduciary, when making fiduciary decisions and discharging their duties with respect to the plan and its participants, the beneficiaries of the Plaintiff Litigation Trust.  Where the Complaint, as here, alleges that Defendants were ERISA fiduciaries, acting in that capacity, and breached their duties causing damage measured by lost retirement benefits, state-law based claims are preempted by ERISA's broad preemption provision.  (*See* Complaint at ¶ 1; *see also*, Dkt. No. 237).  And the Bankruptcy Court likely did not have an opportunity to consider a filing by the Litigation Trust just days before the Recommendations were docketed where the Plaintiff openly conceded that it seeks to recover "monies . . . for the loss of . . . retirement savings," a concession that unquestionably triggers ERISA preemption.  (Dkt. No. 237.)  As a result, all claims should be dismissed, but at a minimum, Counts 1-3 are subject to ERISA preemption.

The Bankruptcy Court's recommendation that the narrow equitable tolling doctrine applies to toll the statute of limitations on Counts 1-3 is also wrong, assuming those state law

claims are not preempted.  We recognize that the Plaintiff does not have to prove its allegations at this stage, but it at least has to state facts that give rise to a cognizable theory that equitable tolling worked to toll the 4 year statute of limitations that the Plaintiff and the Bankruptcy Court agree applies to Counts 1-3.  Plaintiff has failed to plead any facts supporting equitable tolling, such as fraud or an undisclosed transaction, and for that reason this Court should enter a final order dismissing Counts 1-3 in the Complaint because those claims fall outside of the statute of limitations.  The Bankruptcy Court's recommended solution, to give Plaintiff an opportunity to develop facts that are not alleged that might support equitable tolling, is not found in Federal Rule 12(b)(6) jurisprudence.

There are a number of other discrete errors in the Recommendations relating to the aiding and abetting claims in Counts 2, 7, 9, and 11, the Levimo lease transaction claims in counts 6 and 7, and the tortious interference claim in Count 12, and those Counts should also be dismissed.

## II.    **BACKGROUND**

On December 23, 2009, the Plaintiff filed the Complaint in this matter.  All defendants, including the Morgan/Attiken/Moran Defendants, moved to dismiss the claims.  (*See* Dkt. Nos. 143 (Motion), 144 (Brief in Support), and 199 (Reply Brief), collectively the "Motion to Dismiss").[2]   The Bankruptcy Court heard oral argument on the motions to dismiss on September 1, 2009.  On April 28, 2011, the Bankruptcy Court issued the Recommendations with respect to the non-core claims.[3]

---

[2] The Bankruptcy Court did not include the motion of the Morgan/Attiken/Moran defendants in the list of motions to dismiss that were filed.  (Recommendations at 7.)  It is clear from the decision though that the Bankruptcy Court considered and ruled on the Motion to Dismiss.

[3] The parties have stipulated that Counts 1-12 and 15 of the Complaint are non-core claims and Counts 13 and 14 are core claims.  (Dkt. No. 226.)  The parties further stipulated that the Bankruptcy Court's role with respect to the non-core claims was to issue findings of fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c)(1).  (*Id.*)

III.    <u>**STANDARD OF REVIEW/PRIOR BRIEFING**</u>

    A.    **Standard of Review**

Under Rule 9033, this Court "shall make a de novo review upon the record or, after additional evidence, of any portion of the Bankruptcy Judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."  Fed. R. Bank. P. 9033(d).   Here the Bankruptcy Court ruled on motions to dismiss filed by the Defendants; the Bankruptcy Court did not make any factual findings but rather presumed the truth of the allegations in the Complaint as it was required to do under Rule 12(b)(6). (Recommendations at 8.)   The Supreme Court has said that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  The court is not required to accept legal conclusions couched as factual allegations, or mere "recitations of the elements of a cause of action" as true. *Fritz v. Charter T'ship of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

    B.    **Incorporation of Prior Briefing**

The Morgan/Attiken/Moran Defendants supported their motion to dismiss with an initial memorandum in support (Dkt. No. 144) as well as a reply brief (Dkt. No. 199).   These documents present a compelling case for dismissal and the Court should grant the relief requested therein.  Cognizant of the volume of briefing that this Court will receive, we will not repeat here all of the arguments presented in those memoranda but rather incorporate them herein by reference.

