## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **THE ANTIOCH COMPANY** | ) | **Case No. 3:10-cv-00156** |
| **LITIGATION TRUST** | ) | |
| | ) | **(Judge Timothy S. Black)** |
| **Plaintiff,** | ) | |
| | ) | |
| **-v-** | ) | |
| | ) | |
| **LEE MORGAN**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPLY IN SUPPORT OF DEFENDANTS LEE MORGAN, CHANDRA ATTIKEN AND ASHA MORAN'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### I.  INTRODUCTION

Plaintiff's claim against Defendants in Count One is not barred by the statute of limitations only if it can demonstrate that either adverse domination or equitable tolling apply. Neither doctrine, applies, however, and the Court should grant summary judgment in favor of the Defendants as to Count One.

### II.  ARGUMENT

#### A.  The Adverse Domination Theory Is Not Available to Plaintiff.

The theory of "adverse domination" does not apply to this case, and Plaintiff's position to the contrary should be rejected. First, this Court has already held that no sufficient basis exists to conclude that Ohio courts would adopt the theory, so resolution of the issue in Defendants' favor is now law of the case. Second, as Plaintiff concedes, not a single court in Ohio has ever adopted the theory, and the only Ohio courts to have considered the theory have rejected it. Third, adoption of the adverse domination theory would be inconsistent with principles of Ohio law.

And fourth, even if Ohio did adopt the theory, the record would not support its application in this case.

> ### 1.  This Court Has Already Held That It Will Not Apply Adverse Domination in This Case.

Plaintiff's request for application of adverse domination has already been considered and rejected by the Court.  Many defendants moved to dismiss the Complaint on the basis that it was barred by the statute of limitations.  Plaintiff invoked adverse domination in response.  (Ad. Pro. Doc. No. 148 pp. 36–38; Doc. No. 186 pp. 21–22.)  The bankruptcy court extensively analyzed the issue, "conclude[d] that Ohio courts do not presently recognize this theory and there is not a sufficient basis to conclude that the Supreme Court of Ohio would adopt it," and recommended that this Court adopt its findings in this regard.  Plaintiff did not object to the bankruptcy court's recommendation, and the Court adopted the recommendations in full.  (Doc. 26.)  The Court's adoption of the recommendations has important effects. The Court previously held that Plaintiff's failure to object to a bankruptcy court recommendation adopted by this Court made it law of the case and rejected Plaintiff's attempt to take positions contrary to those previously decided. (Doc. No. 71 at 7 n.2.)  The same result should apply to adverse domination.

This issue is more than some mere technicality. The bankruptcy court's recommendations, adopted by this Court, framed the issues that needed to be developed in fact discovery.  Just as Defendants did not direct discovery to the elements of an aiding and abetting claim under Minnesota law (the focus of Plaintiff's last attempt to distance itself from previously determined issues), Defendants did not focus the discovery process on facts needed to disprove or defend against an adverse domination claim because prior decisions in this case expressly said

the doctrine did not apply.  Defendants would thus suffer substantial prejudice if Plaintiff were permitted to advance an adverse domination theory to trial.[1]

> 2.  *The Court's Previous Ruling That the Theory of Adverse Domination Is Not Recognized in Ohio Is Well Supported.*
>
>> a.  The Only Ohio Courts to Have Considered Adverse Domination Have Refused to Apply the Theory.

As noted by the bankruptcy court, the only two Ohio decisions to consider its adoption both rejected the theory of adverse domination.  In *Chinese Merchants Association v. Chin*, 823 N.E.2d 900 (Ohio Ct. App. 2004), the court refused to adopt or apply adverse domination to toll the statute of limitations for a legal malpractice claim.  *Id.* at 297.  The court observed that the adverse domination theory has no support in Ohio either by statute or judicial decision.  *Id.*

Plaintiff argues that *Chinese Merchants* was limited to the facts of that case.  (Pl.'s Memo in Opp. 29.)  But Plaintiff badly misreads the decision.  Contrary to Plaintiff's misreading, the Court did not draw any distinction based upon an active/passive concealment concept.  Plaintiff simply makes that up.  Instead, the court examined Ohio law, both statutes and case law, and generally found that adverse domination had not been adopted in Ohio under any circumstance. *Chinese Merchants*, 823 N.E.2d at 297.  Moreover, Plaintiff's claim that the case involved "mere passive concealment" (Pl's Memo in Opp. 35) is just Plaintiff's self-serving speculation; there is no discussion of concealment in the decision at all.  *Id.* at 295–96.

