UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST | ) ) ) | Case No. 3:10-cv-00156 |
| | ) | **(Judge Timothy S. Black)** |
| Plaintiff, | ) ) | |
| -v- | ) ) | |
| LEE MORGAN, et al., | ) ) | |
| Defendants. | ) | |

### DEFENDANT MARTY MORAN'S REPLY BRIEF
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff's sole remaining claim against Mr. Moran alleges tortious interference with a specific contract, identified as the "Houlihan Contract" in our opening brief. Marty Moran's motion for summary judgment on that claim should be granted. This is because Plaintiff's opposition to the summary judgment motion does not cite a single genuine dispute of material fact related to its tortious interference claim against Mr. Moran. Rather, by emphasizing that Mr. Moran "assisted" Mr. Morgan in negotiating with the Board, provided "input" to Mr. Morgan's decision to engage Candlewood and gave him "help" in structuring one proposal in June 2008, Plaintiff exposes its cause of action as one for aiding and abetting Mr. Morgan, a tort not recognized in Ohio.

Moreover, Plaintiff's factual statement acknowledges that the Houlihan Contract was not breached by citing the undisputed fact that as late as May 2008, Houlihan's efforts yielded the J.H.Whitney change of control proposal that the Trust claims was the most "realistic" transaction for the Board to pursue. It is far-fetched for Plaintiff to say that the Houlihan Contract was breached — or that the Company suffered some damage that Plaintiff can pursue at trial because

of interference with that contract — when Houlihan promoted a J.H. Whitney deal to the Board, the deal the Plaintiff claims should have been closed, the Company was poised to close it, but did not because the independent ESOP Trustee exercised its control over 88% of the Company's shares to terminate that transaction. And although the Board's failure to close the Whitney deal is the subject of Counts Six and Eight, both against officers and directors for breach of fiduciary duty, Mr. Moran, who was never a fiduciary, is not a defendant in either of those claims.

After a year of discovery, Plaintiff is unable to identify a single disputed fact going to its claim against Mr. Moran. Summary judgment is therefore proper.

I. **ARGUMENT**

    A. **Summary Judgment is Proper Because Plaintiff's "Tortious Interference" Allegation is an Aiding and Abetting Claim in Disguise.**

Marty Moran is the only current defendant never to have served as an officer or director of the Antioch Company. As a result, he is the only defendant that owed no fiduciary duty to the Antioch Company. The only claim against him is for allegedly interfering with the Houlihan Contract. But the only evidence cited in Plaintiff's opposition goes to a claim for aiding and abetting such a tort, and it is now beyond question that no such cause of action exists under Ohio law. (*See* Doc. Nos. 71, 72, and 121; *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.*, 132 Ohio St.3d 516, 2012 Ohio 3828, ¶ 2, 974 N.E.2d 1194.)

To confirm this, the Court need only look at the way the Plaintiff characterizes Mr. Moran's conduct in the Opposition Brief. The following chart should assist in that regard. When Plaintiff does mention Mr. Moran, it is exclusively in the context of alleged assistance to Mr. Morgan.

| **Statement by Plaintiff in Opposition Brief** | Page |
|---|---|
| "Lee, *with input from Marty*, initiated discussions [with] Candlewood Partners…" (emphasis added to all statements) | 4 |
| "Marty and Lee interfered with Houlihan's efforts through attempts to leverage *Lee's position* as landlord of the Company to give *him [Lee]* priority in finalizing a restructuring over any offers by Houlihan's potential purchasers." | 6 |
| "[Lee] frequently attempted to use his position as landlord as leverage, a negotiating tactic that *Marty assisted*." | 7 |
| "After a year of interference by Candlewood and Lee, *with help from Marty*…" | 9-10 |
| "Seeing the writing on the wall, the Morgans, *with input from Marty*…" | 11 |

After a year of discovery the Plaintiff was unable to develop a record to advance beyond its allegation that Mr. Moran "assisted" Mr. Morgan's alleged tortious interference. Amend. Compl. at ¶ 115. (Marty Moran "assisted" Lee Morgan in engaging Candlewood.)

The bottom line is that Plaintiff's brief demonstrates that its gripe is with Lee Morgan, not Marty Moran. The eleven pages of "facts" in the memorandum have little to do with Mr. Moran or the Houlihan Contract. Indeed, pages go by with nothing more than passing reference to Mr. Moran and oftentimes not even that. In the brief's chronological discussion of the facts, Mr. Moran's name hardly appears from the time Candlewood was retained by Lee Morgan (in August 2007) until May 8, 2008, which spans nearly the entire sales process.[1]

---

[1] One reference in the brief is to something Mr. Moran did to *help* the Company. Mr. Moran assisted Levimo, LLC in the management of the building it owned and leased to Antioch Company. As Plaintiff notes in the brief, Mr. Moran attempted to find tenants to share the building with the Company. (Pl. Opp. at 7.) When sub-tenants were identified by Mr. Moran, that lowered the rent owed by the Company, and thus was a benefit to the Company. *See* Marty Moran Dep. 39:14-24 (testifying that sub-tenants were identified and that this resulted in a reduction of rent owed by the Antioch Company).

