UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE, | : : : : | Case No. 3:10-cv-156 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| LEE MORGAN, *et al.*, | : : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT ATTIKEN'S
MOTION FOR SUMMARY JUDGMENT (Doc. 135)**

This civil action is before the Court on Defendant Chandra Attiken's motion for summary judgment (Doc. 135) and the parties' responsive memoranda (Docs. 161, 173).

### I. BACKGROUND FACTS[1]

Defendant Chandra Attiken moves for summary judgment on Plaintiff's breach of fiduciary duty and equitable subordination claims.

Ms. Attiken joined The Antioch Company ("Antioch") in 1998 as Vice President of Human Resources. (Doc. 75 at 8). She held this position until she left the Company in 2009. (*Id.* at 8-9). Additionally, she served as a member of the ESOP Advisory Committee, the body responsible for directing the Company's ESOP Trustee and assisting with the selection of a new trustee. (*Id.* at 19-20). She never served on the Antioch Board of Directors. (*Id.* at 10).

---

[1] A detailed factual background is available at Doc. 6, Section III. *See also* Docs. 136 and 162.

Attiken alleges that Plaintiff has failed to offer any evidence supporting the allegations that she breached any fiduciary duty in connection with the sale process in 2007-2008.  Specifically, Attiken maintains that she had no substantive involvement in the origination, design, development, evaluation, or execution of the sale process. Accordingly, summary judgment should be granted in her favor on Counts Six and Eleven, the remaining claims against her.[2]

Plaintiff argues that summary judgment is inappropriate because as an officer of the Company, Attiken had a duty not to sit idly by while her fellow officers and directors wasted corporate assets and failed to act in the best interest of the Company.

The relevant portion of the Trust's Amended Complaint, Count Six "Breach of Fiduciary Duty with Respect to the Sale Process" reads:

> 192.   [Attiken] owed common law and statutory fiduciary duties to Antioch and its creditors of good faith, loyalty, and disclosure, to refrain from self-dealing and other conflicts of interest, and to avoid wasting and mismanaging corporate assets.
>
> 193.   [Attiken] allowed the Morgan family to pursue or failed to prevent the Morgan family from pursuing recapitalization alternatives although the Board was paying Houlihan to find a purchaser.  This decision was not in the best interests of Antioch.
>
> 194.   The engagement of multiple professionals providing duplicative services that were unlikely to be successful and were not successful amounted to a waste of Antioch's assets.
>
> 195.   [Attiken] failed to provide Antioch with prudent direction despite Antioch's deteriorating financial position.  This omission harmed Antioch.

---

[2] The equitable subordination claim in Count Eleven is wholly derivative of the Count Six breach of fiduciary duty claim.

2

196. As a result, [Attiken] breached [her] fiduciary duties to Antioch and its creditors, causing Antioch to suffer damages.

The relevant portion of the Trust's Amended Complaint, Count Eleven "Equitable Subordination" reads:

223. Defendants Attiken, Lee, Asha and the Morgan Trusts (the "Equitable Subordination Defendants") are "insiders" pursuant to 11 U.S.C. §101(31).

224. The Equitable Subordination Defendants engaged in inequitable conduct, including, but not limited to, self-dealing, breaches of fiduciary duties, and depletion of corporate assets.

225. The Equitable Subordination Defendants' conduct in this regard is egregious, substantial and gross misconduct.

226. The Equitable Subordination Defendants' conduct caused injury to the Debtors' creditors.

227. The Equitable Subordination Defendants' conduct conferred an unfair advantage on the Equitable Subordination Defendants.

228. Attiken has made a claim for monies owed in this case in the amount of not less than $169,547.63.

232. The Equitable Subordination Defendants' claims must be equitably subordinated to all other creditors in this case to return the Debtors' creditors to their rightful positions.

