UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST | ) ) ) | Case No. 3:10-cv-00156 |
| | ) | (Judge Timothy S. Black) |
| Plaintiff, | ) ) | |
| -v- | ) ) | |
| LEE MORGAN, et al., | ) ) | |
| Defendants. | ) ) | |

LIMITED MOTION TO EXCLUDE PLAINTIFF'S
EXPERT'S REPORT, OPINIONS AND TESTIMONY
REGARDING DAMAGES AND MEMORANDUM IN SUPPORT

Defendants Lee Morgan, Asha Moran, and Marty Moran move to exclude the report and testimony of Plaintiff's expert witness Mark A. Greenberg related to damages because he is unqualified to give a damages opinion, because he admittedly used no methodology at all in reaching his conclusions, much less one that is "the product of reliable principles and methods," and because his damages opinions are unreliable. Fed. R. Evid. 702(c). The grounds for this motion are set forth in the attached memorandum in support.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952

Fax: (513) 579-6457
*Attorneys for Defendants,*
*Lee Morgan, Asha Moran, Marty Moran, Lee*
*Morgan GDOT Trust #1, Lee Morgan GDOT*
*Trust #2, Lee Morgan GDOT Trust #3, Lee*
*Morgan Pourover Trust #1, and Lee Morgan*
*Pourover Trust #2*

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  <u>INTRODUCTION</u>

This motion seeks an order excluding the report, opinions and testimony of Mark Greenberg, Plaintiff's expert witness, relating to damages.  Mr. Greenberg's entire report and all of his opinions should eventually be excluded from evidence, but at this juncture we seek more limited relief corresponding to the pending summary judgment motions.  If any of Plaintiff's claims survive summary judgment, we will move to exclude Mr. Greenberg from giving any testimony or opinions at trial.

This motion is not filed out of routine or reflex or because of disagreement with Mr. Greenberg's views. Rather, the Court should see this as a circumstance where the expert is so truly unqualified and unreliable—beyond any question—that the Court must exercise its gatekeeper function to exclude his damages opinions at the dispositive motion stage.

Mr. Greenberg expressed two damages opinions.  One relates to enterprise value that the Antioch Company allegedly lost between May and November 2008 (the "Lost Value Damage Opinion").  The second relates to professional fees Antioch paid during an undefined period (the "Professional Fees Damage Opinion").  For both opinions, Mr. Greenberg admitted that he did not use any methodology in calculating Plaintiff's alleged damages. Indeed he acknowledged that he was not familiar with any methodology at all for calculating damages and that he lifted his baseline numbers and valuations from the work of others (or from the Plaintiff's lawyers) without any independent analysis or review of underlying documents or evidence.

By way of example, Mr. Greenberg's Lost Value Damage Opinion relies on a valuation of the Antioch Company as of the date it filed bankruptcy performed by a third party even though Mr. Greenberg did not review the underlying analysis, assumptions, work product, work

papers and methodology used in the valuation, and even though Plaintiff and its counsel previously retained a different expert in Antioch's bankruptcy that specifically concluded that this very valuation was incorrect, and substantially so.  His Professional Fees Damage Opinion merely repeats an estimated amount of fees paid that he obtained from Plaintiff's lawyers, without reviewing a single document.

The limited scope and the timing of this Motion is aimed at the summary judgment motions to be filed by defendants. Plaintiff has represented over and over during discovery and to this Court in prior motion practice that it would establish damages through expert testimony. If Mr. Greenberg's opinions and testimony are excluded, the Court would be able to dismiss all or most of Plaintiff's claims by summary judgment. Indeed, the Court recently recognized that the pre-trial exclusion of a plaintiff's damages expert left the plaintiff with no vehicle to prove damages and entered summary judgment for the defendant. *Info-Hold, Inc. v. Muzak LLC*, No. 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at \*14-17 (S.D. Ohio Aug. 20, 2013) (Black, J.). The same should occur here.

