## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re The Antioch Company, et al., | : | Case Nos. 08-35741 through 08-35747 |
| | : | (Jointly Administered) |
| Debtors | : | |
| | : | |
| The Antioch Company Litigation Trust, W. Timothy Miller, Trustee, | : | Adversary Proceeding No. 09-03409 |
| | : | |
| Plaintiff, | : | Honorable Judge Humphrey |
| | : | |
| v. | : | |
| | : | |
| Lee Morgan, et al., | : | |
| | : | |
| Defendants | : | |

### THE ANTIOCH COMPANY LITIGATION TRUST'S RESPONSE TO FIRST SET OF INTERROGATORIES OF JAMES A NORTHROP

Plaintiff The Antioch Company Litigation Trust (the "Trust") hereby provides the following objections and responses to Defendant James A. Northrop's First Set of Interrogatories.

### GENERAL OBJECTIONS

1. Plaintiff objects to these interrogatories to the extent that they purport to seek information and documents protected by the work-product doctrine and/or the attorney-client privilege.

2. Plaintiff objects to the Definitions and Instructions to the extent that they alter the plain meaning of any term or impose obligations on Plaintiff that are inconsistent with or in addition to the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure.

3. Plaintiff's investigation of the facts and information that relate to the claims and defenses asserted in this action is ongoing and its responses to these interrogatories are based upon information now known to Plaintiff. Plaintiff reserves the right to modify and/or supplement any of its responses.

4. All of the following responses are made without waiving, but expressly preserving:

   a. All questions as to competency, relevancy, materiality, privilege and admissibility as evidence for any purpose in any subsequent proceeding, or in the trial of, this or any other action;

   b. The right to object to the use of these responses or documents or the subject matter thereof, in any subsequent proceedings, or in the trial of, this or any other action on any grounds;

   c. The right to object on any grounds at any time to a demand for further responses to these or any other interrogatories or other discovery procedures involving or relating to the subject matter of the interrogatory herein responded to and/or the subject matters of any and all documents identified in accordance herewith; and

   d. The right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1.** State all facts on the basis of which plaintiff alleges that Northrop "allowed the Morgan family to pursue or failed to prevent the Morgan family from pursuing recapitalization alternatives," as alleged at paragraph 193 of the Complaint.

13001422.1

2

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome.

Without waiving this objection, the Trust states that James Northrop ("Northrop") served on the Antioch Company Board of Directors (the "Board") from December 2007 until his dismissal in 2008. During that time period, Northrop served as a member of the Special Transaction Committee (the "Special Committee") which directed the efforts of Houlihan Lokey to pursue a sale or recapitalization of the Company. As a member of the Board and the Special Committee, Northrop sanctioned the pursuit of sale efforts by Houlihan Lokey while simultaneously supporting or failing to stop the efforts of the Morgan family to recapitalize the Company to the detriment of the Company. At the same time, the Special Committee evaluated various offers from the Morgan family and their investment banker, Candlewood, and even offered to pay the fees of Candlewood. The Special Committee, including Northrop, approved of the engagement of multiple professionals and/or took actions sanctioning the actions of multiple professionals with inconsistent objectives to sell, refinance, or recapitalize the Company, thereby jeopardizing realistic alternatives for the Company, wasting Company assets and creating confusion in the marketplace. Additionally, Northrop and other members of the Special Committee allowed Lee and Asha to use their position as the largest creditors of the Company to put their interests ahead of the best interest of the Company and caused or allowed the Company to give preference to a consensual transaction with the Morgan family over any acquisition by an independent purchaser, significantly chilling interests of parties looking to acquire or invest in Antioch.

