# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **THE ANTIOCH COMPANY** | ) | **Case No. 3:10-cv-00156** |
| **LITIGATION TRUST,** | ) | |
| | ) | **(Judge Timothy S. Black)** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **-v-** | ) | |
| | ) | |
| **LEE MORGAN, et al.,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

**PLAINTIFF'S RESPONSES TO STATEMENT OF PROPOSED UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS LEE MORGAN, ASHA MORAN, AND MARTY MORAN'S MOTION FOR SUMMARY JUDGMENT ON COUNTS FOUR, SIX, EIGHT, AND TEN OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

For its response to Defendants Lee Morgan, Asha Morgan Moran and Marty Moran's statement of proposed undisputed facts in support of their Motion for Summary Judgment as to Counts Four, Six, Eight and Ten, Plaintiff The Antioch Company Litigation Trust ("Trust") states as follows;

      **General Objection:** As an initial matter, the Trust objects to these statements of "undisputed facts" to the extent that they are intended to serve as requests for admissions by the Trust or are intended to prevent the Trust from making arguments related to the underlying merits of its claims.  The Trust states that any factual statement that is not expressly admitted herein, is denied.  The Trust also denies any 'statement of fact" implied in the headings. The Trust further objects on the grounds that many of the listed facts are clearly neither "material" nor relevant to the Defendants' motions, and appear to be listed to burden Plaintiff unnecessarily with responding to each irrelevant and immaterial "fact" or self-serving opinion. Notwithstanding these objections, the Trust incorporates all statements of fact included in its

responses, filed concurrently, to the 13 motions for summary judgment filed in this action, and further states as follows:

1.      In Plaintiff's First Supplement To Rule 26(a) Initial Disclosures served on December 20, 2011, Plaintiff stated that it "anticipates engaging one or more experts to opine on the loss in enterprise value that resulted from the Tender Offer and the sale process" in attempting to provide "[a] computation of any category of damages claimed by the disclosing party" under Rule 26(a)(1)(C). A copy of Plaintiff's First Supplement To Rule 26(a) Initial Disclosures is attached hereto as Exhibit 1.

**RESPONSE:**  Admit.

2.      In The Antioch Company Litigation Trust's Response To First Set Of Interrogatories Of Defendants Lee Morgan, Asha Moran, Chandra Attiken, Marty Moran, And Certain Named Trust Defendants Directed To Plaintiff The Antioch Company Litigation Trust, served on December 20, 2011, Plaintiff stated that it "anticipates engaging one or more experts to opine on the loss in enterprise value that resulted from the Tender Offer and the sale process" in response to Interrogatory Number Two, asking Plaintiff to "[s]tate in detail, and with particularity, the total losses and damages that You seek to recover in this case," including the categories of losses and damages. A copy of The Antioch Company Litigation Trust's Response To First Set Of Interrogatories Of Defendants Lee Morgan, Asha Moran, Chandra Attiken, Marty Moran, And Certain Named Trust Defendants Directed To Plaintiff The Antioch Company Litigation Trust is attached hereto as Exhibit 2.

**RESPONSE:**  Admit.

2

3.      On December 17 and 18, 2012, Timothy Miller was deposed as Plaintiff's designated Rule 30(b)(6) witness. Relevant excerpts of Mr. Miller's deposition transcript (Doc. No. 88) are attached hereto as Exhibit 3.

**RESPONSE:**  Admit Mr. Miller was deposed.  Deny that the excerpts attached are relevant, or the only relevant portions, of his testimony.

4.      During that deposition, Mr. Miller repeatedly stated that he could not testify as to evidence of Plaintiff's damages, and would instead have an expert witness testify as to the damages claimed by Plaintiff. (Timothy Miller Dep. 81–85.)

**RESPONSE:**  Admit that Mr. Miller did not feel qualified to testify to damages, as the damages were incurred not by him, or a company he owned or managed, but by an entity with which he had no involvement.

5.      For instance, Mr. Miller stated, "In connection with the damages and the damages calculations, I think the Trust's view is that is something that is properly the province of expert testimony, and that is something that we would -- the Trust would anticipate having an expert testify with respect to." (Miller Dep. 81.)

**RESPONSE:**  Admit he so testified.

6.      He further stated, "through the use of a testifying expert, we would expect to put specific dollar amounts on that." (Miller Dep. 81.)

**RESPONSE:**  Admit he so testified.

7.      Addressing a question regarding the interest, fees, and other charges Plaintiff seeks as damages, Mr. Miller replied, "Again, that's another thing that we would expect an expert to go through the financials and calculate that." (Miller Dep. 84.)

**RESPONSE:**  Admit he so testified.

3

8.     Addressing a question regarding the claimed loss in enterprise value that resulted from the Tender Offer and the sale process, Mr. Miller replied, "So, again, this is something -and particularly this would be something that would be the basis, in our view -- in the Trust's view of expert testimony." (Miller Dep. 85.)

