**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE, | Case No. 3:10-CV-156 |
| | (Judge Timothy S. Black) |
| Plaintiff, | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS LEE MORGAN, ASHA MORGAN MORAN, AND MARTY MORAN'S MOTION FOR SUMMARY JUDGMENT ON COUNTS FOUR, SIX, EIGHT, TEN AND THIRTEEN OF PLAINTIFF'S FIRST AMENDED COMPLAINT |
| v. | |
| LEE MORGAN, et. al, | |
| Defendants. | |

**I. INTRODUCTION**

Plaintiff The Antioch Company Litigation Trust ("Plaintiff") submits this Memorandum in Opposition to Defendants Lee Morgan's, Asha Morgan Moran's, and Marty Moran's ("Defendants") Motion for Summary Judgment on Counts Four, Six, Eight, Ten and Thirteen of Plaintiff's First Amended Complaint ("Motion" or "Motion for Summary Judgment").  The Defendants' motion must be denied for two reasons.  First, as explained in Plaintiff's response to Defendant's motion to exclude Mr. Greenberg's testimony regarding damages, Doc. No. 259, Mr. Greenberg is qualified to testify to what he, in reality, did testify to and his testimony is reliable for purposes of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 57, 589 (1993).  Second, even if Mr. Greenberg's testimony were excluded (and it should not be), there is other evidence of Plaintiff's sale process and sale process fees damages that can be introduced without Mr. Greenberg's testimony and that was adduced during the discovery process, not created in some last-minute self-serving affidavit to avoid summary judgment, as was the case in *Cole v. Homier Distrib. Co.*, 2009 U.S. Dist. LEXIS 23641 (E.D. Mo. Mar. 20, 2009).  This Court should

therefore deny Defendants' Motion.

## II. ARGUMENT

Defendants argue that they are entitled to summary judgment on counts four, six, eight, ten, and thirteen because these counts effectively require Plaintiff to prove sale process or sale process fees damages, because Mr. Greenberg's testimony regarding these damages should be excluded as unreliable, and because *Cole v. Homier Distrib. Co.*, 2009 U.S. Dist. LEXIS 23641 (E.D. Mo. Mar. 20, 2009) compels a conclusion that Plaintiff should not be able to prove any part of these damages "by a method other than Mr. Greenberg." (Doc. No. 222, at 3, PAGEID #: 20626).  While Defendants are correct that these counts require a plaintiff to prove damages, they are wrong on everything else.

### A. Mr. Greenberg is Qualified to Testify and His Testimony Regarding Damages is Reliable

Mr. Greenberg is qualified to testify regarding damages and his testimony is reliable.  *See* Doc. No. 259.  Mr. Greenberg has 30 years' experience in business valuation, deal structuring, financial and investment analysis, and has successfully led and completed numerous M&A, capital sourcing, recapitalization and restructuring transactions in a wide variety of industries. He is therefore fully qualified to testify that the May 2008 J.H. Whitney $54 million offer would have been accepted by the Company and would have been the "worst" the Company would have received through the resulting Bankruptcy Code Section 363 sale because J.H. Whitney had done "substantial due diligence" and because its offer would have served as a "stalking horse" that encouraged other bidders.  And he is likewise fully qualified to opine on whether the Board was acting appropriately when it delayed accepting Houlihan's advice to make a quick decision that a sale through bankruptcy court was the only viable alternative, and instead continued to pay multiple professionals to consider deals that were facially unexecutable.  This testimony is

reliable because it is based on facts in the record and his relevant experience and expertise. In any event, even if Mr. Greenberg was not qualified or his testimony in this regard was not reliable, the jury is permitted to make damages determinations based on Defendants' obstruction of the May 2008 Whitney offer as well as their delays in the sale process, such as by failing to pursue the $63 million verbal offer from Sun Capital.

