UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE ANTIOCH COMPANY ) <br> LITIGATION TRUST ) <br> ) <br>           **Plaintiff,** ) <br> ) <br>  -v- ) <br> ) <br> LEE MORGAN, et al., ) <br> ) <br>           **Defendants.** ) | Case No. 3:10-cv-00156 <br><br> (Judge Timothy S. Black) |

**COMBINED REPLY BRIEF IN SUPPORT OF (1) LIMITED
MOTION  TO EXCLUDE PLAINTIFF'S EXPERT'S
REPORT,  OPINIONS AND TESTIMONY REGARDING
DAMAGES AND (2) MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

In this Combined Reply Brief in further support of Defendants' Limited Motion to Exclude Plaintiff's Expert's Report, Opinion and Testimony Regarding Damages (Doc. 213) and Motion for Summary Judgment (Doc. 222), two points are worthy of initial recognition.

One—it is clear from Plaintiff's Opposition Brief (Doc. 259) that they have abandoned their lone expert for purposes of proving damages or valuing the company in favor of a previously undisclosed "simple" mathematical calculation, but without ever commiting to an actual damages figure or even to the actual numbers that they will plug into their newfound simple damages equation.  It is astonishing that after a year of fact discovery, many months of expert discovery and now dispositive motion briefing, Plaintiff has still not committed to a damages calculation or disclosed its alleged damages.  As a result, Defendants' counsel will hear Plaintiff's damages model and amount for the first time and from a so-far undisclosed witness during Plaintiff's case in chief at trial, not having had any opportunity to take discovery on the

issue. That is classic litigation by ambush or surprise, should not be permitted, and most certainly should not be permitted as a tactic that can defeat summary judgment.

Two—granting the two motions would resolve most or all aspects of about a dozen case-dispositive motions and all of the responses, replies, and statements of undisputed facts related to those motions, and effectively terminate this case.[1]

Both motions should be granted.

### A. The Limited Motion to Exclude Damages Opinions Should be Granted Because Plaintiff Agrees that Mr. Greenberg Cannot and Will Not Offer A Damages Opinion

Plaintiff admits in its Opposition Brief that it does not intend to have an expert calculate its compensatory damages. (Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 5–6, PAGEID # 26070–26071 (Mr. Greenberg will only testify about the J.H. Whitney letter of intent); *see also id.* at 12, PAGEID # 26077 (damages calculation is "simple arithmetic").) This concession requires the Court to grant the Limited Motion to Exclude Plaintiff's Expert Report, Opinions and Testimony Regarding Damages (Doc. 213). Moreover, Plaintiff's concession is consistent with the record. Mr. Greenberg gave no opinion even arguably related to damages. (*See* Doc. 214 (Greenberg Dep.) at 111–118, PAGEID # 19456–19463) (identifying his eight opinions, none of which go to damages).) The Limited Motion should therefore be granted.

### B. The Court Should Grant Defendant's Summary Judgment Motion Because Plaintiff Lacks Any Damages Evidence to Create a Genuine Dispute of Material Fact

The summary judgment motion should be granted as to Counts Four, Six, Eight, Ten, and Thirteen because Plaintiff committed itself to proving damages through an expert but admittedly does not have one, and because Plaintiff refused to quantify its damages during fact discovery

---

[1] What would remain are a few low-value preference claims and the Condor claim which Plaintiff values at about $1 million.

which should prevent it from proving damages without an expert. And in any event, Plaintiff is without admissible evidence to support its damages burden. There are thus three different grounds for granting the motion for summary judgment.

> 1. *Plaintiff Committed to the Exclusive Use of Expert Opinion to Provide its Damages and is Without Such an Expert*

Plaintiff now stands on its use of the words "anticipates" and "thinks" in its discovery responses and testimony to argue that it never really told Defendants that Plaintiff would rely on an expert to quantify its damages. (Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 19, PAGEID # 26084; Doc. 259-1 (Pl.'s Responses to First Set of Interrogatories) at 4–5, PAGEID # 26090–26091; Doc. 259-5 (Pl.'s First Supplement to Rule 26(a) Initial Disclosures) at 2–3, PAGEID # 26151–26152.) We trust the Court will review those discovery responses, and in conjunction with Plaintiff's Rule 30(b)(6) testimony, draw the conclusion that Plaintiff consistently represented that it was unable to calculate damages on its own and had not, as of the last day of fact discovery, calculated its damages even though now Plaintiff tells us it is simple math.

