UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE, | : : : : | Case No. 3:10-cv-156 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| LEE MORGAN, *et al.*, | : : | |
| Defendants. | : | |

**ORDER GRANTING THE MORGAN TRUSTS' MOTION
FOR SUMMARY JUDGMENT ON COUNT 11 (Doc. 233)**

This civil action is before the Court on the Defendant Morgan Trusts'[1] motion for summary judgment on Count 11 (Docs. 233), and the parties' responsive memoranda (Docs. 275, 290). Count 11 seeks equitable subordination of the claims asserted in the bankruptcy case.[2]

---

[1] The Morgan Trusts include Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1, and Lee Morgan Pourover Trust #2 (collectively "the Morgan Trusts").

[2] In a successful equitable subordination action, all or part of any secured or unsecured claim may be subordinated. In effect, the theory of equitable subordination allows a court to strip a secured creditor of all validly perfected lien rights.

# I. BACKGROUND FACTS[3]

## A. The Formation of the Morgan Trusts

The Morgan Trusts were formed by Lee Morgan in 1999 for the benefit of the Morgan family. (Doc. 234 at ¶¶ 5-7). The Morgan Trusts are irrevocable trusts formed under separate trust agreements dated December 23, 1999, by and between Lee Morgan as settlor and Asha Morgan as trustee. (*Id.* at ¶ 5). Asha Morgan is the primary beneficiary of the Lee Morgan GDOT Trust #1[4] and the Lee Morgan Pourover Trust #1. (*Id.* at ¶ 6). Matthew Morgan is the primary beneficiary of the Lee Morgan GDOT Trust #2 and the Lee Morgan Pourover Trust #2. (*Id.*) Mr. Morgan's grandchildren are the primary beneficiaries of the Lee Morgan GDOT Trust #3. (*Id.*) Upon termination of the Lee Morgan GDOT Trust #1 and the Lee Morgan GDOT Trust #2, the trustee is required to distribute all of the trust assets to the Lee Morgan Pourover Trust #1 and the Lee Morgan Pourover Trust #2, respectively. (*Id*. at ¶ 7).

## B. The Morgan Trusts' Acceptance of the Tender Offer in the 2003 Transaction

On November 14, 2003, the Antioch Company issued a Tender Offer to its shareholders including the Morgan Trusts. (Doc. 234 at ¶ 8). The Tender Offer provided that each shareholders' shares could be sold (i) for $850 cash per share; or (ii) for a

---

[3] A detailed factual background is available at Doc. 6, Section III. *See also* the undisputed facts at Docs. 234 and 267.

[4] The purpose of a grantor deemed owned trust ("GDOT") is to facilitate a gift tax free transfer from the grantor to the trust beneficiaries. *See* Robert T. Danforth and Howard M. Zaritsky, "Grantor Trusts: Income Taxation Under Subpart E," 819-1st Tax Mgmt. (BNA), Estates, Gifts, and Trusts (2012).

2

package including $280 cash, a $280 principal amount 8% subordinated note, and a warrant to purchase one share of Common Stock of the Company in 2014 for $850. (*Id*.) As a result of the 2003 Transaction, Lee Morgan GDOT Trust #1 sold its 80,611 shares in exchange for the package, Lee Morgan GDOT Trust #2 sold 16,935 of its shares for $850 cash per share and 6,886 of its shares for the package, and Lee Morgan GDOT Trust #3 sold its 23,822 shares for the package. (*Id*. at ¶ 9). As with all non-ESOP shareholders, the Trusts had to either tender their shares to Antioch voluntarily, or have them redeemed involuntarily for consideration through the merger that was to follow the tender offer. (Dep., Ex. 31 at 19).

C. **The Antioch Company Files for Bankruptcy**

The Antioch Company and its Affiliate Debtors filed for bankruptcy on November 13, 2008. (Doc. 234 at ¶ 10). The Second Amended Joint Prepackaged Plan of Reorganization of the Antioch Company and Its Affiliate Debtors (the "Plan") was confirmed by the Bankruptcy Court on January 27, 2009. (*Id*. at ¶ 11). Under the Plan, as Holders of unpaid Subordinated Notes as of the Petition Date, the Morgan Trusts' Claims were treated as Class 5 Holders of Allowed Impaired Unsecured Claims. (*Id*. at ¶ 12).

