UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE ANTIOCH COMPANY LITIGATION TRUST, W. TIMOTHY MILLER, TRUSTEE,<br><br>     Plaintiff,<br>vs.<br><br>LEE MORGAN, *et al.,*<br><br>     Defendants. | Case No. 3:10cv156<br><br>Judge Timothy S. Black |

**ORDER GRANTING DEFENDANTS LEE MORGAN'S AND ASHA MORAN'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE 2003 TENDER OFFER AND THE 2007-2008 SALE PROCESS (Doc. 310)**

This civil action is before the court on Defendants Lee Morgan and Asha Moran's motion *in limine* to exclude evidence of the 2003 Tender Offer and the 2007-2008 Sale Process (Doc. 310) and the parties' responsive memoranda (Docs. 316, 317).

## BACKGROUND

There are two claims remaining for trial: (1) Count Three, alleging that Defendant Asha Moran breached her fiduciary duties as a corporate officer by authorizing payment of a surety premium to Condor Guaranty, Inc.; and (2) Count Twelve, seeking to recover allegedly preferential payments made by The Antioch Company to Defendants Lee Morgan, Steve Bevelhymer, Karen Felix, and Kimberly Lipson-Wilson, while the Company was insolvent.

Defendants Morgan and Moran seek to exclude all evidence regarding the 2003 Tender Offer and the 2007-2008 Sale Process pursuant to Federal Rules of Evidence 401, 402, and 403.

## ANALYSIS

### A. Rules 401, 402, and 403

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[1]

Even relevant evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Exclusion under Rule 403 is an extraordinary measure that should be exercised sparingly. *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."). Courts are "generally reluctant to grant broad exclusions of evidence *in limine*, because 'a court is almost always better situated during the actual trial to assess the value and utility of evidence.'" *Bishop v. Children's Ctr. for Developmental Enrichment*, No. 2:08cv766, 2011 U.S. Dist. LEXIS 147832, at *1 (S.D. Ohio Dec. 22,

---

[1] *See also* Advisory Committee Notes to 1972 Proposed Rules ("The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action. The fact to which the evidence is directed need not be in dispute…Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

2011). However, a trial court has broad discretion in deciding admissibility issues under Rule 403. *Tschira v. Willingham*, 135 F.3d 1077, 1087 (6th Cir. 1998).

### B. Count Three

Plaintiff argues that Count Three is not limited to the allegation that Ms. Moran wasted corporate assets by directly authorizing a premium payment to Condor Guaranty in 2008. The Trust seeks damages for *all* premium payments made to the Condor entities (from 2004-2008), and it also alleges that Moran breached her fiduciary duties of care and loyalty when she allegedly made material misrepresentations to the ESOP Note-holders in August, September, October, and November 2008.

In denying Moran's motion for summary judgment on Count Three, this Court found genuine issues of material fact as to whether Moran breached her fiduciary duties by failing to encourage the Company to find a different way to adequately secure the ESOP Notes, by making material misrepresentations to various constituencies, and by making premium payments of $1.1 million over a four-year period (2004-2008). (Doc. 203 at 18).[2] However, the Court's recent decision granting judgment against Plaintiff on Count Three and in favor of all Defendants but for Ms. Moran (Doc. 301), forecloses the relevancy of the Tender Offer or Sale Process evidence. In the latter

---

[2] Moran became aware of Condor Insurance's insolvency no later than January 31, 2008. (Doc. 203 at 21). Although she knew Condor Insurance was insolvent, she continued to assure noteholders that Antioch was financially strong and that they were protected by the Condor guaranties until just days before Antioch filed for bankruptcy. (*Id*. at 22). This Court previously found that an issue of fact exists as to whether Moran's misrepresentations evidence bad faith, an abuse of discretion, and a personal interest in the transaction, which findings, if returned, would preclude application of the defense of the business judgment rule. (*Id.* at 21-22).

decision, this Court held that Defendants Bevelhymer, Lipson-Wilson, and Felix did not breach their fiduciary duties with respect to the premium payments made to Condor in 2004, 2005, 2006, and 2007.[3]  Specifically, since a decision *not* to engage Condor would have been a breach of duty resulting in immediate harm to the Company, the Court found that engaging Condor for the years 2004-2007 was the "best decision under the circumstances."  (Doc. 301 at 9).[4]  Accordingly, Ms. Moran cannot have breached her fiduciary duty for payments made to Condor between 2004-2007.  The analysis for the August 2008 payment is different, since Moran knew then that Condor Insurance was insolvent.