IV.    **ARGUMENT**

    A.    **The Claims in the Complaint Are Preempted by ERISA**

The Morgan/Attiken/Moran Defendants argued that most of the claims in Complaint are preempted by ERISA which "supersede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." ERISA § 514, 29 U.S.C. § 1144 (emphasis added). The conclusion that the claims in the Complaint are preempted flows from settled case law in the Sixth Circuit holding that "common law breach of fiduciary duty claims are clearly preempted by ERISA." *Smith v . Provident Bank*, 170 F.3d 609, 613-17 (6th Cir. 1999). Indeed the Supreme Court has held that "any state law cause of action that duplicates, supplements or supplants" ERISA § 502(a) "conflicts with the clear congressional intent to make the ERISA remedy exclusive, and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 214 (2004).

The preemption argument in this case is strongly bolstered by the Plaintiff's own allegations in the Complaint. The Complaint alleges that (1) Morgan, Asha Moran, and Attiken were ERISA fiduciaries at the time of the 2003 ESOP Transaction and beyond (¶ 46); (2) they violated their ERISA fiduciary duties through the conduct alleged to give rise to liability to Plaintiff, and in particular with regard to the 2003 ESOP Transaction (¶ 82); (3) Morgan, Asha Moran, and Attiken knew or should have known that the 2003 ESOP Transaction was an ERISA prohibited transaction under ERISA §§ 406 and 408 that would "result in violations of ERISA" (¶ 83); (4) the 2003 ESOP Transaction did not benefit the ESOP (¶ 88); the breaches of ERISA duty caused the Trust beneficiaries to lose their retirement savings and benefits (¶ 1); and, (5) Morgan, Asha Moran, and Attiken knew or should have known that in issuing the so-called ESOP Notes, they "exposed the Company to violations of ERISA" (¶ 178).

Overall, 90 of the 132 paragraphs (68%) that make up the Complaint's "factual allegations" section "relate to" the ESOP in some form or another. And the Complaint at ¶ 1 candidly admits that the goal of litigation is to recover retirement benefits.

Despite ERISA's broad preemptive scope and the Complaint's ERISA-centric allegations, the Bankruptcy Court recommended that the ERISA preemption argument be rejected as to the Morgan/Attiken/Moran Defendants. The Bankruptcy Court's primary conclusion was that the claims in the Complaint alleged breaches of duties arising independent of duties imposed by ERISA. (Recommendations at 60-69.) The Bankruptcy Court stated that there must be an analysis of "multiple hats" for ERISA fiduciaries who play other roles within a corporate entity. (*Id*. at 65.)

The Bankruptcy Court's analysis is flawed. ERISA preemption is not avoided simply because an ERISA fiduciary is also a corporate officer or director. When a person is a corporate officer or director and an ERISA fiduciary, "ERISA does require, . . ., that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 503 U.S. 211, 225 (2000). The Plaintiff's Complaint alleges over and over again that the Morgan/Attiken/Moran Defendants were acting as ERISA fiduciaries in respect to the 2003 ESOP Transaction. (*E.g.* Complaint at ¶¶ 46, 48.)

When wearing the ERISA fiduciary hat, "[t]he statute provides that fiduciaries shall discharge their duties with respect to the plan '*solely* in the interest of the participants and beneficiaries,' [and] 'for the ***exclusive purpose*** of . . . providing benefits to participants and their beneficiaries.'" *Id*. at 223-24 (quoting 29 U.S.C. § 1104(a)(1)) (emphasis added). In other words, when acting as an ERISA fiduciary, one must act with an "eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). It

necessarily follows that for a certain set of conduct, an individual cannot act with an "eye single" to the interests of plan participants while at the same time owe fiduciary duties separate and apart from ERISA to a corporation or its shareholders for that same conduct. The same conduct simply cannot give rise to two different breaches of two different duties. *Pegram*, 503 U.S. at 225. Rather, the cases establish the principle that while an ERISA fiduciary might well have "two hats," the fiduciary wears *only* the ERISA hat when making fiduciary decisions and discharging their duties with respect to the plan.