Similarly, in *Squire v. Guardian Trust Co.*, 72 N.E.2d 137 (Ohio Ct. App. 1947), the court rejected adverse domination as a means for tolling a statute of limitations.  *Id.* at 147.  The court observed that adopting adverse domination would be akin to judicial legislation since the legislature enacted the applicable statute of limitations and did not include any exception based

---

[1] Given this prejudice, the Court should not revisit its previous order even if Plaintiff were right that the Court could do so.  It is a matter of fundamental fairness unrelated to the Court's discretion.

on concealment as it did for some other causes of action like fraud.  *Id.*  The court also recognized that there was no support in Ohio law for the adverse domination theory.  *Id.*[2]

Plaintiff latches onto the court's discussion of concealment in attempting to distinguish *Squire*.  (Pl.'s Memo in Opp. 28.)  But the adverse domination discussion in *Squire* only made a passing reference to concealment, and did so only to state that it would reject the theory for the same reason it rejected an argument that concealment could generally toll the statute of limitations — relief from a statute of limitations "should be furnished by legislative act, not by judicial legislation."  *Squire*, 72 N.E.2d at 146–47.

Plaintiff also attempts to mislead the Court concerning the state of the law. It provides only part of a quote, claiming that "statutes of limitations may be tolled if 'concealment or undiscovered fraud on the part of the defendant is found to exist.'"  (Pl.'s Memo in Opp. 29.)  In fact, the entire quote states that Ohio law requires actions to be promptly prosecuted "unless concealment or undiscovered fraud on the part of the defendant is found to exist, *for which exceptions are usually made in the general plan for limitation of actions*."  *Squire*, 72 N.E.2d at 146.  Immediately following that statement, the court noted that "[n]o exception has been provided covering mere concealment as distinguished from direct and specific allegations of fact showing fraud."  *Id.*  The full quotation confirms that any exception to a clear statute of limitation is the legislature's province.  And any principle that requires a plaintiff to demonstrate fraud as a prerequisite to tolling the statute of limitation by virtue of the statutory discovery rule is no help to Plaintiff in this case given that this Court has already previously found that Plaintiff "has not plead a . . . breach of fiduciary duty based on fraud."  (Doc. No. 6 p. 80; Doc. No. 26.)

---

[2] As noted in the bankruptcy court's recommendations, the Ohio Supreme Court stated in *Investors REIT One v. Jacobs*, 546 N.E.2d 206 (Ohio 1989) that *Squire* is "still good law."  (Doc. No. 6 p. 95.)

b.     Ohio's Rejection of the Discovery Rule in Breach of Fiduciary Claims Supports Rejection of the Adverse Domination Theory.

In addition to the explicit and unanimous rejection of the adverse domination theory by Ohio courts, this Court should decline to find that the Ohio Supreme Court would adopt the theory because it does not comport with Ohio's rejection of the discovery rule for breach of fiduciary duty claims.  The courts in other states that have adopted the theory have done so where the state also provided for a discovery rule in the statute of limitations at issue.  Ohio, in contrast, has rejected application of the discovery rule to causes of action not specified in § 2305.09, which provides the discovery rule for trespassing underground, injury to mines, the wrongful taking of personal property, or fraud.

As Plaintiff acknowledges, the Ohio Supreme Court has limited the discovery rule in Ohio to the claims specified in § 2305.09.  *E.g. Investors REIT One v. Jacobs*, 546 N.E.2d 206 (Ohio 1989); *see also Bell v. Bell*, No. 96-3655, 1997 U.S. App. LEXIS 34647, at *21–23 (6th Cir. Dec. 3, 1997) (Ohio Supreme Court has declined to extend the discovery rule to torts that fall outside of § 2305.09's express discovery rule provision, so discovery rule does not apply to breach of fiduciary duty claims).  These decisions make clear that the Ohio legislature has identified the only causes of action for which the discovery rule applies, and that courts are without power to extend the discovery rule to other causes of action.  Plaintiff concedes in its brief that the Ohio Supreme Court decisions "enforced the legislature's creation of a limited discovery rule."  (Pl.'s Memo in Opp. 22–23.)

This acknowledgment is important because it is widely held that adverse domination is applied only in states where a discovery rule operates regarding the statute of limitation at issue. "Courts view 'adverse domination' merely as the corporate equivalent of the discovery rule."

5

*Lincoln Gen. Ins. Co. v. Kingsway Am. Agency, Inc.*, No. 1:11-CV-1127, 2012 U.S. Dist. LEXIS 69128, at *25–26 (M.D. Pa. May 17, 2012) (*quoting In re O.E.M./Erie, Inc.*, 405 B.R. 779, 785 (Bankr. W.D. Pa. 2009); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (adverse domination theory is an extension of the discovery rule).