By way of further example that Plaintiff is really asserting an aiding and abetting claim, Plaintiff focuses its factual discussion on Mr. Morgan's retention of Candlewood Partners, and potential transactions identified or proposed by Candlewood Partners.  Plaintiff acknowledges the undisputed fact that Lee Morgan was the only party that retained Candlewood Partners.  *See* Plaintiff's Response to Proposed Undisputed Facts at 14 (admitting that Lee Morgan alone engaged Candlewood Partners); Pl. Opp. at 16 ("There is a genuine dispute as to whether the conduct of *Marty's father-in-law in engaging Candlewood* while serving as the Company's CEO and acting on behalf of Antioch constituted a breach of the Company's exclusive agreement with Houlihan.") (emphasis added).  *See also* Ex. 232 ("Investor" defined as Lee Morgan).

It is thus an undisputed fact that Mr. Morgan, as distinguished from Mr. Moran, retained Candlewood Partners.  The most the Trust can claim with respect to Mr. Moran is that Lee Morgan had "input" from Mr. Moran (Opp. Brief at 4), that Mr. Moran (along with others) participated in interviews of potential financial consultants (*id*.), that Mr. Moran had lunch with Mr. Morgan and a representative of Candlewood Partners, and that Mr. Moran was copied on emails concerning the engagement letter between Mr. Morgan and Candlewood Partners (*id*. at 5).  Leaving aside the benign and not illegal nature of these acts — interviews, lunch, etc. — the most that can be said of Mr. Moran is that, in the Trust's own words, he was "assisting" Mr. Morgan in engaging Candlewood Partners.  As a result, Plaintiff has only identified facts that Mr. Moran aided and abetted Mr. Morgan's alleged misconduct, a claim that this Court (really, Ohio law) has foreclosed.

As if Plaintiff's brief in opposition did not provide enough support for the idea that Plaintiff has conflated its tortious interference claim and aiding and abetting allegations, when asked at the Rule 30(b)(6) deposition of the Trust what documents supported Plaintiff's tortious

interference claim, the Trustee twice reiterated that the exact same facts that supported the aiding and abetting claims were those that supported the tortious interference claim.  (Miller Dep. 57:2-58:23.)  And when asked what documents supported the tortious interference claim, the Trustee identified only those documents he had previously stated supported the aiding and abetting claims.  *Id*. at 58:24-59:7.  The Trustee could not identify even one fact or one document that supported the tortious interference claim that was independent of the aiding and abetting allegations.  The aiding and abetting claims were dismissed two weeks after this deposition, and it is beyond clear that the Plaintiff is improperly still asserting them under the guise of the tortious interference claim.

To endorse Plaintiff's theory by allowing the claim against Mr. Moran to proceed is to revive the aiding and abetting claims that this Court dismissed based on the Ohio Supreme Court's recent holding in *Devries*.  As a result, and because Plaintiff has not identified any disputed facts for which a reasonable trier of fact could find that Mr. Moran committed a direct and actionable tort, summary judgment is proper.

      **B.**     **Plaintiff Identifies No Breach of the Houlihan Contract.**

Summary judgment should be entered for the independent reason that the undisputed facts show that Mr. Moran did not cause Houlihan or the Company to breach the Houlihan Contract.  Plaintiff's opposition does not identify any genuine dispute as to this material fact.

The Ohio Supreme Court holds that breach of contract is an element of a tortious interference claim.  *Kenty v. Transamerica Premium Ins. Co.,* 650 N.E.2d 863, 866 (Ohio 1995).  Plaintiff agrees that *Kenty* controls and that an element of the claim is the "intentional procurement of the contract's breach."  (Pl. Opp. at 14.)  As noted in the motion, this Court has agreed, stating that a tortious interference claim gives plaintiff a remedy for an improperly

- 5 -

"terminated relationship." *Hodges v. City of Milford*, 1:10-cv-884, 2013 U.S. Dist. LEXIS 7779, *61-62 (S.D. Ohio, Jan. 18, 2013).[2]

As Mr. Moran pointed out in the motion, the only breach of contract Plaintiff could identify was a breach by the *Company*, not by Houlihan, and would therefore be actionable only by Houlihan. In response, Plaintiff candidly agrees, saying that its theory is that "Marty caused the Company to breach its contract with Houlihan…[.]" Pl. Opp. at 15. Plaintiff cites no authority for the proposition that a party can breach its own contract and then recover damages as a result of the breach.[3]