233. Under these circumstances, equitable subordination of the Equitable Subordination Defendants' claims is not inconsistent with, and is in furtherance of, the provisions of the Bankruptcy Code.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III.  ANALYSIS

#### A. Corporate Officers

A breach of fiduciary duty claim under Ohio law must satisfy the following three elements: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Valente v. Univ. of Dayton*, 438 F. App'x 381, 387 (6th Cir. 2011). Any such alleged duty, however, must be related to the officer's position and job responsibilities. In other words, "a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation…if such director

or officer is not personally connected with the wrong and does not participate in it."
*Seale v. Citizens Sav. & Loan Assoc.*, 806 F.2d 99, 106 (6th Cir. 1986).[3]

### B. Fiduciary Duty With Respect to Sale Process in 2007-2008

Attiken joined Antioch in 1998 as the Vice President of Human Resources and as an officer of the Company. (Doc. 75 at 8). As part of her job as Vice President of Human Resources, Attiken was appointed by the Board of Directors to serve as a member of the Company's Employee Stock Ownership Plan ("ESOP") Advisory Committee. (*Id.* at 19-20). The other members of the ESOP Advisory Committee were CEO Lee Morgan and his daughter, Asha Morgan Morgan. The ESOP Advisory Committee was responsible for a variety of tasks related to the management of the ESOP, including making any changes to the ESOP distribution policy, searching and recommending candidates to serve as the ESOP Trustee to the Board, and, when appropriate, directing the ESOP trustee as to how to vote the ESOP's shares.

The only participation in the sale process Plaintiff can identify is that Attiken gathered HR-related material requested by prospective purchasers in their due diligence investigations and provided the material to the Antioch employee who tasked her with the

---

[3] The Court acknowledges that *Seale* involves a claim from a third party rather than the corporation itself; however the Court fails to find why this distinction should effect the Court's analysis. Moreover, additional cases hold the same. *See, e.g., In re Amcast Indus. Corp.*, 365 B.R. 91, 103 n.4 (S.D. Ohio 2007) (discussing breach of fiduciary duty claim against former officers of bankrupt company, stating "while officers are held to a similar standard of care [as directors] toward a corporation, they will not be held personally liable for acts of a corporation merely by virtue of their status as officers"); *Condos. Ass'n v. Bruner*, Case No. 2:09cv339, 2011 U.S. Dist. LEXIS 16029, at *11-15 (E.D. Cal. Feb. 17, 2011) (dismissing breach of fiduciary duty claims against officers against whom participation in the wrong was not alleged; mere status as officer insufficient to allege liability).

5

assignment. (Doc. 75 at 14-15). Although it is true that, beginning in the second quarter of 2008, Attiken gathered these materials for distribution to potential buyers, this is not material participation in the sale process. Extending fiduciary liability to an officer for such a ministerial and isolated act would defeat the purpose behind Ohio's requirement that an officer participate in an alleged wrongful act before liability may attach.[4]

Additionally, Attiken was not involved with vetting or analyzing offers for purchase. (Doc. 76 at 422-24, 423-424; Doc. 131 at 257-258; Doc. 93 at 495). It is undisputed that Attiken never attended a meeting of the Special Transaction Committee. (Doc. 75 at 13; Doc. 94 at 560). Moreover, she never brought potential purchasers to the Committee. (Doc. 93 at 470). Additionally, she never interacted with either the investment advisor to the Special Transaction Committee, Houlihan Lokey, nor the investment advisor to Lee Morgan, Candlewood Partners. (Doc. 94 at 560; Doc. 141 at 117-118; Doc. 139 at 260). Attiken's job responsibilities did not place her within the scope of the sale process and, as a result, she was not even aware of the sale process until mid-2008. (Doc. 75 at 80-81).[5]

---

[4] Every witness to testify in this civil action stated the Attiken had no material involvement in the Company's sale process. (Doc. 76 at 422-424; Doc. 94 at 560, 562; Doc. 133 at 127-128; Doc. 131 at 257-258; Doc. 93 at 470, 495; Doc. 75 at 12-14).

[5] Plaintiff states that Attiken's "testimony that she did not know the Company was for sale until mid-2008 despite that being the reason for the hiring of an outside Trustee in May 2007 in which she participated, is equally suspect." (Doc. 161 at 13). The Court disagrees. Attiken was Vice President of *Human Resources*, which explains why she was involved in the hiring of an outside Trustee in May 2007, yet did not know the Company was for sale until mid-2008. Attiken likely played a role in every facet of the business, as she was responsible for Antioch's human capital. However, the fact that she was involved in hiring the Company's financial executives, for

*1.     Case law*

Plaintiff cites a series of cases for the proposition that a director cannot escape fiduciary liability by claiming ignorance of a wrongful act.[6]  However, these cases are inapposite because Attiken's motion for summary judgment is not based on her ignorance of the sale process, rather the motion is based on the fact that she did not participate in the process.