## II.    THE GOVERNING STANDARD

### A.    Plaintiff Bears the Burden of Proving Mr. Greenberg's Opinion is Admissible

The party proffering expert opinion evidence bears the burden of proving its admissibility.  *Pride v. BIC Corp*., 218 F.3d 566, 578 (6th Cir. 2000).  This is so even though the party sponsoring the expert witness is not the movant.  *See id.*

When a party's expert witness is challenged, the Court assumes the role of a gatekeeper to ensure that the expert's testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597 (1993). Rule 702 specifies, first, that an expert must be qualified to testify through knowledge, skill, experience, training, or education. Fed. R. Evid.

- 2 -

702. A qualified expert may then testify as long as his opinions will aid the fact finder and are reliable, meaning they are based on sufficient data, reliable methods, and the facts of the case. Fed. R. Evid. 702(a)-(d); *see In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). If Plaintiff fails in its burden to prove Mr. Greenberg's opinions are admissible, the Court must exclude Mr. Greenberg, his testimony and his opinions because flawed expert testimony may not be considered in the name of providing each side leeway in the presentation of its case. *Estate of Barabin v. AstenJohnson*, *Inc.*, __ F.3d __, No. 10-36142, 11-35020, 2014 U.S. App. LEXIS 774, at *14-16 (9th Cir. Jan. 15, 2014) (*en banc*) (district court abused discretion in erroneously admitting expert testimony).

The sections that follow present three independent grounds for the exclusion of Mr. Greenberg's damages opinions: Mr. Greenberg is not qualified to give damages opinions; he does not use "reliable principles and methods" in formulating his damages opinions; and his opinions are unreliable. Based on all or any one of these, Mr. Greenberg's damages opinions should be excluded and not considered as evidence on summary judgment or at trial.

## III.    ARGUMENT

### A.    Mr. Greenberg is Unqualified

An expert witness's proposed testimony must relate directly to the area in which the witness claims expertise. *Smelser v. Norfolk S. R.R. Co.*, 105 F.3d 299, 305 (6th Cir. 1997) (opinion excluded where expert went beyond area of expertise). "An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007); *Design Basics, L.L.C. v.*

*Deshano Cos., Inc.*, No. 10-14419, 2012 U.S. Dist. LEXIS 135384, at *5-7 (E.D. Mich. Sept. 21, 2012) (opinions excluded where expert "wandered afield from his area of expertise").

Damages calculations fall well outside of whatever expertise Mr. Greenberg claims to have as an investment banker—he has never been qualified as an expert with respect to damages or offered any prior testimony with respect to damages;  (Greenberg Dep. at 94:19-95:2); he is not an accountant or economist (*see* Greenberg Report (Doc. 197-1) at 26); he has no background, training, experience, or expertise in the computation of damages (Greenberg Dep. at 94:19-96:5); he has never published a trade piece or scholarship on damages (*Id.* at 95:3-95:20); and he admits that he did not use any methodology in formulating his opinion because he is not familiar with any such methodologies:

> Q. Are you familiar with any methodologies typically used by damages experts?
>
> A. No.
>
> Q. I take it, then, you didn't bring to bear any specifically identifiable damages methodology in preparing your report or formulating your opinions in this case?
>
> A. That would follow from my previous answers, yes.

(*Id*. 95:21-96:5.)[1] This Court, in *Info-Hold*, recently excluded a damages expert for these very reasons. *Info-Hold, Inc. v. Muzak LLC*, No. 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *5-6 (S.D. Ohio Aug. 20, 2013) (Black, J.).

None of Mr. Greenberg's education, experience, skill or training qualify him to quantify Plaintiff's damages.  He is thus unqualified and his report, testimony and opinions with respect to damages should be excluded from evidence.

---

[1] *See also* Greenberg Dep. at 95:9-11 ("Q: Are you familiar with any damages methodologies? A: No, I'm not.").

**B.    Mr. Greenberg Did Not Employ Any Methodology**

The opinions of an expert testifying based on specialized skill or knowledge must be excluded if the opinions are not reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156-57 (1999).  Opinion testimony is not reliable if it is based solely on the witness's say so, or an unrecognized methodology.  *Id.*; *see also Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254-55 (6th Cir. 2001) (court did not abuse discretion excluding expert opinion under *Kumho Tire* at summary judgment stage).

It follows that an expert should be excluded where there is no "evidence that his opinions were arrived at by any methodology, let alone any reliable methodology." *Yancey v. Carson*, No. 3:04-CV-556, 3:04-CV-610, 2007 U.S. Dist. LEXIS 78289, at *13 (E.D. Tenn. Oct. 19, 2007). An opinion must be excluded, even if the witness might be an expert, when it is "conceded that he did not employ the methodology that experts . . . find essential." *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 186 (7th Cir. 1993).

Mr. Greenberg's opinions and testimony related to damages must be excluded from the evidence considered on summary judgment or at trial because his opinions were not developed through the use of any methodology at all.  As to damages, he admitted as much.  (Greenberg Dep. at 95:21-96:5) (testifying he is not aware of any such methodologies); (*Id.* at 332:19-23) (testifying he parroted counsel's estimate of the damages as his Professional Fees Damage Opinion without independent review of the record).  This is also clear from the rambling, narrative text of his report and the complete absence of any reference to any recognized analytical principles or approach or citation to the extensive factual record.  There is simply no way that the Court can permit Mr. Greenberg to testify as to damages given that he admits to not having employed a methodology.

Because the Lost Value Damage Opinion and the Professional Fees Damage Opinion are unsupported by any methodology or reliable principles, Mr. Greenberg's opinions, report and testimony on damages must be excluded.

**C.     Mr. Greenberg Is Not Reliable**

Beyond his lack of qualifications and admitted lack of methodology, Mr. Greenberg must be excluded as an opinion witness because his opinions are not reliable.

> *1.     Mr. Greenberg's Opinions Are Unreliable Because He Failed To Perform Any Independent Analysis*

The Court's *Info-Hold* decision also makes clear that "an expert's testimony must be based on independent analysis and objective proof." *Info-Hold, Inc. v. Muzak LLC*, No. 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *12 (S.D. Ohio Aug. 20, 2013) (Black, J.) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 430 (6th Cir. 2007)).

In *Info-Hold*, the expert fell short where he "relie[d], without verification, on Plaintiff's employees and Plaintiff's counsel for information crucial to his opinions." *Id.* at *13. The Court in *Info-Hold* also found an expert unreliable where he "relie[d] entirely on the numbers provided in the report" of a different expert "without examining any of Defendant's underlying documentation or independently verifying [the other expert's] numbers." *Id.* at *14-15. Mr. Greenberg similarly "fell short" in these two regards.

The closing line of Mr. Greenberg's report states that the directors caused the Company to lose the opportunity to realize between $20 million and $30 million in value. This is the Lost Value Damage Opinion, and is Mr. Greenberg's attempt at quantifying damages in connection with the Plaintiff's claims. He gets to this number by measuring Antioch's value in May 2008 by way of a $54 million letter of intent from J.H. Whitney, and subtracting from it an Antioch valuation as of the petition date prepared by a turn-around group and former Defendant, CRG, in

2008. In other words, the Lost Value Damage Opinion uses solely numbers from other sources (the J.H. Whitney letter of intent number and the CRG valuation from the disclosure statement) without performing any independent verification or analysis of these figures. *See* Greenberg Dep. 296:8-297:15, 299:10-14 (Mr. Greenberg did not review CRG's work, supporting papers, models, assumptions, or Antioch's corporate performance and forecasts used by CRG but merely lifted the number from Antioch's Disclosure Statement); (Greenberg Dep. at 295:11-22, 362-64 and Ex. 803) (Mr. Greenberg understood that the Whitney letter of intent was not binding and probably did not reflect Antioch's actual value).

More specifically, as to the Whitney LOI, blind reliance on this number is unreliable because it is not the product of any analysis by Mr. Greenberg (or, as far as we know, J.H. Whitney). *Info-Hold*, 2013 U.S. Dist. LEXIS 117953, at *13. In fact, there is not even any record of what J.H. Whitney considered in arriving at this figure, or what assumptions were built into it.

The number at the bottom end of Mr. Greenberg's calculation, the CRG valuation, is likewise unreliable. As noted above, Mr. Greenberg did not perform any independent analysis of CRG's valuation, but rather accepted in blindly. He did not review or even know of, much less analyze, the financial and economic assumptions that CRG built into its valuation model; he did not review or analyze CRG's work papers; he did not review any of CRG's financial or economic modeling; he did not review the internal Antioch financial reports available to GRG and upon which it relied; he did not know who at CRG prepared the valuation; and he did not know what valuation methodology CRG used. (Greenberg Dep. at 296:8-298:18.))[2] Moreover, the CRG value range, on its face, confesses its unreliability: "The value of an operating business

---

[2] Plaintiff sued CRG in this case so it is particularly ironic that Plaintiff now places full faith in its work product.

such as debtor's business is subject to uncertainties and contingencies that are difficult to predict and will fluctuate with changes in factors affecting the financial condition and prospects of such a business." (Greenberg Dep. 301:13-24; Ex. 802.)

Much the same can be said of the Professional Fees Damage Opinion. Mr. Greenberg did not review any documents or time records in "developing" this opinion. In fact, the truth is that Mr. Greenberg did absolutely nothing more than write down in his report what Plaintiff's counsel told him to write:

Q. Fair enough. What's the source of the $6 million figure that you list in your report?

A. It was an estimate that I received.

Q. Who did you receive that from?

A. From the Taft lawyers.

(Greenberg Dep. 332:19-23.)

Mr. Greenberg's damage opinions fall squarely within the two sins identified in *Info-Hold*, and as with the opinions in that case, should be excluded from evidence.

> 2.   *Mr. Greenberg's Opinions Are Unreliable Because He Fails to Consider Alternate Explanations*

Mr. Greenberg's Lost Value Damage Opinion is unreliable, and therefore inadmissible for an additional independent reason. He did not consider alternate causes for the alleged decrease in Antioch's value between May and November 2008.

The Advisory Committee notes to the Federal Rules of Evidence instruct the Court to consider "'whether the expert has adequately accounted for obvious alternate explanations.'" *Cooper v. Brown*, No. 04-CV-656H, 2005 U.S. Dist. LEXIS 46232, at *136 (S.D. Cal. May 27, 2005) (*aff'd*, 510 F.3d 870 (9th Cir. 2007). An expert report that fails to do so is considered unreliable and should be excluded from evidence. *See Jack Henry & Assoc., Inc. v. BSC, Inc.*,

487 Fed. App'x 246, 256-57 (6th Cir. 2012) (unpublished) (district court did not abuse its discretion in barring as unreliable expert testimony that failed to consider alternate explanations); *R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244, 270-74 (S.D.N.Y. 2010) (failure to consider alternate explanations important factor in excluding expert opinions).

According to Mr. Greenberg, the value of the Antioch Company decreased in 2008. Mr. Greenberg blamed *every dollar* of that supposed decrease on the defendants without considering the possibility that some other factor—*any* other factor—might have played a role. Even though the record contained much factual testimony and other evidence of it, Mr. Greenberg failed to consider evidence that the economic conditions in 2008, the worst since the Great Depression, may have contributed to all or some of Antioch's alleged loss in value. Mr. Greenberg also failed to consider, despite testimony and other record evidence, that continuing pressure on the Company's business model from changing customer behaviors (placing and sharing pictures online or otherwise electronically), contributed to or caused the alleged decline in Antioch's value. (*E.g.,* Greenberg Dep. at 487:19-490:10). Yet when pressed on cross-examination, Mr. Greenberg admitted that these factors, and others, could have affected the value of the Company. (Greenberg Dep. at 484-96.) Mr. Greenberg's failure to consider the effect of these factors on the value of the Antioch Company makes his opinion unreliable. *Rich & Rich P'ship v. Poetman Records USA, Inc.*, No. 08-436-ART, 2010 U.S. Dist. LEXIS 48900, at *14-18 (E.D. Ky. May 18, 2010) (expert report unreliable where it failed to account for alternate explanations, including economic recession and changing consumer behaviors caused by electronic downloading of music).[3]

---

[3] We do not mean to argue that these were the sole or contributing causes to a decline in Antioch's value because Defendants do not concede a decline in value in fact occurred. Rather, we emphasize Mr. Greenberg's failure to

     *3.*     *Mr. Greenberg's Lost Value Damage Opinion Suffers*
              *Additional Flaws Adding to Its Unreliability*

As noted above, the Lost Value Damage Opinion was not generated through a recognized damages or valuation methodology and is thus unreliable for that reason. But the problems do not end there. None of the numbers Mr. Greenberg used in the Lost Value Damages Opinion—a "verbal" offer from Sun Capital of $63 million, the $54 million figure in J.H. Whitney's letter of intent, and the CRG enterprise valuation of $31-38 million as of the petition date—are sufficiently reliable for Mr. Greenberg to use in his damages analysis.

     a.     The "Top-End" Numbers Are Flawed and
             Mr. Greenberg Recognizes This

For starters, the record confirms that the Sun Capital "verbal offer" (Mr. Greenberg's quotation marks, see Greenberg Report p. 17) was merely a passing comment that no one took to be an offer of any type. Mr. Greenberg himself admitted that the Sun Capital "offer" was not a reliable data point and, though it was an important part of his report, he disclaimed any reliance on it upon cross-examination.

Q. It's [the Sun Capital oral offer] not a reliable data point, is it?

A. That'd be -- sure.

Q. You agree with me?

A. I agree.

(Greenberg Dep. at 293:18-21.)

That leaves Mr. Greenberg with only the $54 million figure from the Whitney letter of intent.  Mr. Greenberg errs when he treats the Whitney LOI as a cash equivalent, ignoring the many contingencies in connection with the Whitney transaction and also that there was no

---

consider them, even if he would have ultimately rejected them as factors in whole or in part in Antioch's alleged decline in value.  The point is he did not analyze their impact at all.

assurance at all that the Company would realize that consideration in a transaction with Whitney. (Greenberg Dep. at 295:11-22) (admitting that there is no assurance that Whitney would have actually paid $54 million).) Mr. Greenberg, in fact, has acknowledged that a letter of intent is not cash equivalent and that the suggested price in one is not a reliable indicator of the eventual amount that will be paid for a target company. As Mr. Greenberg points out, as an investment banker "[There is] only one signal[] that the deal is done, and that is when the money is in the bank. Many first time buyers and sellers think the deal is largely completed and only the details left to be decided once an offer is accepted. Nothing can be further from the truth. More value is lost between the time there is a signed letter of intent and a closing than anyone ever cares to admit." *See* Ex. 803; *see also* Greenberg Dep. at 362-364 (Mr. Greenberg testifying that letters of intent are non-binding and a transaction price is typically reduced from the letter of intent to the final agreement.)

By giving the number in the Whitney letter of intent more materiality for litigation purposes (*i.e.*, as cash equivalent) than he would in the real world of transactions and valuations as an investment banker, Mr. Greenberg fails to "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). This leaves his calculation outside of the realm of reliable, admissible evidence.

        b.     The Litigation Trustee Admits That the CRG Valuation is Unreliable

The Litigation Trustee and his Taft colleagues previously argued in this case that the CRG valuation was unreliable and actually retained an expert that sharply criticized CRG and came to a significantly different view of Antioch's value than CRG.

- 11 -

The Court will recall that the Litigation Trustee, Mr. Miller, and the Taft firm served as counsel for the Creditor's Committee (the "Committee") in the Antioch bankruptcy case from which this lawsuit arises. When the debtors sought confirmation of their plan of reorganization, the Committee, with Taft as its counsel, objected to confirmation because, in their view, the plan—using the CRG valuation—undervalued Antioch.[4] Mr. Miller's brief on behalf of the Committee stated that "the Company has significant value as a going-concern in excess of the value alleged in the Disclosure Statement (the "CRG Valuation")." (*See* Bankr. Case Doc. 275 at 15.) Mr. Miller also represented to the Bankruptcy Court that, "Based on earning capacity, the Company is worth significantly more than the Debtors would have this Court believe." *Id.* The Committee, Mr. Miller wrote, "expects to demonstrate through the testimony of its proposed financial advisor at the Confirmation Hearing that the Reorganized Debtors have a going concern value substantially in excess of the CRG Valuation."

The financial advisor referred to in the Committee brief was Periculum Capital Company. On the eve of the confirmation hearing, a Taft attorney representing the Committee emailed the Bankruptcy Court as well as other parties in the bankruptcy case the exhibits it intended to introduce at the confirmation hearing. Among them was the expert report of Periculum. We have attached the Periculum report as Exhibit A for the Court's review and convenience. Periculum concluded that CRG's $31-38 million valuation was terribly off the mark and

---

[4] It was in the interests of the Committee and the unsecured creditors during the bankruptcy case to contend that Antioch was more valuable as of the petition date than others in the bankruptcy case claimed—taking this position, the unsecured creditors could argue that they were entitled to better treatment in the plan or a larger distribution from the estate.

unreliable. Instead, Periculum calculated an enterprise value for Antioch in excess of $80 million.[5]

The tactics of Mr. Miller and his counsel are disturbing. Yet whether the conduct of Plaintiff and his counsel was appropriate is ultimately a side issue. For present purposes, in determining the reliability of Mr. Greenberg's opinion, the Court need only decide whether the CRG valuation is a reliable data point. We know that it is not, Plaintiff agrees, and inexplicably withheld it from Mr. Greenberg. There is simply no way the CRG valuation can be considered reliable in the way Mr. Greenberg seeks to use it.[6]

### 4. The Professional Fees Damage Opinion Suffers Additional Flaws Adding to its Unreliability.

Mr. Greenberg claims that the Company wasted $6 million in fees that it paid to professionals during the sales process. Mr. Greenberg's Professional Fees Damage Opinion should be excluded for the following additional reasons. First, Mr. Greenberg lacks the knowledge, skill, experience, training and education to qualify him to opine as to the appropriateness of professional fees generally. Second, he did not use any methodology in reaching this number. As if all that were not bad enough, Mr. Greenberg later admitted that the entire theory of basing damages on wasted professional fees that Plaintiff's counsel fed him was flawed anyway. He conceded in his deposition that assigning damages for loss of value *and* wasted professional fees was inappropriate double counting because the cash paid out to

---

[5] Periculum employed three valuation methods. A discounted cash flow valuation yielded an enterprise value of over $100 million; an estimated book value post bankruptcy method suggested a value of $46 million; and a comparable company analysis resulted in a valuation of $95 million. Periculum then averaged these values to arrive at an average enterprise value of $80 million. *See* Periculum Report at 1-2.

[6] The Committee eventually settled its confirmation objection in exchange for, among other things, establishment of a litigation trust – the same trust with the same counsel that is Plaintiff in this case. *See* Bankr. Case Doc. 300.

professionals would necessary be accounted for in calculating the cash component of Antioch's value.  (Greenberg Dep. 431:10-432:23.)

Based on the foregoing, Mr. Greenberg's Lost Value Damage Opinion and Professional Fees Damage Opinion should be excluded from evidence.[7]

## IV. CONSIDERING THIS MOTION IN CONJUNCTION WITH DISPOSITIVE MOTIONS PROMOTES JUDICIAL EFFICIENCY

The Court should consider this motion in conjunction with the forthcoming dispositive motions because it will assist the Court in evaluating the claims, if any, that survive summary judgment.  *Info-Hold, Inc. v. Muzak LLC*, No. 1:11-cv-283, 2013 U.S. Dist. LEXIS 117953, at *15-17 (S.D. Ohio Aug. 20, 2013) (Black, J.).  Similar to *Info-Hold,* Plaintiff has repeatedly represented that it can only prove damages through an expert witness.  For example, Plaintiff indicated in it its Rule 26(a) initial disclosures that it would retain "one or more experts" to quantify its claimed damages.[8]  Plaintiff repeated this position in responding to an interrogatory from Defendants regarding damages.[9]

And in the last fact-discovery deposition in this case, Plaintiff designated Mr. Miller as its Rule 30(b)(6) witness.  During cross examination, Mr. Miller deflected damages questions to a soon-to-be-identified expert witness:

- "In connection with the damages and the damages calculations, I think the Trust's view is that is something that is properly the province of expert testimony, and that is something

---

[7] Mr. Greenberg's opinion is also not reliable because at no point did Mr. Greenberg even attempt to assign or apportion responsibility, liability, or damages among the twenty defendants to this matter and the others who at one point were defendants or were never sued. His opinions, per Mr. Greenberg, only "occasionally examin[e] the roles and actions of some of the defendants and participants [in the sales process]." (Greenberg Report at 5.)

[8] *See* Plaintiff's First Supplement To Rule 26(a) Initial Disclosures, attached as Exhibit B.

[9] *See* The Antioch Company Litigation Trust's Response To First Set Of  Interrogatories Of Defendants Lee Morgan, Asha Moran, Chandra Attiken, Marty Moran, and Certain Named Trust Defendants Directed To Plaintiff The Antioch Company Litigation Trust, attached as Exhibit C.

that we would -- the Trust would anticipate having an expert testify with respect to." (Miller Dep. (Doc. 88) 84:1-10.)

•      "I think our answer is with respect to the damages very much remain what we've placed in this interrogatory, that these are the various categories of damages and that, you know, through the use of a testifying expert, we would expect to put specific dollar amounts on that." (Miller Dep. (Doc. 88) 85:15-21.)

•      "Again, that's another thing [the interest, fees, and other charges Plaintiff seeks as damages] that we would expect an expert to go through the financials and calculate that." (Miller Dep. (Doc. 88) 84:9-11.)

•      [With respect to the claimed loss in enterprise value that resulted from the tender offer and the sale process]: "So, again, this is something -- and particularly this would be something that would be the basis, in our view -- in the Trust's view of expert testimony." (Miller Dep. (Doc. 88) 85:22-25.)

•      "Again, that's something [calculate the fees and expenses paid to restructuring professionals claimed as damages] I think we'd have an expert do."  (Miller Dep. (Doc. 88) 84:16-22.)

Plaintiff represented that it would prove damages through an expert, and thereby prevented fact discovery on that element of its claims.  It may not seek to prove its damages otherwise as a matter of estoppel and fundamental fairness to the Defendants now that discovery is closed.

Cole v. Homier Distrib. Co., No. 4:07CV01493 JCH, 2009 U.S. Dist. LEXIS 23641 (E.D. Mo. Mar. 20, 2009) is directly on point. In Cole, as here, the plaintiffs had represented in interrogatory responses and deposition testimony that their damages would be provided by an expert. Id. at *16. The court excluded plaintiffs' damages expert and "Plaintiffs [then] assert[ed] that they can support their damages claim through their own testimony and calculations, without the assistance of an expert." Id. at *15. But the "[p]laintiffs' assertion that they can provide evidence of their damages absent the testimony and report of their excluded expert . . . 'is so contradictory to everything else that it raise[s] only a sham issue.'" Id. at 17. The court refused to allow the plaintiffs to develop a damages theory other than through the excluded witness, and therefore granted summary judgment to the defendants.

- 15 -

This same result—the one recently ordered by this Court in *Info-Hold*, as well as in *Cole*—should apply here at the summary judgment stage. Therefore, a decision on the motion to exclude Mr. Greenberg could (and should) substantially narrow or terminate this matter.[10]

## V.    CONCLUSION

Based on the foregoing, Defendants Lee Morgan, Asha Moran, and Marty Moran request that the Court exclude from evidence on summary judgment and at trial Mr. Greenberg's damages opinion and testimony.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Danielle M. D'Addesa (0076513)
David T. Bules (0083834)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
ddaddesa@kmklaw.com
dbules@kmklaw.com

*Attorneys for Defendants,*
*Lee Morgan, Asha Moran, Marty Moran, Lee*
*Morgan GDOT Trust #1, Lee Morgan GDOT*
*Trust #2, Lee Morgan GDOT Trust #3, Lee*
*Morgan Pourover Trust #1, and Lee Morgan*
*Pourover Trust #2*

---

[10]  The Sixth Circuit holds that the Court is not required to hold a *Daubert* hearing to decide a motion to exclude an expert witness. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 532 (6th Cir. 2008). We suggest that a hearing on this motion is not necessary because the issues are well defined and the relevant evidence is found in Mr. Greenberg's sworn deposition testimony.

OF COUNSEL:
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Oh 45202
(513) 579-6400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2014 a copy of the foregoing Limited Motion to Exclude Plaintiff's Expert's Report, Opinions and Testimony Regarding Damages and Memorandum in Support was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.


/s/ Michael L. Scheier
Michael L. Scheier

5066684.11