Throughout the time period that Northrop served on the Board of Directors, he and his fellow board members failed to provide the Company with prudent direction and a necessary sense of urgency despite the Company's deteriorating financial position. In January of 2008, as one of Northrop's first acts as director and member of the Special Committee, he agreed to Lee Morgan's demand that the Company would only work towards a transaction with the Morgan Family and any parties already contacted through Houlihan Lokey prior to December 31, 2007, and directing Houlihan Lokey not to contact any new prospective buyers. The Special Committee did not tell Lee Morgan that his demands improperly placed the Morgan family's interests ahead of the best interests of the Company, nor did it admonish him and Candlewood Partners to stop interfering with the efforts of Houlihan Lokey. In February, 2008, the Special Committee, including Northrop, agreed to give preference to a consensual transaction with the Morgan family, despite their inability to present the Special Committee with a realistic proposal, including committed financing. In March, 2008, the Special Committee agreed to give the Morgan family a 30-day exclusive period to pursue a proposed transaction with GSC. GSC walked away at the end of the exclusivity period. At no time did Northrop demand that Lee Morgan cease violating the exclusive agreement between the Company and Houlihan Lokey All of the documents that demonstrate or tend to demonstrate this allegation are too voluminous to identify in detail in response to this interrogatory, but include documents MM0023454-MM0038106; MM0012952-MM0012956; MWE-0095962-MWE-0101700; MWE-Luce 00140-MWE-Luce 00142; MWE-Luce-00367; MWE-Luce 00383-MWE-Luce 00385; PCA 0001940- PCA 001943; KMK-042187; KMK048420-KMK048422; TAC-CC-

0006287-TAC-CC-006297; TAC-CC-012912; TAC-CC-0283859-TAC-CC-0283907; TAC-CC-00400586-TAC-CC-0400601; TAC-CC-074341-TAC-CC-074343; TAC-CC-0405206-TAC-CC-0444281; CP-000683-684 and the facts and communications represented therein.

**INTERROGATORY NO. 2.** Identify with specificity each action taken by Northrop by which Northrop "allowed the Morgan family to pursue recapitalization alternatives" as alleged at paragraph 193 of the Complaint.

<u>RESPONSE</u> The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, on the grounds that it is overly broad and unduly burdensome, and because it is duplicative of Interrogatory No. 1. Without waiving this objection, the Trust states, see Response to Interrogatory No. 1.

**INTERROGATORY NO. 3.** Identify with specificity each circumstance in which Northrop "failed to prevent the Morgan family from pursuing recapitalization alternatives," as alleged at paragraph 193 of the Complaint, and state specifically what action or conduct that plaintiff contends Northrop should have taken or engaged in but did not.

<u>RESPONSE</u> The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, on the grounds that it is overly broad and unduly burdensome, and because it is duplicative of Interrogatory No. 1. The Trust further objects to the extent that this interrogatory asks the Trust to identify each specific instance in which Northrop failed to

take action. His lack of action was co-extensive with his service on the Board of Directors. Without waiving this objection, the Trust states, see Response to Interrogatory No. 1.

**INTERROGATORY NO. 4.** Identify the "decision" referred to at paragraph 193 of the Complaint. Include in the answer the persons who made the decision, the person(s) or entity(ies) on behalf of which the decision was made, and the specific terms of the decision.

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. Without waiving this objection, the Trust states that the Board and the Special Committee entertained various offers from the Morgan Family related to the recapitalization of the Company. The decision to sanction, participate in the consideration of and to prioritize the Morgan Family's recapitalization efforts is the decision referred to by paragraph 193. This decision was made by the Board and the members of the Special Committee, including Northrop, and is illustrated by the Special Committee's communications with Lee Morgan and his financial advisors, Candlewood, and by the decision to pay Candlewood's fees for their efforts. Documents that tend to demonstrate this course of action by the Special Committee and the Board include MM0023454-MM0038106; MWE-0095962-MWE-0101700; KMK-042187; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; CP-000683-684 and the facts and communications represented therein.

INTERROGATORY NO. 5. Identify "Antioch" as that term is used in paragraph 193 of the Complaint.

RESPONSE: The term refers to The Antioch Company, its affiliates, and its subsidiaries.

INTERROGATORY NO. 6. Describe specifically the "best interests of Antioch" referred to in paragraph 193 of the Complaint, and explain how the "decision" contravened or diminished the "best interests of Antioch."

RESPONSE  The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome and calls for an expert opinion. Without waiving this objection, the Trust states as follows: During Northrop's period of service on the Board of Directors and Special Committee, the Antioch Company was in dire financial straits, unable to meet its debts as they came due and unable to stop a continued, serious decline in sales. The best interests of the Company at that time involved remedying its precarious financial situation by maximizing the value of the Company for the maximum number of stakeholders. The most obvious and likely way of achieving maximum value was through a sale of the Company to a third party through a change of control transaction. Lee Morgan was in denial as to both the extent and the urgency of the Company's financial problems and had unrealistic expectations as to the value of the Company. Lee Morgan's desire was to maintain control of the Company to continue his family legacy. Rather than forcing Lee Morgan to come to terms with reality, the Board, including Northrop, agreed to give

preference to Lee Morgan's efforts to recapitalize the Company while maintaining control for himself and his daughter, rather than to Houlihan Lokey's efforts to find a third-party who would pay for a controlling interest in the Company. Potential buyers were discouraged from seriously pursuing a purchase once they learned that the CEO, chairman of the board and major creditor preferred to stay in control, and that the board was entertaining his efforts, even though he could not obtain any financing commitments. Northrop, joining the Board and the Special Committee as an outsider, was in a unique position to recognize the dire nature of the situation and the damage that Lee Morgan was inflicting on the Company, yet he failed to cause the Special Committee to put a stop to the dual-track sale process, or to force Lee Morgan to resign. This dual track process, approved and re-approved by the Special Committee, resulted in confusion in the market place, wasted Company assets, distracted the Board and its advisors from the business of the Company, and hindered the Company's ability to realize either a sale or a recapitalization. The facts and circumstances supporting these allegations are too numerous to identify in detail in response to this interrogatory, but are demonstrated or tend to be demonstrated by documents MM0023454-MM0038106; MM0012952-MM0012956; MWE-0095962-MWE-0101700; MWE-Luce 00140-MWE-Luce 00142; MWE-Luce-00367; MWE-Luce 00383-MWE-Luce 00385; PCA 0001940- PCA 001943; KMK-029367; KMK-042187; KMK-048420-KMK-048422; TAC-CC-0006287-TAC-CC-006297; TAC-CC-012912; TAC-CC-0283859-TAC-CC-0283907; TAC-CC-00400586-TAC-CC-0400601; TAC-CC-074341-TAC-CC-074343; TAC-CC-0405206-TAC-CC-0444281 EPSTEIN00027177-EPSTEIN00027179, and the facts and communications represented therein.

INTERROGATORY NO. 7. Identify the "certain directors," and all other participants, in the meeting in Chicago, Illinois in February, 2008, as alleged at paragraph 135 of the Complaint, and state with specificity all terms and provisions of the agreement that plaintiff alleges was reached at such meeting.

RESPONSE     The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome. Additionally, because discovery is still ongoing, the Trust reserves the right to supplement this answer. Without waiving its objections, the Trusts states that participants at the meeting that took place on February 13, 2008 in Chicago, Illinois included: Nancy Blair, Malte von Matthiessen, Jim Shein, Stephen Spencer, Jason Price, Michael Epstein, Kenneth Lenoir, Mike New; Steve Dunavent; David Williams, Peter Aliferis, Lee Morgan, Asha Morgan Moran, Steve Bevelhymer, Glenn Pollack, and Michael Salgat. As set forth in the Amended Complaint, the participants agreed on a plan of action (rather than a formal documented "agreement") by which the parties would work on a developing a consensual transaction that would allow the Morgan family to retain controlling positions in the Company. Following the Chicago meeting, the members of the Special Committee, including Northrop, agreed that course of action would take precedence over any transaction with other independent buyers or investors who would acquire a controlling interest in the Company. The facts supporting this allegation are demonstrated or tend to be demonstrated by numerous documents,

including Evolve 010144-Evolve010155; CP-000686-689; MWE-0099670-MWE-0099683; HL188495; and the facts and communications represented therein.

**INTERROGATORY NO. 8.** Identify the "multiple professionals" referred to at paragraph 194 of the Complaint, and explain in detail all manners and instances in which their services were duplicative.

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome. Additionally, because discovery is still ongoing, the Trust reserves the right to supplement this answer. Without waiving this objection, the Trust states that the multiple professionals referred to at Paragraph 194 of the Complaint included Houlihan Lokey and Candlewood Partners. Houlihan and Candlewood were simultaneously engaged to pursue a solution to the Company's financial problems – Houlihan in a sale or recapitalization and Candlewood in a recapitalization. Both parties utilized the time of the Company's officers and directors, financial resources, and operated in the same marketplace. All of the facts that demonstrate or tend to demonstrate this allegation are too voluminous to identify in detail in response to this interrogatory, but include documents MM0023454-MM0038106; MWE-0095962-MWE-0101700; MWE-0095948; KMK-042187; TAC-CC-0164897; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; CP-001604-1611; CP-000683-684; HL188495; and the facts and communications represented therein.

**INTERROGATORY NO. 9.** Identify specifically all instances, circumstances, and occasions on which Northrop "failed to provide Antioch with prudent direction," as alleged at paragraph 195 of the Complaint, and for each such instance, state and describe the prudent direction that plaintiff contends Northrop should have provided.

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, on the grounds that it is overly broad, unduly burdensome and calls for a legal conclusion, and to the extent it seeks to require the Trust to identify every instance in which Northrop failed to do something. His lack of action was co-extensive with his service on the Board of Directors. Without waiving these objections, the Trust states that Northrop, through his service on the Special Committee and the Board, participated in and ratified a number of decisions that contributed to the failure of the Company's attempts to recapitalize or find a buyer, namely the Special Committee's support for the dual sale process. Northrop, and other members of the Board, should have prevented the Company from considering multiple offers from the Morgan Family and should have directed the Company's professionals accordingly. Northrop and the remainder of the Board and Special Committee should have advised the Company that Morgan Family Control was not of primary importance in considering offers to purchase or recapitalize the Company. Additionally, Northrop and the remainder of the Board and/or Special Committee should have encouraged the resignation of Lee Morgan at an earlier point in time. The facts and circumstances supporting these allegations are too numerous to identify in detail in response to this interrogatory, but are demonstrated or tend to be demonstrated by documents MM0023454-MM0038106; MWE-0095962-MWE-0101700;

KMK-042187; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; CP-000683-684 and the facts and communications represented therein. See also Response to Interrogatory No. 6.

**INTERROGATORY NO. 10.** Identify the fiduciaries whom plaintiff alleges Northrop aided and abetted, as alleged at paragraph 198 of the Complaint.

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. Without waiving this objection, the Trust states Northrop aided and abetted the following in breaching their fiduciary duties to the Company: Lee Morgan, Asha Morgan Moran, Nancy Blair, Jeanine McLaughlin, Alan Luce, Malte Von Matthiessen, Denis Sanan, Kimberly Lipson-Wilson, Karen Felix, Steve Bevelhymer, Chandra Attiken, CRG, Paul Ravaris, Michael Epstein, and Guy Walker.

**INTERROGATORY NO. 11.** Identify with specificity each of the "actions" that "constituted breaches of fiduciary duties" as alleged at paragraph 199 of the Complaint, and identify each person the plaintiff alleges took such actions.

**RESPONSE** The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad, unduly burdensome. The Trust further objects to the extent this request calls for a legal conclusion. Without waiving this objection, the Trust states that the individuals identified in the Trust's Response to Interrogatory No. 10 were the members of the Board and officers of the Company. In his position as a member of the Board and of the Special Committee, Northrop knew or

13001422.1

12

should have known that the directors and officers were breaching their fiduciary duties to the Company through the actions described in Responses to Interrogatory Nos. 1 and 6. He also knew or should have known that Lee and Asha Morgan were conflicted by their positions as warrant holders, subordinated noteholders, lessors to the Company, and their desire to maintain management of the company. He also should have known that Denis Sanan and Jeanine McLaughlin were conflicted in considering and evaluating offers that might change the capital structure of the Company given that they held warrants and subordinated notes. Additionally, Northrop and the other members of the Board and Special Committee took actions, outlined in more detail in the Trust's Response to Interrogatory No. 1, which wasted the Company's corporate assets and caused harm to the Company in breach of their fiduciary duties. These actions included engaging multiple professionals to undertake conflicting approaches to rehabilitating the Company's financial condition. Northrop also aided and abetted those individuals in their failure to direct the Company towards a prudent course of action. The facts and circumstances supporting these allegations are too numerous to identify in detail in response to this interrogatory, but are demonstrated or tend to be demonstrated by documents MO0002280-MO0002281; HL061338-HL061342; MM0023454-MM0038106; MWE-0095962-MWE-0101700; KMK-042187; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; TAC-CC-0274361; HL099779; CP-000683-684 and the facts and communications represented therein.

**INTERROGATORY NO. 12.** State all facts on the basis of which plaintiff alleges that Northrop knew of the actions alleged at paragraph 199 of the Complaint, and that such actions constituted breaches of fiduciary duties.

**RESPONSE**    The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome. Without waiving this objection, the Trust states that Northrop, through his acceptance of a position on the Board of Directors and on the Special Committee knew or should have known that fellow members of the Board were conflicted and that the actions take by the Officers and Directors of the Company constituted breaches of their duties. Northrop was present at Board Meetings and meetings of the Special Committee and had access to the advisors of the Board and the Special Committee. Northrop was the recipient of email and other communications related to the dual sale process and the course of action being undertaken by the Board and the Special Committee. The facts and circumstances supporting these allegations are too numerous to identify in detail in response to this interrogatory, but are demonstrated or tend to be demonstrated by documents MM0023454-MM0038106; MWE-0095962-MWE-0101700; KMK-042187; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; CP-000683-684 and the facts and communications represented therein.

**INTERROGATORY NO. 13.**    Identify all actions taken by Northrop by which Northrop "assisted with or encouraged" breaches of fiduciary duties.

**RESPONSE**    The Trust objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine, and on the grounds that it is overly broad and unduly burdensome. Without waiving this objection, the Trust states that Northrop, through his service on the Board and the Special Committee and failure to otherwise object, ratified the actions, decisions

and conduct of those individuals identified in the Trust's Response to Interrogatory 10. The facts and circumstances supporting these allegations are too numerous to identify in detail in response to this interrogatory, but are demonstrated or tend to be demonstrated by documents MO0002280-MO0002281; HL061338-HL061342; MM0023454-MM0038106; MWE-0095962-MWE-0101700; KMK-042187; TAC-CC-0006287-TAC-CC-006297; TAC-CC-0283859-TAC-CC-0283886; CP-000683-684 and the facts and communications represented therein. See also Responses to Interrogatory Nos. 1, 6 and 9.

**INTERROGATORY NO. 14.** Provide a detailed accounting of the damages that plaintiff alleges were caused by any act or omission of Northrop. For each item of damage, provide a complete description of the manner in which it is calculated, and the specific facts on which such calculations were performed.

### RESPONSE

The Trust previously disclosed that its damages from the time period in which Northrop was a member of the Board and Special Committee include, but are not limited to: fees and expenses paid to restructuring professionals as a result of the deepening insolvency of Antioch and the loss in enterprise value resulting from the dual Tender Offer and sale process. As set forth repeatedly in the Trust's Responses to Interrogatories No. 1-12, Northrop was involved in and/or ratified the Board's decision to pay fees of the restructuring professionals and the Board and Special Committee's actions with respect to the dual sale process.

13001422.1

15

The Trust continues to analyze information relevant to the calculation of damages. The Trust provides the following additional information for each of the categories of damages it has identified that are attributable in part to the action or inaction of Northrop. This information is based on the Trust's preliminary review and analysis and remains subject to further investigation and analysis. By failing to identify any particular category of damages or information with respect to any category, the Trust does not exclude additional categories of damages or information relevant to calculating its damages.

### *Fees and Expenses Paid to Restructuring Professionals as a Result of the Deepening Insolvency of Antioch*

Based on its review of documents provided to the Trust and/or the Committee, the Trust believes its records of fees the Company paid to restructuring professionals as a result of Antioch's deepening insolvency are incomplete. The Trust has requested detailed invoices from restructuring professionals and will supplement its Initial Disclosures with respect to this category of damages.

### *The Loss in Enterprise Value that Resulted from the Tender Offer and the Sale Process*

The Trust expects to offer expert testimony on the loss of enterprise value that resulted from the Tender Offer and the sale process. Based on its review of documents provided to the Trust and/or the Committee, the Trust believes such lost value approximates not less than $121 million. The Trust arrives at this calculation based on expressions of interest in the Company received from Jostens and Sun Capital during the summer of 2007, which valued Antioch at between $148 million and $185 million based on multiples of 4 to 5 times EBITDA of approximately $37 million. By May 2008,

the Company's value had declined to approximately $54 million based on J.H. Whitney's proposal to purchase the Company. Although portions of this decrease in value may be attributable to factors other than the sale process, the Trust believes the loss of enterprise value is actually greater than the decrease in value between 2007 and 2008 because the Tender Offer depleted the Company's liquidity and complicated its structure in a way that made it far less marketable than it would have otherwise been.

A more specific allocation of damages related to Northrop's individual liability requires additional discovery and expert opinions.

As to Objections:

*/s/ Marcia V. Andrew*

Marcia V. Andrew (0040289)
Christina L. Fischer (0083312)
Emily C. McNicholas (0085149)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838

andrew@taftlaw.com
cfischer@taftlaw.com
emcnicholas@taftlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2012, I served the original of the foregoing by electronic mail and regular U.S. Mail, postage prepaid, on:

R. Daniel Prentiss
R. Daniel Prentiss, P.C.
One Turks Head Place, Suite 380
Providence, RI 02903
*Counsel for James A. Northrop*

and a copy by electronic mail on the following:

Michael L. Scheier
Brian P. Muething
Danielle M. D'Addesa
David T. Bules
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
*Counsel for Lee Morgan, Asha Morgan Moran, Chandra Attiken, Marty Moran, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1 and Lee Morgan Pourover Trust #2*

Robert T. Glickman
Robert R. Kracht
Susan C. Margulies
Kimberly A. Brennan
McCarthy, Lebit, Crystal & Liffman Co., L.P.A.
101 West Prospect Avenue
1800 Midland Building
Cleveland, OH 44115
*Counsel for Candlewood Partners, LLC*

Terence L. Fague
Daniel J. Gentry
Coolidge Wall Co., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
*Counsel for Nancy Blair, Wayne Alan Luce and Frederick Walker*

Robert A. Klinger
Brian J. Butler
Robert A. Klinger Co., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, OH 45202-3133
*Counsel for Steve Bevelhymer, Karen Felix, Barry Hoskins, G. Robert Morris and Kimberly Lipson-Wilson*

Thomas A. Knoth
Scott A. King
Jennifer L. Maffett
Thompson Hine LLP
Austin Landing I

Richard A. Chesley
Gregory S. Otsuka
DLA Piper LLP
203 N. LaSalle Street, 19th Floor
Chicago, IL 60601

13001422.1

19

| | |
|---|---|
| 10050 Innovation Drive, Suite 400<br>Dayton, OH 45342<br>*Counsel for Malte vonMatthiessen, Denis Sanan, Ben Carlson and Jeanine McLaughlin* | *Counsel for Houlihan Lokey, Inc., Houlihan Lokey Financial Advisors, Inc. and Houlihan Lokey Capital, Inc.*<br><br>/s/ Marca Andrew |

## VERIFICATION

STATE OF OHIO                                      )
                                                      ) :ss
COUNTY OF HAMILTON                )

I am the Plaintiff in this action, and state that the foregoing Responses to Interrogatories are true and correct to the best of my knowledge, information and belief.

/s/ _W. Timothy Miller_
W. Timothy Miller, Trustee
The Antioch Company Litigation Trust

Sworn to and subscribed before me this 27th day of August, 2011.

/s/ _Emily C. McNicholas_
Notary Public

EMILY C. McNICHOLAS
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date. Section 147.03 O.R.C.

13001422.1