**RESPONSE:**  Admit he so testified.

9.     And addressing a question regarding calculating the fees and expenses paid to restructuring professionals claimed as damages, Mr. Miller answered, "Again, that's something I think we'd have an expert do." (Miller Dep. 84.)

**RESPONSE:**  Admit he so testified.

10.     Plaintiff's purported expert, Mark Greenberg, has never been qualified as an expert with respect to damages or offered any prior testimony with respect to damages. (Mark Greenberg Dep. 94–95.) (Relevant excerpts of Mr. Greenberg's deposition transcript (Doc. Nos. 214 and 215) are attached hereto as Exhibit 4.)

**RESPONSE:**  Admit.

11.     Mr. Greenberg is not an accountant or economist. (Greenberg Dep. 26.)

**RESPONSE:**  Admit.

12.     Mr. Greenberg has no background, training, experience, or expertise in the computation of damages. (Greenberg Dep. 94–96.)

**RESPONSE:**  Denied.  Mr. Greenberg has background, training, experience and expertise in business valuations, sales of distressed companies, sale/leaseback transactions, and other relevant experience.

4

13.     Mr. Greenberg has never published any scholarship on damages. (Greenberg Dep. 93–95.)

**RESPONSE:**  Denied.  Mr. Greenberg has published articles on business valuation and sales of distressed companies.

14.     Mr. Greenberg did not use any methodology in formulating his damages opinion, and is not familiar with any such methodologies. (Greenberg Dep. 95–96.)

**RESPONSE:**  Denied.

15.     Mr. Greenberg formulated his opinion that The Antioch Company (the "Company") wasted $6 million on professional fees through his receipt of that number as an estimate from Plaintiff's counsel. (Greenberg Dep. 291, 332.)

**RESPONSE:**  Denied; this misstates Mr. Greenberg's testimony.

16.     Mr. Greenberg calculated his loss in enterprise value to the Company by doing a simple arithmetic calculation of subtracting the value that CRG Partners Group, LLC ("CRG") attributed to the Company in the Company's bankruptcy disclosure statement (between $31 and $38 million) and subtracting it from the non-binding offer made in J.H. Whitney's letter of intent dated May 8, 2008 ($54 million). (Greenberg Dep. 333–334.)

**RESPONSE:**  Admit that these were two of the data points Mr. Greenberg used as indications of the fair market value of the Company at different points in time.

17.     Mr. Greenberg cannot point to any evidence of anything the board of directors did that caused any alleged decrease in value for the Company between the time of the J.H. Whitney letter of intent and the point at which CRG gave its valuation estimate. (Greenberg Dep. 527.)

**RESPONSE:**  Denied.  Mr. Greenberg concluded that the board's failure to act quickly and decisively, and to disabuse Mr. Morgan and Evolve of their unrealistic fantasies that the

Company could achieve a market value that would provide any value to the equity, resulted in a loss of realized value during a period where the Company lost value month by month due to deteriorating sales and missed forecasts.

18.     Mr. Greenberg understood that the J.H. Whitney letter of intent was not binding and likely did not reflect Antioch's actual value, and that a transaction price is typically reduced from the letter of intent to the final agreement. (Greenberg Dep. 295, 362–364.)

**RESPONSE:**  Denied.  Mr. Greenberg testified that the J.H. Whitney offer, used as a stalking horse bid in a section 363 auction, would be likely to result in a higher transaction price.

19.     Mr. Greenberg did not review CRG's work, supporting papers, models, assumptions, or Antioch's corporate performance and forecasts used by CRG, but instead merely borrowed the number from Antioch's Disclosure Statement submitted in its bankruptcy proceeding. (Greenberg Dep. 296–297, 299.)

**RESPONSE:**  Admit that Mr. Greenberg did not independently review CRG's analysis, because CRG's valuation of the Company was used by the debtors and its secured lenders in structuring its plan of reorganization and was adopted by the bankruptcy court as the actual value of the Company.

20.     In assigning damages for alleged loss of value and allegedly wasted professional fees, Mr. Greenberg concedes that he is double-counting the alleged loss because the cash paid out to professionals would necessarily be accounted for in calculating the cash component of Antioch's value. (Greenberg Dep. 431–432.)

**RESPONSE:**  Denied.

March 10, 2014                    Respectfully submitted,

                                  /s/ Marcia Voorhis Andrew_____
                                  Marcia Voorhis Andrew (0040289)
                                  Casey Cantrell Swartz (0079563)
                                  Chad R. Ziepfel (0084274)
                                  Matthew D. Lawless (0090281)
                                  Taft Stettinius & Hollister LLP
                                  425 Walnut Street, Suite 1800
                                  Cincinnati, OH 45202-3957
                                  (513) 381-2838 Phone
                                  (513) 381-0205 Fax
                                  andrew@taftlaw.com

                                  Counsel for W. Timothy Miller, Trustee of
                                  The Antioch Company Litigation Trust

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all registered ECF participants on March 10, 2014, through the Court's ECF system at the email addresses registered with the Court.

                         /s/_Marcia V. Andrew_____

7

14109006.1