### B. Plaintiff is Free to Prove its Damages with the Evidence Adduced During Discovery

Defendants cite *Cole v. Homier Distrib. Co.*, 2009 U.S. Dist. LEXIS 23641 (E.D. Mo. Mar. 20, 2009) for the proposition that the jury should not be able to hear anything except Mr. Greenberg's testimony regarding damages because it would be unfair to Defendants, since Plaintiff supposedly committed to exclusively relying on expert evidence to prove its damages, like the plaintiff in *Cole*. But, as explained in Plaintiff's response to Defendants' motion to exclude Mr. Greeneberg's testimony, Plaintiff's conduct in this case is not at all like the plaintiff in *Cole*. Nowhere did Plaintiff exclusively commit to using an expert to prove any element of its sale process and sales process fees damages, let alone every element of such damages. *See* Doc. No. 259, at 18-20; see, e.g., Doc. No. 259, Exhibit A, at 4-5 ("By May 2008, the Company's value had declined to approximately $54 million based on J.H. Whitney's proposal to purchase the Company" and "The Trust arrives at this calculation based on expressions of interest in the Company received from Jostens and Sun Capital during the summer of 2007, which valued Antioch at between $148 million and $185 million"). Nor have Defendants explained how they were prevented from performing any fact discovery on damages.

More fundamentally, the problem identified by the court in *Cole* was that the evidence sought to be introduced was the plaintiffs' "own testimony and calculations." *Id.* at *7. The court therefore simply applied the well-settled rule that self-serving affidavits cannot be used to

contradict prior testimony and create a genuine issue of material fact to survive summary judgment. *Id.*, at *15-*17 (explaining that "[n]ow, Plaintiffs attempt to avoid summary judgment bolstered solely [by] the Coles' self-serving affidavits" and finding that "Plaintiffs are barred from providing evidence in the form of affidavits and deposition errata sheets that contradicts their deposition testimony to support their damages claim."). This case would only be comparable to *Cole*, then, if Plaintiff were trying to avoid summary judgment solely by having Mr. Miller submit an affidavit testifying that Plaintiff calculates its damages in a new, never-before-heard-of manner. That is not the case. Mr. Miller has submitted no such affidavit. And the record evidence that demonstrates Plaintiff's damages is not new testimony from Mr. Miller, but evidence that Defendants have been aware of throughout the litigation: the documentary evidence and deposition testimony regarding delays in the sale process, including the Antioch Board's failure to respond to the Sun offer, and its failure to close a sale, including the May 2008 Whitney proposal, as part of the sale process. *See infra* pages 5-6, and n. 1. Defendants have cited no authority for their suggestion that a plaintiff should be precluded from relying on record evidence adduced during discovery to prove its damages, and none exists.

Indeed, contrary to Defendants' contention, this Court's decision in *Info-Hold, Inc. v. Muzak LLC*, 1:11–cv–283, 2013 WL 4478950 (S.D. Ohio Aug. 20, 2013) makes clear that Plaintiff's reliance in this case on its non-expert evidence of damages would be wholly proper. Defendants note that in *Info-Hold* "this Court granted summary judgment in favor of the defendant when the plaintiff's only proffered witness as to damages was excluded as unqualified and unreliable." (Doc. No. 222, at 4, PAGEID #: 20267). This is true, but beside the point. In *Info-Hold*, the plaintiff's *only* evidence of damages was that provided by its would-be expert. The Court explained: "[t]here are no potential damages witnesses for Plaintiff to call at trial

whatsoever, leaving it with no admissible evidence on reasonable royalty damages. All the additional 'evidence' referred to in Plaintiff's memorandum in opposition is either not in the record as required by Fed.R.Civ.P. 56(c)(1) and/or is not presented in a form that is admissible in evidence at trial. Fed.R.Civ.P. 56(c)(2)." *Id.* at *6. It followed, then, that once the Court found that plaintiff's expert testimony would be excluded under *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 57, 589 (1993), summary judgment was proper because no reasonable jury could make a finding of damages based on *no* evidence of damages. *Id.* ("Plaintiff has not pointed to evidence in the record that would allow a reasonable jury to find reasonable royalty damages.").

That is not the situation here. In this case, even if Mr. Greenberg's testimony were excluded, a reasonable jury could still find that Plaintiff was damaged by the sale process based on, for example, the Whitney May 2008 letter of intent, the non-expert deposition testimony regarding that letter of intent, and the other documentary evidence showing that the deal would have gone through but for Defendants' conduct. *See, e.g.,* Dep. Ex. 354, May 14, 2008, Notice of Default (opposing Special Committee's efforts to effectuate a sale to J.H. Whitney); Dep. Ex. 505 Email from Malte von Matthiessen (discussing J.H. Whitney proposal); Dep. Ex. 323, June 3, 2008 Email regarding MAMAMO Commitment letter; Dep. Ex. 355, June 4, 2008 Email regarding unanimous resolution; Dep Ex. 325 (showing the new Board consisting of Lee Morgan and Asha Morgan Moran and G. Robert Morris rejecting the Whitney offer); Case 3:08-bk-35741, Doc. No. 319, at 7 (approving Disclosure Statement that adopted CRG Valuation for the Company). Moreover, this evidence is more than enough for a reasonable jury to find damages where, as here, it was Defendants' misconduct that prevented anyone from knowing with certainty whether the deal would close. *See BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633 (7th Cir. 2013) ("In cases in which defendants' misconduct prevent plaintiffs from

calculating damages accurately, damages can be estimated by methods that would be deemed impermissibly speculative in other contexts."); *see also Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) ("Any other rule would enable the wrongdoer to profit by his wrongdoing.").

Similarly, Plaintiff can show damages in the form of fees paid to consultants at various times during the sale process with documentary evidence such as the invoices showing what the consultants were paid and when, as well as the documentary and testimonial evidence regarding delays.[1] Dep. Ex. 500; Dep. Ex. 95 (Lipson-Wilson's notes reflect that they came out of Special Transaction Committee meeting with a firm action plan that included going back to Sun with a counter offer and "the reason we have not proceeded on this is the family and Candlewood have decided to put forth a proposal for refinancing/restructuring."); Dep. Ex. 255 (January 2, 2008, Email discussing and attaching Letter to Special Committee from Lee Morgan: "I again advise the Company and the Special Committee that the Morgan family is not prepared to compromise the obligations owed to us by the Company to enable a sale to an outside buyer."); Dep. Ex. 486, (January 3, 2008 Email regarding CM Follow-up showing that the Special Committee acquiesced to Lee Morgan's demand and instructed Houlihan not to contact any prospective buyers that it had not previously contacted); Dep. Ex. 480 (Email from Stephen Spencer regarding Lee Morgan showing that the Special Committee continued to give the Morgan family time to try to put together a deal long after it was evident the Morgans were not going to be able to submit a funded offer that would satisfy the Company's secured lenders and resolve fairly the other classes of debt and equity).

---

[1] For additional evidence that supports a finding that Plaintiff suffered sale process and sale process fees damages see the exhibits cited on pages 7-19 of Plaintiff's Consolidated Memorandum in Opposition to Motions of Defendants Nancy Blair, Alan Luce, Jeanine McLaughlin, Denis Sanan, Malte Von Matthiesen, James Northrop, Lee Morgan, Asha Morgan Moran, Steve Bevelhymer, Karen Felix, and Kim Lipson-Wilson for Summary Judgment as to Count Six, which are hereby incorporated by reference.

Regardless of the Court's ruling on Defendants' motion to exclude Mr. Greenberg's testimony, Defendants are not entitled to summary judgment on the ground that there is *no* evidence of damages to support Plaintiff's claims in counts four, six, eight, ten, and thirteen. There is such evidence, and such evidence could readily support a reasonable jury's determination of damages, were Mr. Greenberg's testimony excluded.  Accordingly, this Court should deny Defendants' Motion.

### III.  CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment.

| | |
|---|---|
| March 10, 2014 | Respectfully submitted, |
| | /s/ Marcia Voorhis Andrew |
| | Marcia Voorhis Andrew (0040289) |
| | Casey Cantrell Swartz, Esq. (0079563) |
| | Chad R. Ziepfel (0084274) |
| | Matthew D. Lawless (0090281) |
| | Taft Stettinius & Hollister LLP |
| | 425 Walnut Street, Suite 1800 |
| | Cincinnati, OH 45202-3957 |
| | Ph: (513) 381-2838 |
| | Fx: (513) 381-0205 |
| | andrew@taftlaw.com |
| | |
| | *Counsel for W. Timothy Miller, Trustee of The Antioch Company Litigation Trust* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all registered ECF participants on March 10, 2014, through the Court's ECF system at the email addresses registered with the Court.

/s/ Marcia Voorhis Andrew