Plaintiff's discovery statements and Court pleadings all point in one direction: that Plaintiff would prove its damages through expert testimony. Recall that Plaintiff said in its initial disclosures and interrogatory responses, when asked for a specific computation of damages, that it would retain "one or more experts to opine on the loss in enterprise value" resulting from the sales process. (Doc. 259-1 (Pl.'s Responses to First Set of Interrogatories) at PAGEID # 26090; Doc. 259-5 (Pl.'s First Supplement to Rule 26(a) Initial Disclosures) at PAGEID # 26151.) In response to Defendants' previous motion for summary judgment (Doc. 167), where we pointed out that Plaintiff had not developed any evidence of damages, Plaintiff did not respond that a jury could calculate damages on its own (Plaintiff's current, back-against-

the-wall position), but stated that "damages . . . are subjects appropriate for expert testimony." (Doc. 167 (Pl.'s Mem. in Opp. to Mot. to Exclude to Mot. for Summary Judgment) at 20 n. 77, PAGEID # 16876.)  The Court accepted Plaintiff's position, holding in connection with that summary judgment motion that damages are "best suited" for expert testimony.  (Doc. 202 (Order Denying Marty Moran's Mot. for Summary Judgment) at 16, PAGEID # 19149.) Plaintiff's discovery responses, testimony and briefing put Defendants on notice of Plaintiff's intent to use an expert to prove its damages.  Now Plaintiff acknowledges that it has no such expert, but for the first time in this five-year litigation states it does not need one. That makes this case just like the Court's prior holding in *Info-Hold*, and the factually and procedurally similar decision in *Cole*.  For the same reason as in those cases, summary judgment is appropriate in this case.

> 2. *Plaintiff's Refusal to Disclose Damages Information During Fact Discovery Prevents Reliance on the Factual Record to Prove Damages*

Plaintiff persists that all of these references to expert testimony did not commit it to exclusive use of an expert to prove its damages and so it can prove its damages by reference to the factual record without any assistance from Mr. Greenberg. (Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 15–20, PAGEID # 26080–85.)  But Plaintiff foreclosed non-expert proof of its damages when it refused to quantify or otherwise disclose meaningful information about its damages and damages theory during fact discovery.

Plaintiff says that its initial disclosures and interrogatory responses disclose its damages and put Defendants on notice of a factual-based damages calculation. (Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 16–17, PAGEID # 26081–26082.)  Not so.  Both discovery documents begin by invoking the Trust's anticipation that it would retain an expert to perform a

valuation and wasted fees analysis that Plaintiff now insists it does not need.  (Doc. 259-1 (Pl.'s Responses to First Set of Interrogatories) at PAGEID # 26090; Doc. 259-5 (Pl.'s First Supplement to Rule 26(a) Initial Disclosures) at PAGEID # 26151.)  What follows Plaintiff's notice that it would retain an expert is so equivocal and contradictory as to be meaningless.[2]  The only reasonable way to read the responses is that Plaintiff said "we intend to retain an expert, and here is what we believe (s)he might say, but we really don't know."  The interrogatory response and initial disclosures are not sufficient for Plaintiff to proceed without the expert referenced to in those responses.

But even if Plaintiff had a fact-based, subtract-two-numbers-is-damages-theory at the beginning of fact discovery when it served its initial disclosures and interrogatory responses, that certainly was not Plaintiff's position by the end of fact discovery.  Defendants deposed Plaintiff pursuant to Rule 30(b)(6), which requires an entity like Plaintiff here to prepare a witness to testify on designated topics as opposed to a personal knowledge witness.  *See* FED. R. CIV. P. 30(b)(6).  Among the topics identified by Defendants was the "[d]amages allegedly incurred by Antioch by any action or inaction of any or all of the Defendants, including" an "explanation" and "amount of each category of damages."

The Rule 30(b)(6) deposition was scheduled for the last day of fact discovery and for a specific reason: with every deposition taken and every document exchanged, the factual record would be complete and Plaintiff would have all the facts it would ever have to support its positions with respect to damages and other key issues in the case.  Plaintiff designated Mr.

---

[2] The Trust said there that it "believed" the Company's damages were "not less" than $121 million—a number not reached through the addition or subtraction of any other number in the response—referred to other (undisclosed) factors affecting the Company's value, and then to supposed (and unquantified) loss in value in connection with the 2003 transaction (claims no longer in this action).  And neither the interrogatory or initial disclosures state Plaintiff's position in this motion practice, that its supposed damages are the "simple arithmetic" subtraction of J.H. Whitney minus CRG.

Miller as the witness who it would prepare to testify on its behalf about damages and every other topic.  The Plaintiff's testimony with respect to damages (Doc. 88 (Miller Dep.), specifically pages 79–86, PAGEID # 3564–66) is crucial to deciding these motions.  There the Court will see that Plaintiff—through its designated witness, Mr. Miller—refused to testify as to an "explanation" or "amount" for Plaintiff's claimed damages, instead repeatedly referring to the need for expert testimony.

Of greatest relevance to Plaintiff's refusal to provide factual damages discovery and to the sales process claims, which are essentially the only ones left in this case, is this testimony:

> Q. Okay. Category number five of damages is the loss in enterprise value that resulted from the tender offer and the sale process. Do you see that?
>
> A. Yes.
>
> \*          \*          \*
>
> Q: To this date has the Trust determined what the loss in enterprise value is from the company allegedly resulting from the tender offer and the sale process?
>
> A. No.

(Doc. 88 (Miller Dep.) at 85–86, PAGEID# 3565–3566.)  A number of aspects of this testimony deserve emphasis.  When asked if "to this date"—that "date" being the last day of fact discovery, when the factual record is just as it is today—the Trust had determined its damages, Mr. Miller (the Trust's designated witness on the topic of damages) said that the Trust had not done so.  That is how the factual record thus closed: with Plaintiff providing no information about its claimed damages.  Moreover, the Trust testified it would retain an expert to calculate lost value damages, but now says it does not need the expert because it relies on just simple math.  Last, Mr. Miller answered "no" rather than disclose what Plaintiff now claims is simple subtraction

using two numbers, the $54 million J.H. Whitney letter of intent and the CRG valuation range, both of which were independently available to Plaintiff as of the deposition.[3]

Plaintiff's refusal to disclose and quantify its lost value damages on the last day of fact discovery precludes Plaintiff's new attempt to say that its damages can be proven without an expert, purely by reference to the factual record. For if it were as easy as "simple arithmetic" and based solely on facts in the record, then Plaintiff needed to answer a simple question about its damages when the 30(b)(6) notice asked him to be prepared to testify to exactly that and be subject to follow-up questions on Plaintiff's position. Plaintiff chose not to, invoking the need for an expert, and that has a consequence. The law does not permit a plaintiff to avoid compliance with discovery regarding damages only to unveil its evidence after the close of fact discovery on summary judgment motion practice. *Bessemer & Lake Erie R.R. v. Seaway Marine Transp.*, 596 F.3d 357, 366-70 (6th Cir. 2010) (affirming district court's exclusion of damages-related evidence based on plaintiff's failure to provide sufficient information in initial disclosures or during discovery); *Big Lots Stores, Inc. v. Luv N' Care, LTD*, 302 Fed. Appx. 423, 429-30 (6th Cir. 2008); *Scheel v. Harris*, No. 3:11-17-DCR, 2012 U.S. Dist. LEXIS 126448, at *2-8 (E.D.

---

[3] Plaintiff claims that all Mr. Miller meant by this testimony is that he was not qualified to perform a valuation and that an expert would need to do so. That is misleading and, if accepted, would defeat the entire premise behind Rule 30(b)(6) depositions. Defendants did not ask Plaintiff's designated witness to perform a valuation, they asked for information regarding Plaintiff's claimed damages, and no information was provided. Moreover, the whole point of Rule 30(b)(6) depositions is that an entity (here, the Trust) must prepare someone to testify—witnesses do not get to later claim that they were not prepared or qualified to give testimony. *See Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, Case No. 06 Civ. 2043, 248 F.R.D. 126, 152-53 (S.D.N.Y. Oct. 3, 2007) (imposing sanction precluding party from providing evidence on designated matter as a result of failing to provide a prepared witness for Rule 30(b)(6) deposition, because Rule 30(b)(6) places an "affirmative duty" on the corporate deponent to "'give complete, knowledgeable and binding answers' on its behalf" and "[p]roducing an unprepared witness is tantamount to a failure to appear"); *Lerardi v. Lorillard, Inc.,* Civil Action No. 90-049, 1991 U.S. Dist. LEXIS 11320 (E.D. Pa. Aug. 13, 1991) ("Under Rule 30(b)(6), defendant has an obligation to prepare its designee to be able to give binding answers on behalf of H&V. If the designee testifies that H&V does not know the answer to plaintiffs' questions, H&V will not be allowed effectively to change its answer by introducing evidence during trial. The very purpose of discovery is "to avoid 'trial by ambush.'"). But in any event, we learned in Plaintiff's Opposition Brief that "its just simple math" but Plaintiff, through Mr. Miller, failed the math test by not responding at all.

Ky. Sept. 6, 2012) (excluding plaintiff's lost profits damages insufficiently disclosed in initial disclosures and discovery responses).

Indeed, the present case is substantially more egregious than those cases—while those cases analyze insufficient initial disclosures, here Plaintiff refused to disclose its damages analysis or amount with respect to the sales process on the *last day* of discovery. That of course caused defendants to be in the dark after discovery about Plaintiff's damages, and left Defendants unable to examine Plaintiff concerning its fact-based damages theory. The Court can surely see the substantial prejudice to Defendants—how can one know Plaintiff's damages when Plaintiff's designated representative is unprepared on the designated topic.[4]

The same problems exist for Plaintiff's other category of claimed damages, supposedly "wasted" professional fees. Here was Plaintiff's testimony, through the witness it prepared to testify, Mr. Miller:

> Q. Okay. With regard to number three, fees and expenses paid to restructuring professionals as a result of the deepening insolvency of Antioch. Did the Trust calculate what those fees and expenses are as of today?
>
> A. Again, that's something I think we'd have an expert do.
>
> Q. Well, is the answer no, Mr. Miller, that the Trust has not done that yet?
>
> A. The answer is no.

(Doc. 88 (Miller Dep.) at 84–85, PAGEID # 3565.) The Defendants asked for discoverable information regarding damages and Plaintiff could not provide any, again invoking the need for an expert. Moreover, while Plaintiff says that its initial disclosures refer to lost fees as a category

---

[4] While the prejudice is real and substantial, defendants do not need to make such a showing for the Court to exclude Plaintiff's current damages approach. If the Court finds Plaintiff's disclosures as to damages to be inadequate, then exclusion of that evidence is mandatory under Federal Rule 37(c) unless the failure was substantially justified or harmless, neither of which applies. *Bessemer*, 596 F.3d at 370.

of damages, no meaningful information was disclosed. (*See* Doc 259-5 (Pl.'s Responses to Rule 269a) Disclosures) at 1, PAGEID # 26150 (failing to describe the claimed waste by professional, timeframe, amount by professional, a total amount . . . anything).) And while Plaintiff said in those disclosures that it would obtain and produce supporting invoices, *Plaintiff never did*.

The bottom line is that as of today, two months from trial and five years after filing its Amended Complaint, and despite the requirements of Rule 26 and the Defendants' questions, Defendants have literally no idea what Plaintiff's damages are in regard to lost value or even what "wasted professional fees" Plaintiff is talking about. The Court can search all relevant documents (Complaint, Amended Complaint, initial disclosures, interrogatories, Mr. Miller's testimony, Mr. Greenberg's report) in vain for *any* specific information as to the wasted professional fees (again: what professional fee was a waste, performing what service, at what time, towards what end, at whose request, in what amount, etc.), and Plaintiff's Opposition Brief and discovery responses suggest several different possible mathematical calculations for its lost value theory, including the use of "expressions of interest" from the summer of 2007 from Jostens and Sun Capital in addition to the J.H. Whitney number and CRG's valuation. Plaintiff's hide-the-ball discovery failure bars using such a damages theory now or at trial. Plaintiff lacks admissible damages evidence because it failed to adequately disclose that which it seeks now to rely (exclusively) on and that requires summary judgment.

  **C. Plaintiff's "Simple Arithmetic" Calculation Lacks An Evidentiary Basis**

Summary judgment is also required because Plaintiff's newfound "simple arithmetic" uses values that are inadmissible hearsay.

Although it remains unclear just what Plaintiff's damages are, Plaintiff suggests in its Opposition Brief that one of its options is to subtract a number presumably with the range of

values found in CRG's alleged enterprise valuation as of Antioch's bankruptcy petition date from a dollar figure in J.H. Whitney's May 2008 letter of intent. The J.H. Whitney letter of intent provides the top-end value of $54 million (the "Top-End Value") and CRG's valuation of between $31 million to $38 million found only in Antioch's January 2009 Disclosure Statement is the bottom-end value (the "Bottom-End Value"). (Doc 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 13, PAGEID # 26078.)[5]

We start with the Bottom-End Value of $31 million to $38 million. This value range is derived from a single source—the Antioch Company's Disclosure Statement. (Doc. 214-20 (Dep. Ex. 802, Disclosure Statement) at 1–3, PAGEID # 19920–19922.) The Antioch Disclosure Statement and the CRG value range contained in it are not part of any Bankruptcy Court entry, were never "adopted" by the Bankruptcy Court in any finding of fact, and were not incorporated into the Bankruptcy Court's Confirmation Order. Plaintiff's representation to the contrary is flat out false. (Doc. 259 at 9, PAGEID# 26074.)

As a result, the Bottom-End Value is itself hearsay, and its source document, the Disclosure Statement, is similarly inadmissible hearsay. And this double hearsay is the only "evidence" of the Bottom-End Value in the record. (*See* Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 9, PAGEID # 26074; Doc. 276 (Pl.'s Mem. in Opp. to Mot. for Summary Judgment) at 5, PAGEID # 26422.) Plaintiff has no admissible evidence with which to perform its "simple arithmetic."

As if that were not enough, the Disclosure Statement clearly warns in all capital letters: "The Disclosure Statement may not be relied upon for any purpose other than to determine

---

[5] Plaintiff does refer to other numbers in its Opposition Brief, derived from "expressions of interest" Antioch received in the summer of 2007, but it remains unclear what significance they have to Plaintiff's case in chief. (Doc 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 3–5, 16–17, 20, PAGEID # 26068–70, 26081–82, 26085.)

whether to vote to accept or to reject the Plan, and nothing stated herein will constitute an admission of any fact or liability of any party, or be admissible in any proceeding involving the Debtors or any other party, or be deemed a representation of the tax or other legal effects of the Plan on the Debtors or holders of claims of interests."   (Doc. 214-17 (Dep. Ex. 802, Disclosure Statement) at 8, PAGEID # 19853 (all caps omitted)).  So, the Disclosure Statement states that it cannot be relied on for any later purpose and is inadmissible in any later proceeding.  The Disclosure Statement also says that the CRG estimate "does not necessarily reflect, and should not be construed as reflecting, values that will be attained in the public or private markets," precisely what Plaintiff wants it to stand for.  (Doc. 214-20 (Dep. Ex. 802, Disclosure Statement at PAGEID # 19922.)

It should be no wonder that the Disclosure Statement and CRG's valuation are so qualified.  The sole purpose of a disclosure statement in a bankruptcy case is to provide "adequate information" sufficient to allow a "hypothetical investor . . . to make an informed judgment about the plan . . . ."  11 U.S.C. § 1125(a)(1).  It is a document prepared, sponsored and filed by a party soliciting votes to accept or reject a reorganization plan.  *Id.*  This is one reason why courts do not look to values set forth by a plan proponent in a disclosure statement as admissible evidence.  *See W. P. Hickman Sys. v. V and R Sheet Metal, LLC(In re W.P. Hickman Sys., Inc.)*, Adv. No. 10-2289JAD, 2012 Bankr. LEXIS 3301, *15-18 (W.D. Pa. July 13, 2012) (rejecting use of liquidation analysis included in disclosure statement as an established fact and entering judgment because debtors could not carry burden they sought to establish through disclosure statement).

There was never a finding of fact or other factual determination made by the Bankruptcy Court other than that the Disclosure Statement complied with Bankruptcy Code Section 1125(a),

and that is the only order that Plaintiff cites. (*See* Doc. 259 (Pl.'s Mem. in Opp. to Mot. to Exclude) at 9, PAGEID # 26074 (*citing* Bankruptcy Court Order that Disclosure Statement complied with Code § 1125(a)).) Plaintiff is wrong in misleading the Court otherwise.[6]

Plaintiff only identifies inadmissible hearsay not subject to any exception, in a document that itself says it is off limits in any future proceeding anyway, in regard to the Low End Value, and there is no arguable evidentiary basis, such as a hearsay exception, to place it before a jury. As a result it may not be used to create a genuine dispute of material fact because "hearsay evidence cannot be considered on summary judgment." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 580 (6th Cir. 2012). As the Sixth Circuit has unequivocally held, "A court cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion." *Hoover v. Walsh*, 602 F.3d 481, 491 n. 34 (6th Cir. 2012). Rather, "evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Consistent with this Sixth Circuit line of authority, one court has succinctly stated that mere status as a bankruptcy record does not "magically result in the contents of the document attaining a sufficient degree of reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial before a bankruptcy court." *Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.)*, 457 B.R. 441, 443 (Bankr. M.D.N.C. 2011).

Even allowing Plaintiff leeway to prove damages by "simple arithmetic" rather than through an expert, Plaintiff has failed to identify any admissible evidence of the Low End Value.

---

[6] The Court will see from a review of the Bankruptcy Court docket that the issue of the Company's value was never litigated in the Bankruptcy Court. The material confirmation objections were resolved and withdrawn and the confirmation hearing was uncontested.

A plaintiff has to present some evidence—admissible evidence—to avoid summary judgment. Plaintiff has none.

Now to the Top-End Value which Plaintiff says, absent expert testimony, could come from the non-binding letter of intent sent by J.H. Whitney to Antioch. (*See* Doc. No. 276 (Pl.'s Mem. in Opp. to Mot. for Summary Judgment) at 5, PAGEID # 26422.)  No one deposed anyone affiliated with J.H. Whitney in this case, so there is no evidence from that company.  The letter of intent itself is classic hearsay, and by Plaintiff seeking to equate the dollar figure in this non-binding expression of interest with the enterprise value of the Company, Plaintiff seeks to use the letter for the truth of the matter asserted in it (that Antioch's enterprise value was $54 million). The letter of intent is inadmissible to prove enterprise value, and there is no in-court declarant from J.H. Whitney to testify about the relation, if any, between the $54 million letter of intent and Antioch's enterprise value.

Perhaps seeing the enormous evidentiary problem, Plaintiff has attempted to recast Mr. Greenberg's testimony into an expert opinion that this $54 million letter of intent value is a reliable data point for determining the Company's value.  First, Mr. Greenberg's report says literally nothing of the sort.[7]  Because his report violated Federal Rule 26 in that it lacked "a complete statement of all opinions the witness will express and the basis and reasons for them," *see* Fed. R. Civ. P. 26(a)(2)(B)(i), defense counsel asked him at his deposition to list his

---

[7] Mr. Greenberg's report mentions the word "Whitney" about a dozen times, most in passing and almost all in Mr. Greenberg's story-telling description of what Plaintiff thinks the facts are.  Certainly there is no section of the report where Mr. Greenberg actually analyzes the viability of the expression of interest in the way Plaintiff now asserts. The closest Mr. Greenberg ever gets is calling the Whitney letter of intent the "strongest overall offer" (Doc. 214-12 (Dep. Ex. 797, Pl.'s Expert's Report) at 20, PAGEID # 19796) and "significantly more certain" than the Sun Capital verbal offer (*id.* at 24, PAGEID # 19800).  Neither statement says the Whitney offer was a reasonable approximation of the value of the Company, or likely to close, or anything close to that.  Both statements are comparative; that is, not that the Whitney offer was great, or rock-solid, or definitively reliable but rather "strongest" and "more certain" among a group of offers, which means nothing—that a child is the "tallest" kid in the pre-school class does not mean the child is "tall."

opinions, and while Mr. Greenberg provided eight separate opinions, none are that the Whitney letter of intent of $54 million is a reliable representation of Antioch's enterprise value, or even that a hypothetical transaction would close at that price. (*See* Doc. 214 (Greenberg Dep.) at 111–118, 294, PAGEID # 19456–63, 19639; Doc. 215 (Greenberg Dep.) at 360–61, 364, 387, PAGEID # 20013–14, 20017, 20040.) The best Plaintiff can cite is Mr. Greenberg's hypothetical prognostication (it was not an opinion in his report or one of the eight he disclosed in his deposition), that if a bankruptcy auction went forward, the Whitney bid of $54 million would be the minimum value realized. But he disavowed that passing remark several times in his deposition. *Id.*[8] Nor did he ever opine that the Whitney proposal to bid at $54 million reflected enterprise value. Mr. Greenberg's one passing comment in the deposition does not equate to an opinion, particularly with no methodology or analysis behind it.

All of these issues leave Plaintiff with a problem it cannot overcome. Both ends of its value range rely exclusively on inadmissible evidence. Everything Plaintiff cited, and anything else it could come up with from the record, is being offered for the truth of the matter asserted in the document—the value of the Company at any given time. And even if the Plaintiff can admit the Top-End Value through Mr. Greenberg (a dubious proposition given that the way Plaintiff has attempted to recast his opinions has no basis in Mr. Greenberg's report or testimony), Plaintiff still does not have evidence to carry its damages burden because no one can do the "simple arithmetic" proposed by Plaintiff—subtract one number from another—with just one number.

---

[8] Mr. Greenberg only testified that "the worst it would have been would have been [sic] $54 million . . .," but he actually conceded that "[t]here's no way to know that." (Doc. 214 (Greenberg Dep.) at 294:18–23, PAGEID # 19639.)

## II.     CONCLUSION

The Court should see things for what they are.  Notice pleading allowed Plaintiff to file this litigation without actually selecting a damages theory.  Then Plaintiff kicked the can down the road during fact discovery, refusing to answer direct questions and invoking the need for expert testimony.  Then Plaintiff disclosed an expert report with the obvious intention of using that expert to quantify its damages (the concluding line of Mr. Greenberg's report, with a statement as to supposed lost value and wasted professional fees only makes sense in this context).  The motions before the Court left Plaintiff scrambling and that is why Plaintiff's arguments paint with a broad brush, hardly refer to Mr. Greenberg's report, contradict all of Plaintiff's prior statements concerning the proof of damages, lack any support in the law, and rely exclusively on inadmissible evidence.  Surely the Court has never seen anything like the attempt to prove the value of a company (or anything else, for that matter) through a non-binding letter of intent on one end and a disclosure statement on the other end.

Plaintiff had five years to come up with a viable damages theory and supporting evidence. It didn't.  The Court should grant both the motion to exclude Mr. Greenberg and the motion for summary judgment as to claims Four, Six, Eight, Ten, and Thirteen.

                Respectfully submitted,

                /s/ Michael L. Scheier
                Michael L. Scheier (0055512)
                Brian P. Muething (0076315)
                Danielle M. D'Addesa (0076513)
                David T. Bules (0083834)
                Anthony M. Verticchio (0084645)
                Keating Muething & Klekamp PLL
                One East Fourth Street
                Suite 1400
                Cincinnati, Ohio 45202
                Phone: (513) 579-6952

        Fax: (513) 579-6457
        mscheier@kmklaw.com
        bmuething@kmklaw.com
        ddaddesa@kmklaw.com
        dbules@kmklaw.com
        tverticchio@kmklaw.com

*Attorneys for Defendants,*
*Lee Morgan, Asha Moran, Marty Moran, Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1, and Lee Morgan Pourover Trust #2*

OF COUNSEL:
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Oh 45202
(513) 579-6400

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 20, 2014 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docketing system.

                                      /s/ Michael L. Scheier
                                      Michael L. Scheier

5355100.7