D. **Release of the Morgan Trusts' Claims for Litigation Trust Interests Under the Confirmed Chapter 11 Plan.**

Pursuant to the Plan, each Holder of an Allowed Impaired Unsecured Claim that timely submitted an executed Class 5 Release Form could elect to receive the Holder's

3

applicable share of the Creditor/Equityholder Trust Interests and to participate as a beneficiary of the Litigation Trust. (Doc. 234 at 13). The Class 5 Release Form required each Class 5 Holder to release various Released Parties including, among others, the Prepetition Agent, the Prepetition Secured Lenders, the DIP Agent, the DIP Lenders, the Exit Facility Agent, the Exit Facility Lenders, the New Secured Term Loan Notes Agent, the New Secured Term Loan Noteholders, and the Creditor/Equityholder Trustee. (*Id*. at 14). On August 11, 2009, the Bankruptcy Court entered an Order Fixing Allowed Class 5 Claim Amounts. (*Id*. at ¶ 15). The Morgan Trusts' Allowed Claims totaled $47,968,019.01. (*Id*.) On or about April 30, 2009, the Morgan Trusts filed executed Class 5 Release Forms and elected to receive their applicable share of the Creditor/Equityholder Trust Interests and to participate as a beneficiary of the Litigation Trust, thereby releasing all of their Claims in the Chapter 11 Cases. (*Id*. at ¶ 16).

Plaintiff seeks to subordinate the Morgan Trusts "allowed claims," alleging that such equitable subordination is "in furtherance" of the provisions of the Bankruptcy Code.

## II.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine

disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III.   ANALYSIS

Equitable subordination is a bankruptcy-specific concept, and its application is limited to that context…[and] governed by 11 U.S.C. Section 510(c)(1)." *Gaymar Indus., Inc. v. FirstMerit Bank, N.A*., No. 5:07cv2023, 2008 U.S. Dist. LEXIS 108008, at *10 (N.D. Ohio Mar. 10, 2008). Section 510(c)(1) of the Bankruptcy Code makes clear that equitable subordination can only be applied to an "allowed claim" or "allowed interest." The Code states:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may –
>
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]

11 U.S.C. § 510(c)(1).

### A. Claims Subject to Equitable Subordination

#### 1. *Allowed Claims*

At one point, the Morgan Trusts held Allowed Claims in the bankruptcy case. In fact, the Bankruptcy Court, on the debtors' motion, entered an Order fixing the Morgan Trusts' Allowed Claims in the total amount of $47,968,019.01. (Bankr. Doc. 426, Ex. A). However, the Morgan Trusts no longer hold those Allowed Claims. The Plan provided claimholders with a choice: they could hold on to their Allowed Claims and assert those against the bankruptcy estate or they could give up their Allowed Claims and instead receive a participation right in the Litigation Trust. (*Id.* at §§ 3.3(b), 5.12). Those electing to participate in the Litigation Trust had to agree to release any claims held by the claimholder against the various Released Parties including, among others, the Prepetition Agent, the Prepetition Secured Lenders, the DIP Agent, the DIP Lenders, the Exit Facility Agent, the Exit Facility Lenders, the New Secured Term Loan Notes Agent, the New Secured Term Loan Noteholders, and the Creditor/Equityholder Trustee. (*Id.* at §§ 1.117, 10.2(b)). The Morgan Trusts released their Allowed Claims by executing Class 5 Release Forms pursuant to the Plan. (Bankr. Doc. 319, Ex. A at §§ 3.3(b), 5.12).[5]

The Morgan Trusts Allowed Class 5 Claims, like all other Allowed Class 5 Claims, received no distribution of estate property and were discharged. Although the

---

[5] "Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionary Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). Thus, "[c]onfirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.*), 930 F.2d 458, 463 (6th Cir. 1991).

Plan did reserve Plaintiff certain equitable subordination rights that may have applied to "[Defendants'] Class 5 Claims," those Allowed Claims received no distribution from the bankruptcy estate to subordinate. Subordinating claims that receive no distribution is both inconsistent with the language of Section 510(c) and futile.

Accordingly, the Court finds that there are no "Allowed Claims" to equitably subordinate.

### 2. *Allowed Interests*

Next, Plaintiff maintains that Defendants' "interest" in the Litigation Trust fits the definition of "allowed interest" as the term is used in Bankruptcy Code section 510(c) and can therefore itself be subordinated to other "interests" in that Trust. (Doc. 275 at 9-10).[6]

In exchange for their Allowed Claims, the Morgan Defendants received Litigation Trust Interests, which are defined by the Plan as:

> **1.82 Litigation Trust Interests** means the beneficial interests in
>
> The Litigation Trust consisting of (i) the Primary Beneficial Interests and (ii) the Secondary Beneficial Interests.
>
> \*\*\*
>
> 1.109 Primary Beneficial Interest means those Litigation Trust Interests having the attributes described in the Litigation Trust Agreement which

---

[6] Plaintiff does not allege in its First Amended Complaint that it seeks equitable subordination of the Morgan Trusts' interests. Rather, Plaintiff only seeks judgment against the Morgan Trusts "equitably subordinating their claims to all other creditors in these Chapter 11 cases[.]" (Doc. 275 at ¶ M). Plaintiff cannot now argue, after the close of fact and expert discovery, that it has a right to equitably subordinate the Morgan Trusts' economic interest in the Litigation Trust, which Plaintiff admits the Morgan Trusts received in exchange for new and valuable consideration separate and apart from their Allowed Class 5 Claims. (Doc. 275 at 4-5).

7

> will be distributed to Holders of Allowed Impaired Unsecured Claims who timely execute and submit a Class 5 Release Form.

(Bankr. Doc. 319, Ex. A at §§ 1.82, 1.109).

Plaintiff may only assert causes of action specifically identified and transferred to it by the Plan. (Bankr. Doc. 319, Plan at § 1.76). In that regard, the Plan transferred assets to the Litigation Trust that included the Debtor's "Equitable Subordination Rights." (*Id.* at §§ 5.13(a), 1.80). The Plan defines Equitable Subordination Rights as "the right of any party to seek equitable subordination or recharacterization of any Claim." (*Id.* at § 1.44). Therefore, under the Plan, the Debtor transferred to the Litigation Trust the estate's right to seek the equitable subordination of "any Claim." Plaintiff does not argue that an interest in the Litigation Trust is a "Claim." The scope of authority allocated to Plaintiff under the Plan does not extend to the subordination of "allowed interests" referenced in section 510(c).[7]

Furthermore, "interest" is defined in the Plan as "the legal, equitable, contractual, and other rights of the Holders of ESOP Allocated Stock Interest, Old Equity Interests, and Intercompany Interests[.]" (Bankr. Doc. 319, Plan at § 1.74). An "Allowed Interest" is "any Interest that is registered as of the Distribution Record Date in a stock register maintained by or on behalf of the Debtors or, with respect to the ESOT Allocated Stock, by or on behalf of the ESOT Trustee." (*Id.* at § 1.7). Under the terms of the Plan,

---

[7] The Plan is like a contract, and the Court must apply the plain language of the Plan as it would with a contract. *Owners Ins. Co. v. Barone*, 832 F. Supp. 2d 804, 808 (N.D. Ohio 2011).

8

Allowed Interests are pre-petition stock holdings in the Debtor corporation, not "interests" in the Litigation Trust.[8]

Moreover, even assuming that the Plan had vested Plaintiff with the right to subordinate the Allowed Interests under section 510(c), the term in that section does not encompass Defendants' economic "interest" in the Litigation Trust. 11 U.S.C. § 510(c)(1). Section 502 which is entitled "Allowance of claims or interests," states that "[a] claim or interest, proof of which is filed under Section 501, is deemed allowed, unless a party in interest…objects." 11 U.S.C. § 502(a). Section 501, in turn, provides that "[a]n equity security holder may file a proof of interest." 11 U.S.C. § 501. An "equity security holder" is defined under the Code as a "holder of an equity security of the debtor." 11 U.S.C. § 101(17). "Equity security" is defined as a "share in a corporation, whether or not transferable or denominated 'stock,' or similar security." 11 U.S.C. § 101(16).

In a Chapter 11 case such as Antioch's case, "a proof of claim or interest is deemed filed under section 501 of [title 11] for any claim or interest that appears in the schedules filed under section 521(a)(1)[.]" 11 U.S.C. § 1111(a). Section 521 (a)(1) requires a debtor corporation to file a statement of financial affairs, which requires a debtor corporation to list each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation. (Bankr.

---

[8] The specific meaning given to terms under a confirmed plan is binding and not to be disregarded. *U.S. v. Graham (In re Monclova Care Ctr., Inc.)*, 59 Fed. Appx. 660, 663 (6th Cir. 2003).

9

Official Form at 9, Question 21). The legislative history accompanying section 1111 states that "[t]his section dispenses with the need for every creditor and equity security holder to file a proof of claim or interest in the reorganization case. Usually, the debtor's schedules are accurate enough that they will suffice to determine the claims or interests allowable in the case." 11 U.S.C. § 1111, Legislative History to § 1111, House Report No. 95-595, 95th Cong., 2d Sess. 117 (1978).

The Morgan Trusts' interests in the Litigation Trust are neither stock nor other equity securities of the Antioch Debtors. Therefore, the Equitable Subordination Rights transferred to the Litigation Trust under the Plan, and upon which Count 11 is based, cannot be used to subordinate the Morgan Trusts' Litigation Trust Interests to other Litigation Trust interests because none are "allowed interests" for the purposes of section 510.

Accordingly, it is evident from the plain terms of the Plan that the Morgan Trusts do not hold "Allowed Claims" or "Allowed Interests."

### B. Equitable Subordination

Even if the Morgan Trusts held Allowed Claims or Allowed Interests, the Court finds that there is no legal or statutory basis to equitably subordinate the Defendants' economic interest in the Litigation Trust.

The Bankruptcy Code provides that "the court may under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of

10

another allowed interest." 11 U.S.C. § 510(c)(1).  The legal standard for equitably subordinating claims requires that: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.  *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 744 (6th Cir. 2001).  The purpose of equitable subordination is to undo any inequity in the claim position of a creditor that will produce unfairness to other creditors.  *In re Applied Theory Corp.*, 345 B.R. 56, 59 (S.D.N.Y. 2006).  Equitable subordination applies when equity demands that the payment priority of claims of an otherwise legitimate creditor be changed to fall behind those of other claimants.  *In re SubMicron Systems Corp.*, 432 F.3d 448, 454 (Del. App. 2003).

     In applying this test, the legal standard will vary based on whether the creditor is an insider or non-insider.  *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 718 (6th Cir. 1992).  Where the claimant is a non-insider, egregious conduct must be proven with particularity and it must be proven that "the claimant is guilty of gross misconduct tantamount to fraud, overreaching or spoliation to the detriment of others."  *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.)*, 974 F.2d 712, 718 (6th Cir. 1992).  However, when the claims to be subordinated are that of insiders, less egregious conduct will support a claim of equitable subordination.  *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 744-45 (Mich. App. 2001).  Insider transactions are more

11

closely scrutinized, because insiders "usually have greater opportunities for…inequitable conduct." *Id.* (*citing In re Fabricators*, 926 F.2d at 1465).  Where the claimant is an insider or a fiduciary, the party seeking subordination need only show some evidence of unfair conduct.  *In re Future Energy Corp.*, 83 B.R. 470, 483 (S.D. Ohio 1988).

The statutory definition of insider includes directors and their relatives, officers and their relatives, persons in control and their relatives, and affiliates.  11 U.S.C. § 101(31)(C),(E).  Trusts set up for the benefit of an insider or a relative of an insider are also considered an insider.  *In re 1000 Int'l Bldg. Assoc., Ltd.*, 81 B.R. 125 (S.D. Fla. 1987).  Lee (settlor) and Asha (trustee and beneficiary) are both insiders of the Company.  Accordingly, the Morgan Trusts are insiders.

### 1. *Inequitable Conduct*

The general principal of trust law is that a trust cannot be liable for the conduct of its settlor and trustee.  However, there is an exception to this rule when the trust actually benefits from the conduct.  91 Ohio Jur. 3d Trusts § 501.  Plaintiff maintains that the Morgan Trusts benefited from the 2003 ESOP Transaction and Tender Offer.

The "exception" to the rule requires three showings before the misconduct of a trustee can be imputed to the trust: (1) the misconduct must occur while the Trustee is acting in his or her capacity as trustee; (2) in the administration of trust business; and (3) where such misconduct provides a benefit to the trust.  *Waite v. Mendenhall*, 17 Ohio App. 53 (Ohio App. 1922).  *See also Carey v. Squire*, 27 N.E.2d 175 (Ohio App. 1939).

As to the first exception, Plaintiff has never alleged and the record is devoid of any facts that Ms. Moran and Mr. Morgan engaged in any inequitable conduct while acting in their capacity as trustee of the Morgan Trusts. In fact Morgan never served as a trustee of the Morgan Trusts. As to Ms. Moran, the Plaintiff fails to identify any evidence that she engaged in any inequitable conduct while acting in her capacity as trustee. Plaintiff can only point to allegations regarding Ms. Moran's actions as an Antioch corporate fiduciary. (Doc. 275 at 3-6). Each of these allegations relate to actions that Ms. Moran took as a fiduciary to the corporation. These allegations, even if assumed as true, do not permit the attribution of Ms. Moran's alleged conduct to the Morgan Trusts.

Second, Plaintiff argues that the alleged misconduct of Ms. Moran and Mr. Morgan as fiduciaries to Antioch, not as trustees to the Morgan Trusts, should be attributable to the Morgan Trusts. However, Plaintiff cites no authority for such proposition. Plaintiff sued Mr. Morgan and Ms. Moran for breaches of fiduciary duty for their conduct related to (i) the 2003 ESOP Transaction (which has been dismissed); (ii) the Levimo sale/leaseback transaction (which has been dismissed); and (iii) the 2007/2008 sales process (which has been dismissed). Moreover, there are no facts that suggest that any action by Mr. Morgan or Ms. Moran with regard to those events was taken in the capacity of trustee of the Morgan Trusts.

With respect to the last factor, the sole "benefit" Plaintiff identifies is the consideration that the Defendant Trusts received in the 2003 Tender Offer. (Doc. 275 at 14). The Morgan Trusts received the same rights and benefits as any other non-ESOP

shareholder that participated in the Tender Offer and the non-ESOP shareholders, like the Morgan Trusts, had no choice but to tender their shares in connection with that transaction. As with all non-ESOP shareholders in 2003, had the Morgan Trusts not tendered their shares, their shares and the shares of any other non-participating or dissenting non-ESOP shareholders would have been involuntarily exchanged through a merger that followed the Tender Offer. (Doc. 236-5 at 19). Therefore, the Morgan Trusts could not benefit unfairly from the 2003 Transaction.

Accordingly, Plaintiff's invocation of the exception to the general rule against imputation of an individual's misconduct to a trust fails as a matter of law.

### 2. *Injury*

Even if Plaintiff could prove inequitable conduct on the part of the Morgan Trusts, Plaintiff failed to evidence that the Morgan Trusts' participation in the Company's Tender Offer to purchase their shares in the 2003 Transaction directly resulted in any injury to the other creditors or conferred an unfair advantage on the Morgan Trusts. There is no evidence that the Morgan Trusts attempted or did gain some advantage to the other creditors' detriment.

Therefore, Plaintiff fails to satisfy the equitable subordination test.

### IV. CONCLUSION

Accordingly, for these reasons, the Morgan Trusts' motion for summary judgment (Doc. 233) is **GRANTED**, and the Morgan Trusts are **TERMINATED** as parties.

**IT IS SO ORDERED**.

Date: 4/14/14                                                                                                           *s/ Timothy S. Black*
                                                                                                                              Timothy S. Black
                                                                                                                              United States District Judge