Plaintiff claims that evidence relating to the Sale Process is central to the misrepresentations, allegedly because to show that these statements were false and materially misleading, the Trust needs to present evidence of the Sale Process.[5]  The Court disagrees.  To the extent that the origin of the notes is relevant to Count Three, such as the fact that Antioch was required to make periodic payments over five years to retirees, such information is merely background to which the parties could generally

---

[3] Bevelhymer, Lipson-Wilson, and Felix were not employed by Antioch when the Company paid Condor Guaranty's annual bond premium for the ESOP notes in August 2008. (Doc. 263 at ¶¶ 46, 48; Doc. 94 at 24-25).

[4] In August 2013, the Court held that "[t]he fact that Condor was supposedly the 'only surety willing to provide coverage of the ESOP Notes'…does not make the decision to use Condor a reasonable exercise of due care." (Doc. 203 at 21).  However, the Court's April 14, 2014 Order (Doc. 301) is the Court's most recent decision, and it comes after the close of both fact and expert discovery and after the Court's exclusion of Plaintiff's expert.

[5] Ms. Morgan continued to assure the noteholders that Antioch was financially strong and that they were protected by the Condor guaranties until just days before Antioch filed for bankruptcy. (Dep. Exs. 311, 312, 593, 313, 202).

4

stipulate. Plaintiff's theory that Condor Guaranty was a sham and that Ms. Moran wasted the Company's assets by authorizing the August 2008 premium payment to Condor is distinct from the Tender Offer, which is irrelevant to proving Count Three.

### C. Count Twelve

In Count Twelve, the Trust seeks to recover certain payments made to Defendants Morgan, Bevelhymer, Felix, and Lipson-Wilson, who were admittedly insiders of the Company, less than a year prior to the Company filing for bankruptcy protection. The transfer that the Trust seeks to recover from Morgan was a payment on his Subordinated Note. Morgan received this Subordinated Note as part of the consideration for the shares he tendered in the 2003 Tender Offer. The transfers that the Trust seeks to recover from Defendants Bevelhymer, Felix, and Lipson-Wilson are payments made pursuant to written agreements to accelerate bonuses when it became apparent that the Sale Process would not result in a sale price that would be sufficient to pay all creditors and leave value for the shareholders.

Plaintiff claims that the Sale Process is relevant to whether the Company was on its deathbed, and because the "[e]xpressions of market valuation received by the Company during the Sale Process are also relevant to the fair valuation" of the Company. While the Company's "deathbed" status is relevant to whether its assets are valued for purposes of a solvency analysis, Plaintiff's suggestion that it would utilize "expressions of market valuation" as evidence for the value of the Company was previously prohibited by the Court. (Doc. 300 at 7-8). Plaintiff can evidence insolvency from the balance sheet.

As to the Tender Offer, Plaintiff claims that such evidence is necessary to establish the intent of the Company and Mr. Morgan with respect to the transfers.  However, "it is well established that the intent of the parties is irrelevant to the preference analysis." *Gladstone v. Bank of Am. (In re Vassau)*, 499 B.R. 864, 868 (Bankr. S.D. Cal. 2013).

## CONCLUSION

Accordingly, for these reasons, Defendants' motion *in limine* to exclude evidence of the 2003 Tender Offer and the 2007-2008 Sale Process (Doc. 310) is **GRANTED**. The parties shall work cooperatively to write a stipulation for general background information and context.

**IT IS SO ORDERED**.

Date:  5/21/14                                             */s/ Timothy S. Black*
                                                                    Timothy S. Black
                                                                    United States District Judge