Applying this rule to the allegations of the Complaint shows this case to be an obvious instance where ERISA preemption applies. As noted, the Complaint alleges that Morgan, Asha Moran, and Attiken acted as ERISA fiduciaries. (Complaint at ¶ 46.) The allegations of wrongdoing with respect to the 2003 ESOP Transaction, the centerpiece of the Complaint, occurred when those defendants served as the ESOP committee and relate to their duties as ERISA fiduciaries. (*Id.* at, e.g. ¶¶ 82-88.) In that circumstance, accepting the allegations of the Complaint as true in this Rule 12(b)(6) proceeding, Morgan's, Asha Moran's, and Attiken's conduct allegedly rise to liability was governed by their duty arising under ERISA. *Pegram*, 503 U.S. at 223-24. And it is ERISA law that provides the sole remedy with respect to supposed violations of that duty.[4] In fact, Lee Morgan, Asha Moran, and Chandra Attiken are defendants in a lawsuit pending in the Northern District of Illinois alleging that they breached their ERISA fiduciary duties as Antioch ESOP Committee members, arising out of the same conduct and transaction that provide the basis for their alleged state law liability in this case under Counts 1 and 2. (*Fish v. Greatbanc Trust Co.*, 09 cv 1668 (N.D. Ill.).)

---

[4] The remaining claims in the Complaint are also subject to preemption because they are inextricably intertwined with the ESOP and the acts of its alleged ERISA fiduciaries. *See* Motion at 13-14.

The Bankruptcy Court's recommendation with respect to ERISA preemption also failed to consider properly that the damages demanded in the Complaint relate to retirement benefits and thus this action improperly seeks to supplement or replace ERISA's enforcement mechanism. The Sixth Circuit has stated that "to determine whether plaintiffs' state law claims are preempted, we must determine whether the claims 'relate to' [a retirement] plan. To do that, we consider the kind of relief that plaintiffs' seek, and its relation to the pension plan." *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005). Here, the Plaintiffs make no secret of the relief they seek: retirement benefits. (Compl. ¶ 1 (trust beneficiaries "lost their retirement savings").) This requested relief unquestionably triggers ERISA preemption.

The Morgan/Attiken/Moran Defendants argued this issue – that the claim for retirement benefits triggered ERISA preemption – in the Motion. The Plaintiff objected to the Motion arguing that the reference to retirement savings in the opening paragraph of the Complaint merely "provide[s] the Court with context for this Adversary Proceeding" and that "[t]he Trust never states that it is seeking to recover lost retirement benefits." (Doc. 186 at ¶ 22.)[5]

And despite their position in opposition to the Motion that the Trust is actually not seeking to measure damages by reference to lost retirement savings and benefits, this position is belied by the plain language of the Complaint. (*See* Complaint, ¶ 1.) But even if the Trust had not previously stated that it is seeking to recover lost retirement benefits, it certainly has unequivocally said so now. In a filing with the Bankruptcy Court just days before that Court issued the Recommendations the Trust stated:

---

[5] The Bankruptcy Court's primary statement with respect to the argument that the damages claim is that the Plaintiff does not have to specifically calculate damages at this point in the litigation. The Morgan/Attiken/Moran Defendants, however, never argued that the Complaint was subject to preemption because the Plaintiff had failed to calculate specific damages, but because the sole identified *theory* of damages related directly to retirement benefits.

> The delay in depositions and other discovery, and more broadly in moving these cases forward, is creating a hardship for the beneficiaries of the Trust. **The Trust beneficiaries are relying on a distribution from monies recovered by the Trust to compensate them for the loss of their retirement savings that they suffered as a result of the bankruptcy of The Antioch Company.**

(Dkt. No. 237) (emphasis added).[6]  Thus, the Plaintiff is now on record confirming that it is seeking compensation for the lost retirement savings of Trust beneficiaries.  With this admission, any lingering doubt about the applicability of ERISA preemption is eliminated.  This Court should reject the recommendation of the Bankruptcy Court denying the motion to dismiss filed by the Morgan/Attiken/Moran Defendants and, instead, issue a final order dismissing this case. Alternatively, the Court should dismiss Counts 1-2 related to the 2003 ESOP transaction, and Count 3 regarding the Condor ESOP claims.

### B.    Claims 1-3 Are Barred by the Statute of Limitations

The Morgan/Attiken/Moran Defendants, along with many other defendants, moved to dismiss claims 1-3 of the Complaint as being barred by the statute of limitations.  The Bankruptcy Court agreed with the defendants' statute of limitations arguments in many respects. For example, the Bankruptcy Court agreed that the relevant statute is four years (Recommendations at 72); agreed that the claims are barred by that statute absent tolling (*id*.); agreed that the discovery rule is inapplicable to the claims in the Complaint (*id*. at 77-80); and agreed that the doctrine of adverse domination, advanced by the Plaintiff as a way of avoiding

---

[6] It is unlikely that the Bankruptcy Court had an opportunity to fully consider the impact of this statement as it related to the defendants' ERISA preemption argument.  The Morgan/Attiken/Moran Defendants were preparing to direct the Bankruptcy Court's attention to the issue when the Recommendations were filed and released.  But because review is *de novo*, and this Court may consider materials not reviewed below, the Court should take the Plaintiff's filing into account.  And because this statement is in a Court filing, it is subject to judicial notice and may be considered in connection with a motion to dismiss.  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

dismissal of the claims on timeliness grounds, was not recognized under Ohio law (*id*. at 87-94). Nevertheless, the Bankruptcy Court recommended that the Plaintiff should have an opportunity to develop a record that can be used to determine if any tolling principles apply such that the claims are not barred.

The Bankruptcy Court's recommendation that the claims not be dismissed fails to respect that "[s]tatutes of limitations foster important public policies: ensuring fairness to the defendant, encouraging prompt prosecution of causes of action, suppressing stale and fraudulent claims, and avoiding the inconvenience engendered by delay and by difficulty of proving older cases." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, ¶ 22, 909 N.E.2d 1244.

*Cundall* demonstrates that Counts 1-3 of the Complaint are time-barred even taking into account the facts referenced by the Bankruptcy Court. In *Cundall*, the successor trustee of an express trust filed a lawsuit in 2006 alleging breaches of fiduciary duty and other wrongs by the predecessor trustee occurring over a decade earlier (well outside the four year statute of limitations). The claims against the predecessor trustee involved fraud, self-dealing, and conflicts of interest. *Id*. at ¶¶ 2-15. The plaintiff argued that the statute of limitation should not commence until the predecessor trustee – the party accused of the self-dealing and conflicts of interest – ceased his service as trustee. The Ohio Supreme Court rejected this argument and held that the statute began running at the time the transaction in question was completed, without consideration that the successor trustee remained in control of trust assets through the entire statute period. *Id*. at ¶¶ 26-30.

The Bankruptcy Court principally relied on alleged conflicts of interest and self-dealing in not dismissing Counts 1-3 on statute of limitations grounds. (Recommendations at 85-86.) This directly conflicts with *Cundall* where such allegations – including a fraud allegation that

-10-

even the Plaintiff here does not assert against any party (Recommendations at 80) – were deemed insufficient to toll or otherwise delay the commencement of the statute of limitations.  Indeed, the Bankruptcy Court's reliance on these facts is doubly in error because not only did doing so conflict with *Cundall*, but it functionally breathed life into the adverse domination argument that the Bankruptcy Court rejected just a few pages later in the decision.[7]  (Recommendations at 87-94.)

Instead of relying on *Cundall*, the Bankruptcy Court instead referred to a collection of tolling principles from cases with unrelated facts and from unrelated areas of law.  Even the Plaintiff did not contend that most of these tolling theories applied.  *See* Dkt. No. 148 at 36-38; Dkt. No. 186 at 21.  Nor did the Plaintiff plead facts that would support the application of any of these tolling theories.

For example, the first tolling theory the Bankruptcy Court mentioned was equitable estoppel.  (Recommendations at 81.)  The cases cited by the Court are not applicable.  The first case does not even mention the statute of limitations.[8]  In the second case the defendant had agreed to a dismissal without prejudice to re-file only to argue later that the statute barred the reasserted claim, facts that have nothing in common with the allegations in the Complaint.[9]

The termination rule cases apply primarily to professional negligence cases and that principle generally only applies when wrongful acts are hidden from view.[10]  The conduct

---

[7] The adverse domination principle relies on allegations of wrongdoing by officers and directors who remain in control of a company.  (*See* e.g. Dkt. No. 186 at 21.)

[8] *Doe v. Blue Cross/Blue Shield of Ohio*, 607 N.E.2d 492, 498 (Ohio Ct. App. 1992).

[9] *Hutchinson v. Wenzke*, 723 N.E.2d 176, 177 (Ohio Ct. App. 1999).

[10] *See* Recommendations at 81, n. 29.

complained of in the Complaint regarding Counts 1-3 was anything but clandestine.[11]  Other

tolling concepts cited by the Bankruptcy Court are similarly unconnected to any facts as alleged

by the Plaintiff. [12]  It is just plain wrong to provide the Plaintiff with an opportunity to develop a

record of facts that are not asserted in a complaint rather than dismiss under 12(b)(6).

   The Bankruptcy Court discussed two cases in greater depth than others.[13]  These cases

are particularly inapplicable.  The first was *Crego v. Baldwin-Lima-Hamilton Corp.*, 1998 WL

80240 (Ohio Ct. App. 1998).  (Recommendations at 82.)  Application of equitable tolling in

*Crego* is specifically limited to product liability actions under a statutory strict liability scheme

not remotely relevant to the present case.  *Crego*, 1998 WL 80240 at *6.  Perhaps more

importantly, the *Crego* court considered a plaintiff's good faith due diligence investigation prior

to the expiration of the statute to be a prerequisite for the application of equitable tolling.  *Id*.

The Complaint contains no allegations of such an investigation by the Plaintiff in this case.

   The Bankruptcy Court also discussed *Wuliger v. Star Bank*, 2008 WL 2323887 (N.D.

Ohio 2008), where, with little discussion of tolling principles, the court applied equitable tolling

to claims made by a receiver who was not in possession of information that showed a potential

cause of action until after the statute of limitations had already run.  (Recommendations at 83.)

The Bankruptcy Court seemed to assume, without any analysis of the issue, that the Litigation

---

[11] The alleged wrongful acts supposedly occurred with the input of numerous outside professionals (¶¶ 47, 50, 51), through a prospectus and tender offer disseminated to all shareholders and ESOP participants (¶ 68), and involved a "comprehensive public relations strategy" (¶ 73).

[12] For example, the delayed damages doctrine cited by the Court is factually inapplicable and a concept that even the Bankruptcy Court acknowledges is of questionable viability.  (Decision at 81, n. 28.)  The Bankruptcy Court also cited a number of cases concerning equitable tolling in the employment context. (Recommendations at 83.)  Leaving aside that employment cases frequently involve unique policy considerations, the equitable tolling concept cited by the Bankruptcy Court relates to whether a defendant tricked a plaintiff into missing the filing deadline, which is not remotely alleged here.

[13] It is again notable that the Plaintiff did not think that these cases supported its tolling arguments in its two filings in opposition to the motions to dismiss.

Trustee is similar to the receiver in *Wuliger*.  But there are no facts alleged in the Complaint that support this finding of similarity.  For example, the Complaint contains no allegation that the facts that allegedly support these claims were buried from view until the Litigation Trustee's appointment.  Indeed, as mentioned *supra*, the Complaint alleges just the opposite – that the 2003 ESOP Transaction was widely disclosed (including through a comprehensive public relations strategy) and the subject of a prospectus.  (Complaint at ¶¶ 68, 73.)  And because the Litigation Trust and its Trustee are prosecuting the Debtor's prepetition claims, it stands in its shoes, which includes knowledge of the very publicized 2003 ESOP Transaction.[14]

In sum, while the Recommendations identifies a number of tolling theories, the facts that if proven would support the application of the theories are not alleged in the Complaint.  The Bankruptcy Court's recommendation that the lack of alleged facts instead gives the Plaintiff time to develop them through discovery has no support in law, and this aspect of the recommendation should not be accepted.  As a result, Counts 1-3 are barred by the 4 year statute of limitations and should be dismissed.

  **C.**  **The Claims in the Complaint Relating to the Levimo Transaction**
      **Should be Dismissed**

Counts 6 and 7 of the Complaint allege wrongdoing with respect to the so-called Levimo transaction.  Of the 164 paragraphs of factual allegations in the Complaint, just five relate to this transaction.  (Complaint ¶¶ 101-105.)  The Complaint alleges that Antioch was in financial distress by early 2007 (*id*. at ¶ 101); that the company sold its main operating facility to an entity (Levimo) affiliated with the Morgan family in exchange for over $25 million in (needed) cash (*id.* at 103); and that Levimo leased the facility back to the company and in doing so signed a

---

[14] In any event, pre-dating *Cundall*, it is questionable whether *Wuliger* is even good law.

lease that waived any conflict with respect to this claim (*id*. at 104).[15]  Count 6 alleges that Lee Morgan and Asha Moran breached their fiduciary duties through the Levimo transaction.  Count 7 alleges aiding and abetting against those two individuals as well as against Marty Moran.

The lease between Levimo and Antioch expressly recognizes and waives any breach of fiduciary duty claim with respect to the transaction.[16]  By its terms, the waiver applies to Antioch's successor through bankruptcy.  The Bankruptcy Court ruled that it was "premature to address on a motion to dismiss . . . whether the waiver provision of the lease is enforceable." (Decision at 111.)  This statement is contrary to bankruptcy law, as it relates to Antioch's assumption of the Levimo lease, because no facts to be developed during discovery will change the applicability of the lease and the waiver provision, and the Court may decide the issue now as a matter of law.

The key event with respect to the effectiveness of the waiver provision was Antioch assuming the Levimo lease during the bankruptcy case.  When Antioch "assume[d] the lease or the contract under § 365, it [] assume[d] both the benefits and the burdens of the contract."  *City*

---

[15] The applicable waiver language states:

> [ANTIOCH], ON BEHALF OF ITSELF AND ANY TRUSTEE OR LEGAL REPRESENTATIVE (UNDER THE FEDERAL BANKRUPTCY CODE OR ANY SIMILAR STATE INSOLVENCY PROCEEDING) EXPRESSLY ACKNOWLEDGES THAT CERTAIN AFFILIATES OF LANDLORD [LEVIMO] HAVE BEEN, ARE, OR MAY IN THE FUTURE BE OFFICERS, DIRECTORS, OR AFFILIATES OF TENANT, AND, ON BEHALF OF ITSELF AND ANY SUCH TRUSTEE OR LEGAL REPRESENTATIVE, HEREBY WAIVES ANY RIGHT TO CLAIM OR ASSERT DAMAGES AGAINST ANY SUCH AFFILIATE FOR ANY BREACH OF FIDUCIARY DUTY ARISING DIRECTLY OR INDIRECTLY FROM THE ENTRY BY LANDLORD AND TENANT INTO THIS LEASE OR THE EXERCISE OF ANY RIGHTS GRANTED TO ANY PARTY HEREUNDER.

(See Motion to Dismiss at 20, Ex. A) (capitalization in original).

[16] The lease is attached to the Motion to Dismiss as Exhibit A.  The Court may consider the Lease in connection with  a motion to dismiss because it is referred to in the Complaint, and it is central to the Litigation Trust's claims in Counts Six and Seven. *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir. 1999).

*of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir.1995); *see also In re ANC Rental Corp.,* 277 B.R. 226, 239 (Bankr. D. Del. 2009) (collecting cases).  Antioch might have preferred to assume the lease without the waiver, but "[n]either the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party." *Covington*, 71 F.3d at 239.

The Bankruptcy Court hypothesized that Antioch assumed that lease because "it may well" have had to choose the "least of two evils" if it wanted to continue its operations. (Decision at 112.)  The Bankruptcy Court's language – "may well" and without citation – shows that the Bankruptcy Court simply speculated about this possibility.  Certainly the Complaint contains no such allegations (or ones even remotely close).  For instance, there are no allegations in the Complaint that Antioch was forced to choose between assuming an onerous lease or closing the business.  The Bankruptcy Court's choice among "evils" speculation has no place or support in Rule 12(b)(6) jurisprudence.

Nor is there legal support for the notion that certain facts or circumstances might allow for an assumption of most but not all of an executory contract under Bankruptcy Code § 365.  Rather, it is settled that all provisions of an assumed contract are effective.  *Covington*, 71 F.3d at 1226.  Thus, upon assumption of the Levimo lease, all provisions of that contract, including the waiver provision, remain enforceable as a matter of law.

The Litigation Trust stands in the shoes of the debtor for purposes of this litigation. (Recommendations at 7; Complaint ¶ 8.)  A debtor is not permitted to ignore a term of an assumed contract so neither is the Litigation Trust.  All that remains is the straightforward application of the lease language and the undeniable conclusion that the claims are waived

pursuant to that language.  The Court should reject the Bankruptcy Court's recommendation, and dismiss Counts 6 and 7.[17]

### D.    Aiding and Abetting Claims Are Not Actionable Under Ohio Law

All Defendants moved to dismiss the aiding and abetting claims on the basis that the cause of action is not recognized under Ohio law.  The Bankruptcy Court predicted that the Ohio Supreme Court would recognize the claim and overruled the motions to dismiss.  In doing so the Bankruptcy Court failed to acknowledge that the Sixth Circuit has backed away from a prior prediction that the Ohio Supreme Court would acknowledge the cause of action.  *Compare Aetna Cas. & Sur. Co. v. Leahey Const. Co.,* 219 F.3d 519, 533 (6th Cir. 2000) with *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006).  And, importantly, the Ohio Supreme Court has not recognized the cause of action in the 11 years since *Aetna*.

The Bankruptcy Court ruled that it was improper to dismiss the aiding and abetting claims on a motion to dismiss because the law remains unsettled.  (Decision at 120-21.)  This is not a valid reason for overruling the motion to dismiss.  The discovery process will do nothing to inform the purely legal issue of whether a cause of action is viable under Ohio law.  Whether or not a cause of action presents a valid theory of recovery is properly considered in the motion to dismiss context.  *Schied v. Family Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)

---

[17] The Bankruptcy Court also erred by not requiring the Plaintiff to allege that the Levimo transaction was unfair to the Company in some way.  The only remote allegations of unfairness are that the lease prohibited Antioch from terminating the lease and provided Levimo with remedies upon default.  These provisions are part of nearly every commercial lease.  The suggestion that these provisions make a lease unfair is totally implausible and cannot serve as the basis for liability.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1997).  Indeed, a fair reading of the Complaint suggests that the company badly needed liquidity and that the Morgan family provided a mechanism to monetize a company asset (the building) without affecting operations.  Given this benefit to the company, it is shameful that the Litigation Trust then sues the Defendants for participating in this transaction. The Defendants incorporate their prior arguments herein by reference and adopt those similar arguments that are expected to be advanced by co-defendants.

(motion to dismiss tests whether plaintiff presents a "cognizable claim"). The Court can and should decide the issue now, and in doing so should take guidance from the clear signals issued by the Sixth Circuit and the Ohio Supreme Court that no such cause of action exists under Ohio law.

### E. Plaintiff has Failed to Plead Adequately a Tortious Interference Claim in Count 12 By Its Failure to Allege a Breach of Contract

In Count 12 the Plaintiff alleges that Lee Morgan and Marty Moran tortiously interfered with Antioch's contract with Houlihan Lokey. Although Houlihan Lokey is a Defendant, Plaintiff has not alleged that Houlihan Lokey breached its contract with Antioch. Morgan and Marty Moran argued in the Bankruptcy Court that Plaintiff's failure to allege that Houlihan Lokey breached its contract with Antioch prevented a tortious interference claim. The Bankruptcy Court recommended that this argument be overruled. In doing so, the Bankruptcy Court ignored settled Ohio Supreme Court precedent that unequivocally holds that an element of a tortious interference with contract claim is that the subject contract was breached. *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). Absence of factual allegation of such a breach, as here, means that the claim in Count 12 cannot survive a Rule 12(b)(6) motion to dismiss. The Bankruptcy Court's recommendation should therefore be rejected.

*Dicta* from *American Maritime Officers v. Marine Engineers Beneficial Association*, 503 F.3d 532 (6th Cir. 2007) does not change this result. There the Sixth Circuit stated that no breach is required in a tortious interference claim under Ohio law, but did not cite *Kenty*, likely because it did not discuss the tortious interference claim substantively.[18]

---

[18] The *American Maritime* case, just like the *Dougherty* case, involved a claim for tortious interference with contractual relations, with the defendant arguing that the claim was preempted due to its relation to a collective bargaining agreement. *Id.* at 534-35. But unlike *Dougherty*, the *American Maritime* court did

As acknowledged by the Bankruptcy Court, a recent decision of this Court followed *Kenty*, without citation to *American Maritime*, and required a breach of the contract to support a tortious interference claim. (*See* Recommendations at 135 (citing *Union of Needletrades, Indus. and Textile Employees AFL‑CIO v. Amer. Capital Strategies, Ltd.*, 546 F. Supp. 2d 546 (S.D. Ohio 2008)).) Other recent decisions from this Court similarly hold. *DWS Int'l, Inc. v. Meixia Arts and Handicrafts Co., Ltd.*, 3:09-cv-458, 2009 WL 5167765, *4 (S.D. Ohio 2009) (TRO denied because, citing *Kenty*, "it cannot be said that [defendant] intentionally procured Meixia's breach of [the contract].").

And although the Bankruptcy Court identified one case that has supposedly applied *American Maritime's dicta*, a closer look reveals that the opposite is true. (Decision at 135 (citing *Moonscoop S.A.S. v. American Greetings Corp.*, 709 F. Supp. 2d 583, 594, n. 2 (N.D. Ohio 2010).) *Moonscoop* does mention *American Maritime* in a footnote, but the holding of the case actually followed the Ohio Supreme Court's test. Indeed, the *Moonscoop* court rejected the plaintiff's claims because the plaintiff could not establish a breach of contract. *Moonscoop*, 709 F.Supp.2d at 594 ("Because MoonScoop did not 'intentionally procure' any breach of the 2001 License Agreement as a matter of law, the Court **GRANTS** MoonScoop's motion for summary judgment on this claim.") (emphasis and capitalization in original).

Thus, the sole support for the Bankruptcy Court's position is *dicta* from *American Marine* that is in direct conflict with Ohio Supreme Court authority. The Ohio Supreme Court has spoken clearly on the issue and Ohio federal courts have consistently followed the Ohio

---

not examine the actual merits of that argument. Instead, it only had to consider whether the district court used the appropriate test in deciding to remand the case to state court, or if it instead improperly based its ruling upon a collateral issue. *Id.* at 535-37. The elements of a tortious interference with contractual relations claim were irrelevant to the issue that the court faced. Thus, the court had no reason to examine the *Dougherty* court's now outdated conclusion.

-18-

Supreme Court on the issue, as they must. *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).

The Bankruptcy Court is on the wrong side of this legal issue. This Court should reject the Bankruptcy Court's recommendation and dismiss Count 12 of the Complaint.

**V.**     **<u>CONCLUSION</u>**

For all the foregoing reasons, the Morgan/Attiken/Moran Defendants request that the Court dismiss the claims in the Complaint as requested in the Motion to Dismiss.

3922334.3

Respectfully submitted,


/s/ Michael L. Scheier
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
Amber M. Justice-Manning (0082301)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
ddaddesa@kmklaw.com
ajusticemanning@kmklaw.com
dbules@kmklaw.com

*Attorneys for Defendants,*
Lee Morgan, Asha Morgan Moran, Chandra
Attiken, Marty Moran, Lee Morgan GDOT
Trust #1, Lee Morgan GDOT Trust #2, Lee
Morgan GDOT Trust #3, Lee Morgan
Pourover Trust #1, and Lee Morgan Pourover
Trust #2


## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.


/s/ Michael L. Scheier
Michael L. Scheier