In other words, where an individual plaintiff's action would include a discovery rule, adverse domination prevents a corporate plaintiff from defeating the discovery rule by arguing it necessarily had knowledge through the alleged wrongdoing directors. *Resolution Trust Corp. v. Smith*, 872 F. Supp. 805, 814 (D. Or. 1995) (*quoting Hecht v. RTC*, 635 A.2d 394, 405 (Md. 1994)). The rationale does not apply here because Plaintiff's breach of duty claim falls outside of O.R.C. § 2305.09 and therefore does not come with a legislated discovery rule. In fact, the Eleventh Circuit affirmed a district court decision that a bankruptcy trustee similar to Plaintiff could not use adverse domination where, as here, the statute of limitations on the cause of action did not include a legislative discovery rule. *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 913–14 (11th Cir. 1999). Courts that "have found the adverse domination doctrine inapplicable have done so because the underlying state law explicitly rejected the doctrine or did not provide for a discovery rule regarding the statute of limitations at issue." *Id.* at *21–22 (*citing Resolution Trust Corp. v. Artley*, 28 F.3d 1099, 1102–03 (11th Cir. 1994); *FDIC v. Cocke*, 7 F.3d 396, 402–03 (4th Cir. 1993)); *see also Resolution Trust Corp. v. Chapman*, 895 F. Supp. 1072, 1076 (C.D. Ill. 1995) ("Several district courts sitting in states which recognized the discovery rule have held the adverse domination doctrine goes hand and glove with the discovery rule.").[3]

---

[3] Plaintiff's citation to *Apicella v. PAF Corp.*, 479 N.E.2d 315 (Ohio App. Ct. 1984) is inapposite, and only illustrates the dearth of case law in Ohio that would support Plaintiff's position. That court rejected the defendants' statute of limitations argument because the plaintiff brought suit within 10 months of the cause of action's accrual. *Id.* at 319–20. The quote that Plaintiff cites comes from the court's discussion of the doctrine of laches, and stands for the principle that a director who acquiesced in a transaction is not barred in the future from suing on behalf of a company based upon that action. *Id.* at 319. This quote actually supports *Defendants* because it shows that the

Plaintiff's entire argument with respect to the tolling of the statute of limitations is an impermissible attempt to expand the discovery rule to cover its breach of fiduciary duty claim. Plaintiff could have utilized the discovery rule if it had asserted and could prove a fraud claim — fraud is specifically recognized in O.R.C. § 2305.09 as a circumstance where the discovery rule applies — but Plaintiff chose to file a breach of fiduciary duty claim, not fraud.  With the fiduciary duty claims, Plaintiff enjoyed a lighter pleading burden (Rule 8 instead of the particularity standard of Rule 9) and has a lighter burden of proof.  Plaintiff however must then be subject to a statute of limitations analysis that does not take advantage of the discovery rule, expressly or through indirect means like adverse domination or tolling.

> 3.   *Even If the Court Chose to Adopt the Adverse Domination Theory, It Is Inapplicable Because a Shareholder Derivative Suit Against Antioch's Officers and Directors Was Available.*

The theoretical underpinning of the adverse domination theory (for those non-Ohio courts that have adopted the theory) is that plaintiffs should not be precluded from bringing suit in cases where only wrongdoing individuals had the ability to file a timely action.  This rationale is inapplicable to situations when persons existed "who had the knowledge, ability and motivation to bring suit during the period in which the defendants controlled the corporation."  *In re Verit Indus. v. Suitter Axland & Hanson*, No. 97-17133, 1999 U.S. App. LEXIS 3540, at *7–8 (9th Cir. Mar. 3, 1999).  Because Antioch's Board of Directors included two employee-owners who were exhaustively informed about the 2003 Transaction, who are not alleged wrongdoers, and who had the ability to bring a derivative suit on the Company's behalf because they held Antioch shares through the ESOP, adverse domination would not apply in this case even if the Court were to be the first in this state to recognize the doctrine.

---

employee-owner directors could have brought suit on behalf of the company even after they voted to approve the 2003 Transaction, as discussed below.

To begin with, it is clear that *any* ESOP shareholder had standing to initiate an action on the Company's behalf within the four-year statute of limitations relating to the 2003 Transaction. Ohio Rule of Civil Procedure 23.1 permits any legal *or* equitable shareholder to bring a derivative action on behalf of a company, and courts in states with a similar rule of procedure have recognized that "the ESOP participants in the present case are equitable stockholders and have standing to maintain a shareholders' derivative suit." *Housman v. Albright*, 857 N.E.2d 724, 728—730 (Ill. Ct. App. 2006); s*ee also State ex rel. Elish v. Wilson*, 434 S.E.2d 411 (W. Va. 1993) (ESOP beneficiaries have standing to initiate a shareholder derivative suit).

Applying this principle to this case, the undisputed facts show that Sandra Borstad and Debra Brooks-Cain, who were not only ESOP shareholders but were also voting members of the Company's Board of Directors in 2003 when the 2003 Transaction was analyzed, negotiated and approved, had sufficient knowledge to seek recourse on the Company's behalf through a derivative shareholder action.  Both of these ESOP participant Directors were present at each of the Company's Board Meetings — on July 17, 2003, August 21, 2003, October 16, 2003, October 30, 2003, and December 4, 2003 — at which the 2003 Transaction was extensively discussed, explained and analyzed (other than the October 30 meeting at which Ms. Brooks-Cain was not present), and where the Company's independent advisers and GreatBanc made extensive presentations.  (Doc. 97, Statement of Proposed Undisputed Facts ¶¶ 30–31, 39–46, 51, 55–59, 75–79.)[4]  These ESOP shareholder Directors had standing and knowledge to seek redress on behalf of the Company through a derivative action, and as a result, adverse domination is inapplicable.  *See Int'l Rys. Of Cent. Am. v. United Fruit Co.*, 373 F.2d 408, 414 (2d Cir. 1967) (to apply adverse domination, the representative plaintiff "must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue."); *Aiello v.*

---

[4] All exhibits, unless otherwise noted, are contained in the appendix filed herewith.

*Aiello*, 852 N.E.2d 68, 80–81 (Mass. 2006) ("The concerns justifying the application of the adverse domination doctrine are substantially mitigated where an informed, disinterested director is also a shareholder in the corporation.").

The presence of two informed, disinterested Directors who were also shareholders with the ability to seek redress through a derivative suit defeats any application of the adverse domination theory, even if this Court were to adopt it. Both of these Directors, though their participation on the Board of Directors throughout 2003 when the 2003 Transaction was discussed and analyzed, were thoroughly informed about the terms of the Transaction, and both had the ability to file suit in their capacity as ESOP shareholders. "[W]hen disclosures of the alleged harmful acts are made to shareholders, the corporate entity is no longer without redress against those who control it because the shareholders have both the knowledge and authority to protect the corporation's rights, and . . . therefore, there is no reason to toll the statute of limitations." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 76 (D. Del. 2002). Tolling the statute of limitations in such circumstances would go well beyond the situation that the adverse domination theory is intended to address, and would destroy the "security and stability" that statutes of limitation are designed to protect. *Gabelli v. S.E.C.*, No. 11-1274, 568 U.S. --, slip op. at 5 (Feb. 27, 2013) ("Statutes of limitations are intended to 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" (*quoting R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944))).[5]

---

[5] Many states also require that to apply the adverse domination theory, a plaintiff must show that the alleged wrongdoers engaged in fraud or intentional wrongdoing. *FDIC v. Henderson*, 61 F.3d 421, 426 (5th Cir. 1995); *FDIC v. Cocke*, 7 F.3d 396, 402–03 (4th Cir. 1993). Because a breach of fiduciary duty claim without claims of fraud does not satisfy this requirement, adverse domination cannot apply. *U.S. Bank Nat'l Assoc. v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G2012, U.S. Dist. LEXIS 106576, at *41–45 (N.D. Tex. July 31, 2012).

**B.      The Undisputed Facts Do Not Support an Equitable Tolling of the
Limitations Period Applicable to Count One.**

Plaintiff's equitable tolling and equitable estoppel arguments suffer from myriad flaws.
Plaintiff's obvious plan is that if it kicks up enough dust, through the identification of supposed
misrepresentations, that the Court will not notice that Plaintiff does not explain how any of the
misrepresentations would have prevented someone from filing a timely challenge to the 2003
Transaction.  And, crucially, Plaintiff offers no evidence — and there is none in the record —
that any particular individual with standing to sue would have filed a claim but for the
"misrepresentations" identified by Plaintiff.  Plaintiff appears to assume that it need only show a
misstatement, but Ohio cases that analyze tolling (which are almost always decided against the
plaintiff) analyze how a misrepresentation or the circumstances prevented a timely suit, and there
is no evidence in this record to even analyze the issue, let alone find a triable issue of fact.

Plaintiff presents a two-fold argument.  (Pl.'s Memo in Opp. 30.)  First it claims that it
does not need to identify any misrepresentations by a defendant that led to a missing of the
statute, but only "exceptional circumstances."  *Id*. at 30–31.  Plaintiff then claims that if required
to identify misrepresentations, it can do so.  *Id.* at 34.  Defendants do not agree that this is an
accurate construction of the law but will nevertheless follow Plaintiff's structure, after first
addressing a threshold lack of causation issue.

*1.      Plaintiff Does Not Explain How the Misrepresentations It
Identifies Toll the Corporate Claims It is Pursuing.*

As a preliminary matter, Plaintiff does not offer any evidence related to how or why the
particular claims it is asserting are subject to tolling.  Recall that Plaintiff is advancing the
Company's claims.  It is not advancing claims of the ESOP or ESOP participants and it is not
permitted to assert some general non-corporate claim of wrongdoing against Defendants.  None
of the arguments or supposed misrepresentations identified by Plaintiff have anything to do with

10

the *Company*'s ability to timely sue Defendants in connection with the 2003 Transaction, through a derivative action or otherwise.  Despite over a year of discovery and supposedly hundreds of Trust beneficiaries who are current and former Antioch employees and shareholders, Plaintiff fails to identify any specific individual who testified that, but for the specific acts of the directors identified in Plaintiff's brief, they would have filed suit.  Instead, Plaintiff speculates that the *Company's* claims would be tolled as long as circumstances kept unidentified "stakeholders" (Pl.'s Memo in Opp. 31) or "interested parties" (*id*. at 35) or "ESOP shareholders" (*id*.) from filing a timely claim, but that is not how tolling works and Plaintiff identifies no authority for its position.  But assuming for the moment that Plaintiff can build a tolling argument based on the fact that some other party is unable to specifically identify in the record did not assert a timely claim, Plaintiff takes on the obligation to establish with evidence that such other party's claims were not timely advanced for some good reason.  No such evidence exists.

        2.      *Plaintiff Cannot Demonstrate Either Required Element of Equitable Tolling.*

Plaintiff first seeks to invoke "equitable tolling."  Plaintiff skips past any discussion of the standard for applying the doctrine, surely a strategic decision in light of the Plaintiff's lack of evidence and precedential support.  Though not evident from Plaintiff's brief, a party invoking equitable tolling must show (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way preventing timely action.  *In re Regency Vill. Certificate*, No. 11AP-41, 2011 Ohio App. LEXIS 4178, at *37 (Ohio Ct. App. Sept. 30, 2011). Equitable tolling "is to be applied sparingly and only in exceptional circumstances."  *Byers v. Robinson*, No. 08AP-204, 2008 Ohio App. LEXIS 4052, at *31–32 (Ohio Ct. App. Sept. 23, 2008) (citations omitted).

Plaintiff simply has no evidence at all to offer concerning the diligence with which ESOP shareholders or other "interested parties" investigated the claim that the Trust believes someone could have filed within the limitations period.  Without compelling evidence of diligence, courts refuse to apply equitable tolling.  *In re Regency Vill. Certificate*, 2011 Ohio App. LEXIS at *26 (no equitable tolling where plaintiff "cannot establish that it diligently pursued its rights."); *Byers*, 2008 Ohio App. LEXIS 4052, at *38–42 (lack of evidence of diligence prevents application of equitable tolling); *Crego v. Baldwin-Lima-Hamilton Corp.*, No. 16515, 1998 Ohio App. LEXIS 683 (Ohio Ct. App. Feb. 27, 1998) (relied on heavily by Plaintiff, demanding a plaintiff demonstrate diligence before equitable tolling might apply).[6]

Plaintiff might claim that diligence would have been futile because an "interested party" still might not have been able to unearth a claim challenging the 2003 Transaction before expiration of the limitations period.  The Sixth Circuit recently rejected this argument, stating that it "cannot excuse [plaintiff's] lack of diligence because she might not have discovered her claim during the limitations period even had she acted diligently.  [Plaintiff] must show that she could not uncover critical information, her '*reasonable investigation notwithstanding.*'"  *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 913 (6th Cir. 2010) (citation omitted, Sixth Circuit's emphasis).  Again, Plaintiff has pointed to no evidence concerning the diligence or investigation of the individuals that were supposedly prevented from filing a timely claim.  *Ruth* confirms that courts do not engage in hypothetical diligence inquiries and guess whether or not a potential plaintiff might have uncovered information necessary to file a claim timely.  A plaintiff must bring evidence; this Plaintiff has none.

---

[6] Federal courts considering federal statutes of limitation also demand a showing of diligence before the application of equitable tolling.  *Kuenzler v. Pampur*, No. 1:08-cv-783, 2013 U.S. Dist. LEXIS 787, at *8–10 (S.D. Ohio Jan. 3, 2013) (lack of diligence prevents equitable tolling). Indeed the United States Supreme Court has observed that diligence is a prerequisite for equitable tolling.  *Holland v. Florida*, 130 S.Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).

With respect to the second half of the equitable tolling standard, extraordinary circumstances, Plaintiff identifies only that "no disinterested party had the opportunity to bring this action within the limitations period." (Pl.'s Memo in Opp. 30.) Plaintiff cites no authority from the Ohio Supreme Court to support its prediction that those circumstances would suffice as extraordinary and neglects that the great weight of cases decide tolling is inappropriate. That aside, Plaintiff's argument suffers from at least two other fatal flaws. First, Plaintiff's focus on control over filing the claim is merely a repackage of its adverse domination argument, shown in the prior section to be wholly unsupportable (and already rejected by this Court), and an inappropriate attempt to end-run the Ohio legislature's decision not to enact a discovery rule for breach of fiduciary duty claims. Second, as also shown above, there were numerous individuals that could have asserted a claim relating to the 2003 Transaction within the limitations period; any ESOP shareholder had the right to initiate a derivative action, most especially the two ESOP shareholders that sat on the Company's Board of Directors that had the benefit of substantial information concerning the 2003 Transaction and the Company's post-Transaction financial performance. *Supra*, pp. 7–9. Plaintiff's position is thus wrong on the law and on the facts.

It is also important to note that resolution of Plaintiff's claim for equitable tolling does not turn at all on the resolution of any disputed facts. Plaintiff, for example, had the burden of demonstrating diligence and has offered no record evidence. With respect to extraordinary circumstances, Plaintiff cites no cases suggesting these facts, even construed in Plaintiff's favor, are at all what is meant by extraordinary circumstances. And Plaintiff's "no available plaintiff" argument is disposed of by the presence of disinterested directors who were also equitable shareholders through the ESOP, a fact about which there is no dispute. (*See* Doc. No. 113-1, Plaintiff's Consolidated Statement Of Disputed Issues Of Material Fact ¶ 15 (providing that

Brooks-Cain and Borstad were employee-owner board members with no personal interest in the 2003 Transaction).)

Plaintiff seems to place great weight on *Wuliger v. Star Bank*, No. 3:02 CV 1513, 2008 U.S. Dist. LEXIS 54575 (N.D. Ohio June 4, 2008) to show "extraordinary circumstances" exist here. In *Wuliger*, the court tolled the statute until a receiver was appointed where no suit was filed within the limitations period. That is substantially different than the present case where two disinterested ESOP participant directors had, based on undisputed facts, as much information about the 2003 Transaction as any of the allegedly wrongdoing directors and who had an opportunity to file a timely claim but did not do so.[7] Even assuming that the *Wuliger* court got it right on the facts before it, the case is factually distinguishable.[8]

> ### 3.  Plaintiff Offers No Evidence To Support a Finding of Equitable Estoppel.

Plaintiff next claims that Defendants engaged in misrepresentations and concealments that justify tolling of the statute. The cases refer to this theory as equitable estoppel. Plaintiff

---

[7] Notably, the *Wuliger* court has issued two decisions, arising from the same receivership, subsequent to the case cited by Plaintiff that refuse to apply equitable tolling, suggesting that court has reevaluated its view with respect to the applicability of tolling. *Javitch v. Capwill*, No. 3:01 CV 7371, 2011 U.S. Dist. LEXIS 26497, at *18 (N.D. Ohio March 15, 2011); *Wuliger v. Canella Response Television*, No. 3:05 CV 854, 2011 U.S. Dist. LEXIS 4400, at *19–20 (N.D. Ohio Jan. 14, 2011).

[8] The other two cases to which Plaintiff principally cites are equally unavailing. The *Crego v. Baldwin-Lima-Hamilton Corp.*, No. 16515, 1998 Ohio App. LEXIS 683 (Ohio Ct. App. Feb. 27, 1998) holding, which was limited to the context of product liability suits, tolled the statute of limitations against a supplier when a manufacturer defendant's insolvency would have left the plaintiff without any recourse. *Id.* at *15–16. In *Ohio v. Barker*, No. 21438, 2007 Ohio App. LEXIS 4147 (Ohio Ct. App. Sept. 7, 2007), the court tolled the statute of limitations as to when the state could renew an indictment because the criminal defendant refused to abide by a forced medication order that would ensure his competency for indictment. *Id.* at *8. Clearly, the circumstances here are nowhere close to the exceptional circumstances present in *Barker*. Other cases cited by Plaintiff are no more compelling. *See Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 71 (Ohio 2004) (in dissent, discussing the role of equitable tolling in certifying a class under Rule 23); *Jacobson-Kirsch v. Kaforey*, No. 26102, 2012 Ohio App. LEXIS 3138, at *8–9 (Ohio Ct. App. Aug. 8, 2012) (considering equitable tolling on a motion to dismiss and accepting all pleadings as true); *In re Regency Village Certificate of Need Application*, No. 11AP-41, 2011 Ohio App. LEXIS 4178, at *27 (Ohio Ct. App. Sept. 30, 2011) (declining to apply equitable tolling because Plaintiff at fault for failing to timely file); *Byers*, 2008 Ohio App. LEXIS 4833, at *42 ("[W]e therefore cannot conclude that the trial court abused its discretion by determining that the doctrine of equitable tolling was unjustified under the facts and circumstances of this case.").

would have the Court believe that the statute of limitation must be tolled as long as Plaintiff establishes that the Antioch Company or one of Defendants misrepresented something at some point. Plaintiff's burden is substantially greater. To toll the statute of limitations based on Defendants' alleged misrepresentations, Plaintiff must show that (1) the defendant made a factual misrepresentation; (2) that is misleading; (3) that induced actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party. *Walburn v. Lockheed Martin Util. Servs.*, 443 F. App'x. 43, 48 (6th Cir. 2011) (citing *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App. 3d 216, 2002 Ohio 6167, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002)). Plaintiff's argument fails for multiple reasons.

          a.     The Alleged Misrepresentations Do Not Pertain to the Statute of Limitations.

Leaving aside for the moment the question of whether Plaintiff actually identified any misrepresentations, Plaintiff must identify misrepresentations that are misleading as to the statute of limitations. *Bryant v. Doe*, 50 Ohio App. 3d 19, 21 (1988). The Supreme Court of Ohio has said that for estoppel-based tolling to apply, plaintiff must point to "facts that…demonstrate the efforts of the [defendant] to prevent [a plaintiff] from filing a lawsuit. Only those facts are relevant to a resolution of this case." *Doe v. Archdiocese of Cincinnati*, 116 Ohio St. 3d 538, 540 (2008).

For example, the misrepresentation in *Bryant* was sufficient to be submitted to a fact-finder when an insurance company sent the plaintiff's attorney a letter misstating the date an accident occurred and the attorney used that date for calculating the statute of limitations and filed the lawsuit after the deadline as a result. *Bryant*, 50 Ohio App. 3d at 21. On the other hand, what is insufficient are general allegations of misrepresentations that are not directly connected to the statute of limitations or the filing deadline. As the Sixth Circuit has held in applying Ohio

15

law, the limitations period must be enforced where the alleged misrepresentation "did not pertain to the limitations period, defendant's willingness to waive the defense, or an inducement for plaintiffs to abandon the presumably timely filed action." *Walburn*, 443 F. App'x. at 49. *See also Kegg v. Mansfield*, No. 2000CA00311, 2001 Ohio App. LEXIS 2035, at 14–15 (misrepresentations that are relevant only to merits of claim and not statute of limitation do not support tolling); *Allen v. Andersen Windows, Inc*., No. 2:12-cv-347, 2012 U.S. Dist. LEXIS 180320, at *48 (S.D. Ohio 2012) (applying Ohio law) (same); *Doe*, 116 Ohio St. 3d at 540 (equitable estoppel not appropriate because complaint did not allege defendant's actions prevented filing of timely suit).

None of the supposed misrepresentations identified by the Plaintiff remotely meet this exacting standard or even relate to the filing deadline in any way. The supposed misrepresentations in the proxy document are not at all related to the statutory filing deadline factually. Moreover, not a single case supports Plaintiff's incorrect position that misrepresentations received prior to the claim accruing could have any bearing on the statute of limitation, in particular as here where there is no fraud claim and concomitant discovery rule.

As to post-transaction events, Plaintiff cites an email to Antioch's finance team from Asha Moran and claims this is evidence of the Company manipulating sales figures. Even assuming there was a misrepresentation of some sort in that email, such misrepresentation was not misleading about the statute of limitations. Indeed, because it is an undisputed fact that this email was never disclosed to ESOP shareholders (it dealt with projections, not historical sales data), the supposed misrepresentation could not have affected a potential plaintiff's ability to file suit. Notably, Plaintiff never claims that the actual financial results of the company — disclosed to all stakeholders on a quarterly and annual basis every year relevant to the complaint — were

16

ever fraudulent or misleading. This is because no such evidence was developed or uncovered through a year of discovery.

Plaintiff's other examples of post-transaction alleged misrepresentations that supposedly misled parties from filing litigation all occurred after the statute of limitations has run. Plaintiff claims that the Company kept ESOP shareholders in the dark concerning Antioch's declining financial condition. Its sole evidence is that the Company did not obtain a valuation of its shares after the statute of limitation ran in 2008 as of December 31, 2007. There is no disputed fact, however, that Antioch did receive such a valuation, and Plaintiff's counsel knows it since that very valuation was used in Kenneth Lenoir's deposition. (Lenoir Dep. 211, attached to the Appendix as Exhibit B.) But even if the Company did not, that would have nothing to do with the filing deadline since it was an act after the limitations period ran.[9] Alleged misrepresentations occurring after the statute has already run have no bearing on a tolling analysis. *Cristino v. Adm'r*, 977 N.E.2d 742, 759 (Ohio Ct. App. 2012) ("By the time the Bureau made the statement at issue, Cristino had already missed filing his complaint within the statute-of-limitations period. Cristino, therefore, cannot show that his reliance on the Bureau's statement resulted in the untimeliness of his action."); *Powers v. Pinkerton*, No. 76333, 2001 Ohio App. LEXIS 138, at *20 (Ohio Ct. App. Jan. 18, 2001) (alleged misrepresentation occurring after expiration of the statute of limitation not relevant for tolling analysis).

Similarly, the supposed other acts of post-transaction concealment all occurred in 2008, *after* the statute had already run (recall that there is no dispute that the claims accrued on December 16, 2003 and are subject to a four-year limitations period). For this same reason — that the statute had already expired at the time of the supposed misrepresentations — Plaintiff's

---

[9] The company valued its shares as of December 31 of a particular year. So, the December 31, 2007 valuation would have been undertaken in 2008, *see* Pl.'s Memo in Opp. 15, so the 2007 valuation issue would not have been ripe until after the statute had run on December 16, 2007.

discussion of other events that occurred in 2008 (Pl.'s Memo in Opp. 35–37) all fail to support Plaintiff's tolling analysis because those alleged misrepresentations are not in any way linked to any potential plaintiff filing litigation.

> b.    Plaintiff Presented No Evidence of Reliance.

"The *sine qua non* of equitable estoppel as it relates to estoppel to rely on the statute of limitations as a defense" is that a defendant "made a misrepresentation that induced her to *forgo filing suit*." *Allen*, 2012 U.S. Dist. LEXIS 180320, at *48. Plaintiff cited similar language in its brief. (Pl. Brief at 34 (misrepresentation must "be calculated to induce a plaintiff to forego the right to sue").[10]

As identified above, none of the misrepresentations identified by Plaintiff have anything to do with the statute of limitations. It is not surprising then that there is absolutely no record evidence that any supposed misrepresentation misled any party or was relied on by any party to forego filing a claim. Plaintiff, for example, has not identified even one person who testified that he or she would have filed a lawsuit within the limitations period if only he or she had received what the Trust claims is more accurate information. This is fatal to Plaintiff's position. On top of that, Plaintiff has no evidence that any act or omission was "calculated" by a Defendant to have anything to do with the statute of limitations, let alone induce a potential plaintiff to forego filing a claim.

Plaintiff was not without an opportunity to identify some individual that might claim he or she actually relied on misrepresentations and therefore failed to challenge the 2003 Transaction. Plaintiff has had the opportunity to review millions of pages of documents and interview and depose dozens of witnesses. And, perhaps most crucially, the beneficiaries of the

---

[10] Plaintiff cites *Ruch v. State*, No. 03AP-1070, 2004 Ohio App. LEXIS 6241 in its brief for this language though the quotation appears to come from *Bryant*. 50 Ohio App.3d at 21.

Litigation Trust are the precise individuals that Plaintiff claims were misled. Thus, the Litigation Trust had direct access to the very people that had standing to file a claim within the limitations period, but did not develop any testimony from them on this point.

> **4.** *Alleged Misrepresentations Concerning the Transaction Are Documents Not Material to the Statute of Limitations.*

Plaintiff devotes seven pages at the beginning of its brief (pp. 5-12) to identifying what it views as misrepresentations in the proxy statement issued by the Company in connection with the 2003 Transaction. This section seems to have been included with the goal of obfuscation because Plaintiff barely refers to proxy-related disclosures in its argument section and certainly never explains how those disclosures support a tolling theory. Perhaps Plaintiff realizes that applicable law requires it to show how a misrepresentation misled it into not filing its action, that the proxy disclosures are nothing even approaching that, and that facts occurring prior to the accrual of its claim logically provide no support. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 502 (2006) (it is "fundamental to the application of equitable estoppel for plaintiffs to establish that *subsequent* and specific actions by defendants somehow kept them from timely bringing suit") (emphasis added).

In any event, the disclosures with respect to the 2003 Transaction were accurate and written in plain language as held by the United States District Court for the Northern District of Illinois. *Fish v. GreatBanc Trust Co.*, No. 09 C 1668, 2012 U.S. Dist. LEXIS 129699, at *18 (N.D. Ill. Sept. 12, 2012).[11] Moreover, we refer the Court to the attached demonstrative exhibit showing that the Plaintiff is simply wrong that any representation in the proxy was inaccurate.

---

[11] Plaintiff cited to the Appellant's Brief in *Fish*, and although he includes it as "evidence" in support of its case, does not attempt to criticize Judge Shadur's factual findings of accuracy and clarity as it pertains to the very same materials. For sake of a complete record, and to the extent the Court finds it necessary, the Appellee Briefs have been filed and are accessible through Pacer. *See Fish v. GreatBanc Trust Co.*, Case No. 12-3330 (7th Cir.).

The Court will see that this is not a situation where a plaintiff points to evidence that says a traffic light was red and the defendant identifies evidence that the light was green, creating a disputed issue of fact.  Instead, the Court will see that the disclosures were accurate and clear, as Judge Shadur found in *Fish*.  So although the statements made in the proxy materials prior to the accrual of the claim in Count One are irrelevant to tolling as shown above, it is important to show that it is Plaintiff who is guilty of mischaracterization, and not the Company.  *See* Exhibit A.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants Lee Morgan, Chandra Attiken and Asha Moran respectfully request that this Court enter summary judgment in their favor on count one of Plaintiff's First Amended Complaint.

Respectfully submitted,

<u>/s/ Brian P. Muething</u>
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
ddaddesa@kmklaw.com
dbules@kmklaw.com

*Attorneys for Defendants,*
*Lee Morgan, Asha Moran, Chandra Attiken,*
*Marty Moran, Lee Morgan GDOT Trust #1,*
*Lee Morgan GDOT Trust #2, Lee Morgan*
*GDOT Trust #3, Lee Morgan Pourover Trust*
*#1, and Lee Morgan Pourover Trust #2*

OF COUNSEL:
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Oh 45202
(513) 579-6400

### CERTIFICATE OF SERVICE

     I hereby certify that on the 11th day of March, 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.

/s/ Brian P. Muething
Brian P. Muething

4826967.5