Plaintiff's response also offers no evidence to suggest that the Company failed to receive the benefit of the Houlihan Contract, i.e. investment banking services from Houlihan. Plaintiff does not deny that Houlihan faithfully operated as the Company's investment banker. For example, despite what Plaintiff claims was interference, "Houlihan delivered letters of intent from prospective purchasers Marlin Equity, J.H. Whitney and Monomoy Capital." Pl. Opp. at 9. Moreover, Plaintiff's position is that Houlihan succeeded in bringing a good and valid offer to the Board in May 2008 from J.H. Whitney. The independent ESOP Trustee scuttled that

---

[2] Plaintiff argues that *American Maritime Officers v. Marine Engineers Beneficial Association*, 503 F.3d 532 (6th Cir. 2007) holds that a breach of contract is not required under Ohio law. But that case does not cite or even consider *Kenty*—undeniably the source of Plaintiff's claim—or even consider the elements of a tortious interference claim in any detail. Moreover, other post-*Kenty* federal cases that purportedly ignore *Kenty's* mandate are, we submit, wrongly decided under the *Erie* doctrine.

[3] One could envision a scenario where Plaintiff's tortious interference claim might have viability if Houlihan had sued the Company for breaching the Houlihan Contract, and Plaintiff attempted to shift responsibility for that breach to supposed interferers, so as not to have to pay damages to Houlihan. Of course, those are not remotely our facts. Houlihan has never sued the Company—even after having been named as a defendant in this matter and thus having motivation to file counterclaims—and the Trustee was not aware of any documents where Houlihan contended that Antioch had breached the Houlihan Contract. (Miller Dep. 60:1-6.)

Plaintiff also claims that Mr. Moran can be liable for merely making plaintiff's performance of the contract more difficult. (Pl. Opp. at 14-15, 18-19, *citing Kenneth J. Majcen Assocs. v. Phoenix Assocs., Inc.*, No. 76454, 2001 WL 60038 at *5 (Ohio App. Jan 18, 2001).)  Even assuming that is an accurate construction of the cause of action, the undisputed facts favor Defendant. Plaintiff has no evidence that the Company's performance under the Houlihan Contract was impaired (and certainly not by anything Mr. Moran did). The Company's burdens under the contract were limited to paying a success fee upon a completed transaction. There is no factual dispute that the Company owed Houlihan a fee that was not paid, much less that Mr. Moran prevented such a payment.

transaction, but the failure to close Whitney does not constitute a breach of the Houlihan Contract. This is because it is undisputed that there was never a contractual provision that the Company or Houlihan was obligated to close a Houlihan-procured deal; only that it was obligated to pay Houlihan if that or any other transaction closed. *See* Ex. 208 (Houlihan Contract). It is thus an undisputed fact that Antioch was receiving the investment banking services to which it was entitled under the Houlihan Contract. Perhaps this is why Plaintiff did not sue Houlihan for breaching the Houlihan Contract—the Company received the benefit of its bargain and Plaintiff cannot contend otherwise.

Plaintiff's principal complaint appears to be that the Company did not successfully execute a Houlihan-sponsored transaction. That is why it focuses at great length in its response on proposals received from various interested parties and other proposals from Candlewood Partners. Leaving aside that Marty Moran was "assisting" with the last of the Candlewood offers in June 2008 only, the failure to consummate the Candlewood and other offers did not result in a breach of the Houlihan Contract. That agreement did not guarantee that Houlihan would identify a transaction that would ultimately be consummated or would satisfy the Company. Houlihan was to provide investment banking services, which it did, and no act of Mr. Moran prevented that from happening.[4]

---

[4] Plaintiff also has a causation hurdle that it cannot clear. Even under its view of the facts, the Special Committee distanced itself from certain Houlihan-sponsored offers (Pl. Opp. at 9) and it was the Board of Directors that, in June 2008, decided not to move forward with the Whitney offer (*id*. at 11 and the subject of Count Eight). So, the reason those transactions did not close had nothing to do with Mr. Moran preventing Houlihan's performance. To the extent Plaintiff thinks that those transactions should have closed, it has asserted claims that the board of directors breached its fiduciary duty in these decisions. *See* Amend. Compl. at Counts Six and Eight. But there are no disputed facts supporting tortious interference liability.

## II. CONCLUSION

Plaintiff has no evidence to support a claim against Mr. Moran, and also no evidence to support a tortious interference claim generally where the Company received the full benefit of the Houlihan Contract. Summary judgment should be granted.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
ddaddesa@kmklaw.com
dbules@kmklaw.com

*Attorneys for Defendants,*
*Lee Morgan, Asha Moran, Chandra Attiken,*
*Marty Moran, Lee Morgan GDOT Trust #1,*
*Lee Morgan GDOT Trust #2, Lee Morgan*
*GDOT Trust #3, Lee Morgan Pourover Trust*
*#1, and Lee Morgan Pourover Trust #2*

OF COUNSEL:
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Oh 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

      I hereby certify that on June 24, 2013 a copy of the foregoing Defendant Marty Moran's Reply Brief in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.

      /s/ Michael L. Scheier
      Michael L. Scheier

4977161.4