Additionally, Attiken was never a director.  (Doc. 75 at 10).  Plaintiff seeks to assume that the duties of officers and directors are identical under Ohio law, but cites no support for this proposition.  Ohio Statutes define the fiduciary duties of directors, but not officers.  *In re Antioch Co*., 456 B.R. 791, 860 (Ohio 2011).  Ohio statutory law requires directors to exercise responsibility for the entire corporation, while no such requirement or expectation exists for officers.  Ohio Rev. Code § 1701.59 ("all the authority of a corporation shall be exercised by or under the direction of its directors").  Unlike directors, officers are only liable for the acts of a corporation "if they took party in the act, specifically directed the act to be done, or participated or cooperated in the act." *In re Antioch Co*., 456 B.R. at 860.

---

example, does not suggest that she had vast knowledge of the Company's finances.  Any other inference is nonsensical and unsupported.

[6]  *See, e.g., Geygan v. Queen City Grain Co.*, 593 N.E.2d 328 (Ohio App. 1991) (addressing the duty of a director); *Nat'l Century Fin. Enters.*, 504 F.Supp.2d 287, 313-14 (S.D. Ohio 2007) (addressing the duty of a director).

### *2. Evidence that Attiken participated in the sale process*

Plaintiff presents a series of facts which allegedly provide a basis for liability.

First, Plaintiff focuses on the fact that Attiken was involved in executing various retention bonuses for key employees.  However, the retention bonuses are not associated with the sale process.  Moreover, it is undisputed that the idea to pay bonuses originated with the Board of Directors and the consultants advising them in the sale process.  (Doc. 87 at 218-219).

Plaintiff also cites Attiken's role in communicating with ESOP noteholders. However, Attiken's role in these communications was limited to editing and coordinating communications that were drafted by an outside consultant.  (Doc. 75 at 107-108).

Next, Plaintiff discusses Attiken's involvement with interviewing a prospective ESOP trustee.  However, Attiken's only role in hiring an ESOP trustee was, as the ERISA fiduciary, conducting a short telephone interview with Reliance.  (Doc. 75 at 90-92).  In fact, Steven Martin, Senior Vice President of Fiduciary Consulting at Reliance, and the individual principally responsible for servicing the Antioch ESOP, does not recall ever speaking with Attiken.  He testified that she played no role in the sale process, and, in fact, is not even aware of who Attiken is.  (Doc. 133 at 38, 126-128).  Attiken's limited and isolated pre-engagement contact with Reliance does not constitute participation in the sale process, because it had nothing to do with marketing the Company to potential

purchasers or evaluating offers from those entities, but rather involved the evaluation of a new ERISA fiduciary candidate. (*Id.*)[7]

While Plaintiff presents documentary evidence that alleges an issue of fact as to when Attiken became *aware* of the sale process, this evidence fails to address the crux of the matter – whether Plaintiff had any material involvement or participation in the process. Therefore, upon careful review of the evidence presented, the Court finds that there are not disputed issues of fact that are material to Counts Six and Eleven. There is simply no evidence that Attiken had any substantive involvement in the origination, design, development, evaluation, or execution of the sale process.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant Chandra Attiken's motion for summary judgment on Counts Six and Eleven (Doc. 135) is **GRANTED**, as there is no genuine dispute as to any material fact relating to Attiken's role, and she is entitled to judgment as a matter of law. The Clerk shall enter judgment in favor of Defendant Attiken, dismissing her from this lawsuit.

---

[7] Attiken had no authority with respect to who should be hired. Moreover, Attiken maintains that she had very little involvement with hiring Reliance as the ESOP's trustee, a Board function, and Reliance's engagement as trustee was independent of the sale process. (Doc. 94 at 96-98).

**IT IS SO ORDERED**.

Date:  8/2/13                                                                 */s/ Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge